✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

**11:21 am, Aug 08 2025**

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ AR _____ Deputy

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| ATI HOLDINGS, LLC; ATHLETIC & THERAPEUTIC INSTITUTE OF NAPERVILLE, LLC; ATI PHYSCAL THERAPY, INC.; and RAY WAHL, <br><br> *Petitioners,* <br><br> v. <br><br> GILMAN & BEDIGIAN, LLC, and RAFAEL LAW, LLC, <br><br> *Respondents.* | Misc. Case No. 25-cv-2621-SAG <br><br> **PUBLIC – REDACTED** <br><br> Underlying Action: <br><br> *Morsberger, et al. v. ATI Holdings, LLC, et al.*, No. 1:22-cv-01181 (N.D. Ill.) |

---

## DECLARATION OF TIMOTHY R. FARRELL IN SUPPORT OF PETITIONERS' MOTION TO COMPEL DEPOSITION TESTIMONY OF GILMAN & BEDIGIAN, LLC, AND RAFAEL LAW, LLC

I, Timothy R. Farrell, hereby declare, pursuant to 28 U.S.C. § 1746, that the following facts are true and accurate to the best of my knowledge and belief, based on facts known to me or those made available to me through the investigation of my colleagues.

1.     I am an attorney at Ropes & Gray LLP ("Ropes & Gray") and counsel to ATI Holdings, LLC; Athletic & Therapeutic Institute of Naperville, LLC; and ATI Physical Therapy, Inc. (together, "ATI") and Ray Wahl (together with ATI, "Petitioners"). I am a member of the Illinois bar, and I am admitted to practice before the United States District Court for the Northern District of Illinois, including as a member of its Trial Bar. I am also admitted to practice before United States District Court for the Central District of Illinois, the state of New York, the U.S. Court of Appeals for the Eighth Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

2.     I submit this declaration with and in support of Petitioners' Motion to Compel Deposition Testimony of Gilman & Bedigian, LLC, and Rafael Law, LLC ("Motion to Compel").

1

Capitalized terms undefined by this Declaration have the meanings ascribed to them by the Motion to Compel.

3.      On June 10, 2024, Plaintiff Stanley Morsberger made a production of 4 documents, 99 pages total, consisting of his medical records, an itemized breakdown of his settlement expenses, his retainer agreement with Gordon, Wolf & Carney, Chtd., and a request for billing discount sent by Rafael Law, LLC, to ATI.

4.      On July 3, 2024, Plaintiff Stanley Morsberger made a production of 2 documents, 2 pages total, consisting of his signed retainer agreement with Gordon, Wolf & Carney, Chtd., and his referral form to ATI.

5.      On January 22, 2025 Plaintiff Stanley Morsberger made a production of 4 documents, 14 pages total, consisting of two copies of his retainer agreement with Gordon, Wolf & Carney, Chtd., and two documents withheld for privilege.

6.      On June 9, 2025, Plaintiff Stanley Morsberger made a production of 25 documents, 63 pages total, consisting of various authorization forms, and documents relating to the damage to his vehicle.

7.      On Decmber 6, 2024, Petitioners served subpoenas for documents and deposition testimony on Gilman & Bedigian, LLC and Rafael Law, LLC.

8.      Attached hereto as **Exhibit 1** is a true and accurate copy of a subpoena served on Gilman & Bedigian, LLC, dated December 6, 2024.

9.      Attached hereto as **Exhibit 2** is a true and accurate copy of a subpoena served on Rafael Law, LLC, dated December 6, 2024.

10.     Attached hereto as **Exhibit 3** is a true and accurate copy of an email chain between counsel for Petitioners, counsel for Plaintiffs, and counsel from Gilman & Bedigian, LLC, Rafael

Law, LLC, and Wingfield, Ginsburg, and Lipp, P.C. (the "Law Firms"). The top-most email is dated January 17, 2025.

11.     Attached hereto as **Exhibit 4** is a true and accurate copy of a letter sent from Lauren Geisser of Gilman & Bedigian, LLC to me, dated Feb. 4, 2025

12.     Attached hereto as **Exhibit 5** is a true and accurate copy of an email chain between counsel for Petitioners, counsel for Plaintiffs, Ms. Geisser of Gilman & Bedigian, LLC, Elan Rafael of Rafael Law, LLC, and Zachary Lipp of Ginsburg, Wingfield, and Lipp, P.C. The top-most email is dated July 18, 2025.

13.     Attached hereto as **Exhibit 6** is a true and accurate copy of a letter sent from me to Ms. Geisser, Mr. Rafael, and Mr. Lipp, dated April 9, 2025

14.     Attached hereto as **Exhibit 7** is a true and accurate copy of the transcript of the status hearing before the Honorable M. David Weisman, dated April 29, 2025.

15.     On May 2, 2025, counsel for Petitioners and counsel from the Law Firms met and conferred via videoconference to discuss the issues identified in Exhibits 1-4. Counsel for Plaintiffs joined as well. During this meet and confer, counsel for Petitioners sought to understand and resolve the Law Firms' objections to the subpoena. Counsel for Petitioners specified that their request concerned the Law Firms' case files and non-privileged communications related to the Law Firms' prior representations of the Plaintiffs in the underlying action, Stanley Morsberger and Clementine Eluh. The Law Firms raised concerns about the potential disclosure of confidential and privileged information. After further discussion, the Law Firms agreed to produce the requested documents, with the understanding that any privileged or protected information would be withheld or redacted as necessary. Additionally, the Law Firms expressed an unwillingness to participate in depositions. Counsel for Petitioners acknowledged this position and agreed to defer

3

any depositions until after the completion of document production, while expressly reserving the right to seek depositions if the document productions proved insufficient.

16.     Attached hereto as **Exhibit 8** is a true and accurate copy of a letter sent from me to Ms. Geisser, Mr. Rafael, and Mr. Lipp, dated May 5, 2025

17.     On May 13, 2025, Gilman & Bedigian, LLC made a production of 1 document, 84 pages total, consisting primarily of documents related to vehicle damage, release forms for medical and other records to insurers, some communications with ATI, and claims submitted to insurers.

18.     On May 27, 2025, Rafael Law, LLC made a production of 1 document, 25 pages total, consisting primarily of documents related to vehicle damage, release forms for medical and other records to insurers, some communications with ATI, and claims submitted to insurers.

19.     Attached hereto as **Exhibit 9** is a true and accurate copy of a document bearing the bates number ATI – 00000227.

20.     Petitioners have produced 33,447 documents in this matter, compared to 67 documents produced by Class Plaintiffs.

21.     On July 25, 2025, Petitioners deposed Mr. Lipp of Wingfield, Ginsburg, and Lipp, P.C., without the need for a court order.

22.     On July 28, 2025, pursuant to Local Civil Rule 104.7, counsel for Petitioners, counsel for Gilman & Bedigian, LLC, Ms. Geisser, and Mr. Rafael met and conferred via videoconference regarding the pending deposition requests. Counsel for Plaintiffs were also present. During the meet and confer, counsel for Petitioners sought to address and resolve the Law Firm's objections to the depositions prior to filing a motion to compel. Petitioners' counsel represented that the depositions would be brief and would not seek privileged information. Counsel for Petitioners also referenced the recent deposition of Wingfield, Ginsburg, and Lipp,

P.C, noting that it did not last more than three hours and had no significant controversies regarding attorney-client privilege. Counsel for Gilman & Bedigian, LLC reiterated their objections to the depositions, citing concerns regarding privilege, work product protection, and undue burden. They indicated their intention to file either a motion for a protective order or a motion to quash the subpoena. Counsel for Petitioners emphasized the necessity of deposition testimony, particularly considering Mr. Morsberger's scant document production, and further asserted that the deposition topics were sufficiently tailored to avoid privilege and work-product issues. After further discussion, both sides agreed that they had reached an impasse. Counsel for Petitioners stated that they would proceed with filing a motion to compel. Counsel for Gilman & Bedigian, LLC requested that Petitioners file the motion in the District of Maryland, and Petitioners agreed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 5th day of August 2025.

Timothy R. Farrell
**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1209
Fax: (312) 845-5522
Timothy.Farrell@ropesgray.com

## CERTIFICATE OF SERVICE

I, Timothy R. Farrell, hereby certify that, on August 5, 2025, the foregoing document was

served via mail on the parties below pursuant to Fed. R. Civ. P. 5(b)(2)(C), as well as via email.


Lauren M. Geisser
lgeisser@gblegalteam.com
Gilman & Bedigian, LLC
1954 Greenspring Drive, Suite 250
Timonium, MD 21093
Telephone: (410) 560-4999

Elan B. Rafael
elan@rafaellaw.com
Rafael Law, LLC
3604 Eastern Avenue, Suite 100
Baltimore, MD 21224
Telephone: (410) 204-5411


Respectfully submitted,

Timothy R. Farrell
Timothy.Farrell@ropesgray.com
ROPES & GRAY LLP
191 North Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: (312) 845-1209

*Attorney for Petitioners*

# EXHIBIT 1

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of Illinois

| | | |
|---|---|---|
| Stanley Morsberger, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:22-cv-01181 |
| ATI Holdings, LLC, et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                Gilman & Bedigian, LLC

―――――――――――――――――――――――――――――――――――――
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  See attached Exhibit A.

| Place: | Ropes & Gray LLP, 2099 Pennsylvania Avenue NW, Washington, DC 20006 | Date and Time: |
|---|---|---|
| | | 01/23/2025 9:00 am |

| The deposition will be recorded by this method: | Stenographic, audio, video, and/or real-time transcription |
|---|---|

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See attached Exhibit A. Please provide the documents by Friday, January 10, 2025, at 9 AM ET.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    12/05/2025

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | /s/ Timothy Farrell |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
ATI Holdings, LLC, et al.                                            , who issues or requests this subpoena, are:
Timothy Farrell, 191 N. Wacker Dr., 32nd Flr., Chicago, IL 60606, timothy.farrell@ropesgray.com, 312-845-1209

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   1:22-cv-01181

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____                       _____
                                                                    *Server's signature*

                                                                    _____
                                                                    *Printed name and title*


                                                                    _____
                                                                    *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

I.      **DEFINITIONS**

1.      "Action" means the action captioned *Morsberger, et al. v. ATI Holdings LLC, et al.*, No. 1:22-cv-01181 (N.D. Ill. filed Mar. 14, 2022).

2.      "And" and "or" shall be construed as either conjunctive or disjunctive, whichever is more inclusive in context.

3.      "Any" shall be construed as "all" and vice versa, as necessary to bring within the scope of the requests set forth below (together, the "Requests," and each individually, a "Request") all information that might otherwise be construed to be outside of its scope.

4.      "Accident" means the circumstances described in paragraphs 19, 82, and 87 of the Complaint (as defined below) that gave rise to Plaintiff Stanley Morsberger's underlying personal injury action and to the receipt of physical therapy services from certain Defendants.

5.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) between or among two or more persons or entities, whether transmitted orally or in writing, and whether transmitted in person, by an electronic device such as telephone or email, or by any other means or medium. The term shall include spoken words, conversations, conferences, discussions, interviews, reports, meetings, negotiations, agreements, understandings, and Documents (as defined below).

6.      "Complaint" means the First Amended Complaint [Dkt. 68] filed by Plaintiff in this Action on April 28, 2023.

7.      "Device" means any wireless cell phone, tablet, laptop computer, or other wireless electronic device used to communicate or store data.

8.      "Document" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and shall include all originals (both sides thereof), copies, non-identical copies

(whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise), and drafts—in each case—of the following items, whether printed or recorded (through a sound, video, or other electronic, magnetic, or digital recording system) or reproduced by hand, as well as all materials underlying, supporting, or used in the preparation of the following items: written Communications, letters, calendars, diaries, journals, correspondences, telegrams, telexes, facsimile transmissions, memoranda, records, summaries of personal conversations or interviews, notes, financial or statistical statements or compilations, contracts, agreements, analyses, pictures, films, plans, tape recordings, videotapes, disks, websites, text messages, electronic mail ("email"), other electronically transmitted messages, social media messages and postings, any other electronically transmitted information or communications, material of any sort and in any format maintained or available at any time on the internet (whether formerly, currently, or both), voicemail messages (including such messages that are digitized and forwarded to an email account), and any other writings, papers, and tangible things of whatever description. "Document" shall also include any "Electronically Stored Information" or "ESI," including (a) information generated, received, processed, recorded, or stored in or on a computer, server, or electronic device memory; (b) website data; and (c) outputs resulting from the use of any software program, operating system, or mobile application. A draft or non-identical copy is a separate Document within the meaning of these terms.

9.     "Include" and "including" mean "include without limitation" and "including without limitation," respectively.

10.     "Item" means any physical specimen, tangible thing, or other object bearing, containing, demonstrating, or otherwise including any discoverable information, other than a Document.

-2-

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

11.     "Person" means, without limitation, any natural person, corporation, partnership, limited liability company, proprietorship, joint venture, association, government entity, group, or any other form of legal entity.

12.     "Plaintiff" means Stanley Morsberger, one of the plaintiffs in the Action.

13.     The verb "relate" and its variants encompasses the terms "regard," "refer," "reflect," and "concern" and shall be construed to bring within the scope of each Request any information that comprises, evidences, constitutes, describes, explicitly or implicitly refers to, was reviewed in conjunction with, or was generated as a result of the subject matter of the Request, including all information that reflects, records, memorializes, discusses, evaluates, considers, reviews, reports, or otherwise evidences the existence of the Request's subject matter.

14.     "Treatment" means the physical therapy services that Plaintiff received from certain Defendants between February 6, 2019, and March 7, 2019.

15.     "You" or "Your" means Gilman & Bedigian, LLC and any attorneys, agents, representatives, advisors, and any other persons acting for or on its behalf.

16.     The singular form of a word shall include the plural and vice versa, and the use of one gender shall include all, as contextually appropriate.

17.     Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

## II.     INSTRUCTIONS

The following instructions shall apply to the Requests below and should be considered as part of each Request.

1.     You are required to answer each Request set forth below and to produce all requested Items and Documents in Your possession, custody, or control, regardless of whether the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Items or Documents are possessed by You or by any successors, affiliates, assigns, agents, brokers, accountants, experts, representatives, attorneys, consultants, partners, or family members, or by any other persons acting or purporting to act on Your behalf.

2.      In responding to the Requests, You must collect, review, and produce Items and Documents pursuant to the procedures and requirements as set forth in the ESI Protocol attached hereto as **Exhibit 1**.

3.      In responding to these Requests, You shall inquire of all persons within Your control who have or may have Items or Documents responsive to the Requests.

4.      If You claim that any of the Requests are objectionable, then You shall (a) identify that portion of such Request claimed to be objectionable, and state the nature and basis of the claimed objection with sufficient particularity and in sufficient detail to permit the Court to adjudicate the validity of the claimed objection; (b) identify any Item or Document withheld from production pursuant to such claimed objection with sufficient particularity and in sufficient detail to permit the Court to determine whether the Item or Document falls within the scope of such claimed objection; and (c) answer each Request to the extent You do not claim it to be objectionable.

5.      If You withhold any requested Item or Document (in whole or in part) under a claim of privilege or other purported ground for nonproduction, You must prepare a log of such documents pursuant to the ESI Protocol. You are further requested to provide all requested Items or Documents not subject in their entirety to a claim of privilege or other ground for nonproduction by redacting or otherwise protecting the portions over which You assert a privilege.

6.      If any Item or Document called for was formerly in Your possession, custody, or control and has been destroyed, discarded, or otherwise disposed of, You shall furnish a list setting

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

forth, as to each Item or Document or part thereof, the following information: (i) the nature of the Item or Document (*e.g.*, letter, memorandum, note, etc.); (ii) the name, address, occupation, title, and business affiliation of each person who prepared, received, or has had possession, custody, or control of the Item or Document; (iii) the date of the Item or Document; (iv) a description of the subject matter of the Item or Document; (v) the date of destruction or other disposition; (vi) a statement of the reasons for destruction or other disposition; (vii) the name, address, occupation, title, and business affiliation of any person who authorized destruction or other disposition, including You; (viii) the name, address, occupation, title, and business affiliation of each person who destroyed or disposed of the Item or Document, including You; and (ix) the Request(s) that call for the production of the Item or Document.

7.    Unless a Request specifies otherwise, each Request covers the time period from January 1, 2019, to March 4, 2022, inclusive ("Time Period").

### III.    DOCUMENT REQUESTS

1.    All Documents and Communications related to Your relationship with Plaintiff, including the contract or engagement letter that Plaintiff signed; any invoices or bills that You sent to Plaintiff; and any payments that You received from Plaintiff.

2.    The case files and other Documents and Communications compiled by or sent by or to You related to Your representation of Plaintiff with respect to the Accident, including intake notes; Communications with medical providers, insurers, claims adjusters, or other third parties; and Documents related to actual or potential claims, settlement discussions, and agreements.

3.    All Documents and Communications between (i) You or Plaintiff and (ii) any other person involved in the Accident.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

4.    All Documents and Communications between (i) You or Plaintiff and (ii) any agent of, attorney for, or other representative of any other person involved in the Accident.

5.    All insurance policies, agreements, summaries of coverage, and other Documents related to the relationship between (i) any insurance providers, including liability insurers, automobile insurers, health insurers, umbrella insurers, and accident insurers, and (ii) Plaintiff or any other person involved in the Accident.

6.    All Documents and Communications between (i) You or Plaintiff and (ii) any insurer or agent or representative of an insurer that provided automobile, liability, health, accident, or other insurance coverage to any person involved in the Accident, including all Documents and Communications regarding the amounts for which Plaintiff sought insurance recovery based on the receipt of the Treatment and Defendants' associated charges.

7.    All Documents and Communications from the Time Period between (i) You and (ii) Plaintiff regarding the Accident; any actual or potential claims, suits or recoveries related to the Accident; any Defendant; any Treatment provided by any Defendant; and any payments for such Treatment, including any discounts You negotiated with respect to such payments.

8.    All Documents and Communications related to any notices of or denials of coverage, explanations of benefits, medical bills or invoices, payment of medical bills or invoices, and Communications related to requests for reductions in medical bills related to medical treatment Plaintiff sought for personal injuries arising from the Accident.

9.    All Documents and Communications related to Plaintiff's Treatment.

10.    All Documents and Communications from the Time Period between (i) You or Plaintiff and (ii) any Defendant.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

11.    All Documents and Communications in which any Defendant purportedly represented to You or Plaintiff that Defendants had submitted claims for Plaintiff's Treatment to Plaintiff's health insurer.

12.    All Documents and Communications from the Time Period with any person—including third parties—relating to any Defendant.

13.    All Documents and Communications from the Time Period with any person—including third parties—relating to Plaintiff's Treatment.

14.    All Documents and Communications from the Time Period between Plaintiff and any employee, attorney, member, partner, associate, or representative of either Grant & Eisenhofer P.A. or Gordon, Wolf & Carney, Chtd., including all Documents and Communications related to any joint defense or fee-sharing agreements.

15.    All Documents and Communications related to any relationship between (i) You, (ii) Plaintiff, and (iii) Grant & Eisenhofer P.A. or Gordon, Wolf & Carney, Chtd.

16.    All Documents and Communications from the Time Period related to Plaintiff's decision to seek Treatment from Defendants, including referrals Plaintiff received from other health care professionals.

17.    All Documents and Communications related to Your or Plaintiff's receipt of any bills or invoices from any Defendant for Plaintiff's Treatment.

18.    All Documents and Communications related to the settlement or resolution of any claims arising from or related to the Accident.

19.    All Documents and Communications related to Your or Plaintiff's payment to Defendants out of a third-party settlement in respect of a bill or invoice from Defendants for Plaintiff's Treatment, including all Documents and Communications related to the difference

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

between the amount that You or Plaintiff paid Defendants out of a third-party settlement and the amount that Defendants billed or invoiced You or Plaintiff.

20.    Documents sufficient to show the process, procedures, and protocols pursuant to which You transmit requests for reductions in medical billing amounts.

## IV.    TOPICS FOR EXAMINATION

1.    Your relationship with Plaintiff.

2.    Your Communications with any Defendant regarding Plaintiff's Accident or Plaintiff's Treatment.

3.    Your Communications with any Defendant regarding Defendants' billing policies and procedures.

4.    Your Communications with any insurer, including any insurer or agent or representative of an insurer that provided automobile, liability, health, accident, or other insurance coverage to any person involved in the Accident, regarding Plaintiff's Accident or Plaintiff's Treatment.

5.    The settlement or resolution of any claims arising from or related to the Accident.

6.    Your or Plaintiff's receipt or payment of any bills or invoices from any Defendant for Plaintiff's Treatment.

7.    Your relationship with Grant & Eisenhofer P.A. or Gordon, Wolf & Carney, Chtd.

8.    Any Documents, Communications, or Items You produce in response to this Subpoena.

-8-

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Dated: December 5, 2024                    Respectfully submitted,

                                           */s/ Timothy Farrell*_____

                                           Jeffrey J. Bushofsky
                                           Timothy Farrell
                                           Philip P. Ehrlich
                                           **ROPES & GRAY LLP**
                                           191 North Wacker Drive, 32nd Floor
                                           Chicago, Illinois 60606
                                           Tel: (312) 845-1200
                                           Fax: (312) 845-5559
                                           Jeffrey.Bushofsky@ropesgray.com
                                           Timothy.Farrell@ropesgray.com
                                           Philip.Ehrlich@ropesgray.com

                                           Thanithia Billings*
                                           **ROPES & GRAY LLP**
                                           Prudential Tower
                                           800 Boylston Street
                                           Boston, MA 02199
                                           Tel: (617) 951-7000
                                           Thanithia.Billings@ropesgray.com

                                           *Admitted *pro hac vice*

                                           *Attorneys for Defendants ATI Holdings, LLC;*
                                           *Athletic & Therapeutic Institute of Naperville,*
                                           *LLC; ATI Physical Therapy, Inc.; and Ray Wahl*

## CERTIFICATE OF SERVICE

I, Philip P. Ehrlich, hereby certify that on December 5, 2024, I caused a true and correct

copy of the foregoing document to be served via email on the following:

Kelly L. Tucker (ktucker@gelaw.com)
Laina M. Herbert (lherbert@gelaw.com)
Kevin W. Boyle (kboyle@gelaw.com)
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, Delaware 19801

William F. Moore (wmoore@gelaw.com)
GRANT & EISENHOFER P.A.
30 N. LaSalle Street, Suite 2350
Chicago, Illinois 60602

Richard S. Gordon (rgordon@GWCfirm.com)
Benjamin H. Carney (bcarney@GWCfirm.com)
Sara E. Assaid (sassaid@GWCfirm.com)
GORDON, WOLF & CARNEY, CHTD.
100 West Pennsylvania Ave., St. 100
Baltimore, Maryland 21204

<div style="text-align:right">

*/s/ Philip P. Ehrlich*

Philip P. Ehrlich
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5559
Philip.Ehrlich@ropesgray.com

*Attorney for Defendants ATI Holdings, LLC; Athletic &
Therapeutic Institute of Naperville, LLC; ATI Physical
Therapy, Inc.; and Ray Wahl*

</div>

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| STANLEY MORSBERGER and CLEMENTINE ELUH, on their own behalf and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No: 1:22-cv-01181 Honorable Jorge L. Alonso Honorable M. David Weisman |
| v. | ) ) | |
| ATI HOLDINGS, LLC *et al.*, | ) ) | |
| Defendants. | ) | |

**STIPULATION AND REGARDING DISCOVERY OF <u>ELECTRONICALLY STORED INFORMATION</u>**

WHEREAS, the above action, brought by Plaintiffs Richard Morsberger and Clementine Eluh (collectively, "Plaintiffs") against Defendants ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, d/b/a/ ATI Physical Therapy, ATI Physical Therapy, Inc., and Ray Wahl (collectively, "Defendants," with Plaintiffs, the "Parties," and each individually a "Party") is pending before this Court;

WHEREAS, the Parties seek to facilitate the exchange of electronically stored information ("ESI") and hard-copy documents in this action, pursuant to this Court's authority and with the consent of the Parties;

WHEREAS, the Parties intend this Order to be interpreted such that, subject to the Federal Rules of Civil Procedure, responsive, non-privileged ESI is produced, while minimizing unnecessary burden and costs associated with the production;

WHEREAS, this Order is not intended to be an exhaustive list of discovery obligations or rights of the Parties, and obligations or rights not addressed by this Order are subject to the relevant

Federal Rules of Civil Procedure or to any other stipulations or agreements between the parties, if applicable;

WHEREAS, the Parties agree to cooperate in good faith in the implementation of this Order;

WHEREAS, the Parties and the Court recognize that this Order is based on facts and circumstances as they are currently known to each Party, that the electronic discovery process is iterative, and that additions and modifications to this Order may become necessary as more information becomes known to the Parties; and

WHEREAS, this Order may be modified by written stipulation of the Parties without further Order of the Court:

**IT IS HEREBY ORDERED:**

I.    **DEFINITIONS**

A.    "Document" or "documents" is defined to be synonymous in meaning equal in scope to the usage of that term as defined in Federal Rule of Civil Procedure 34(a)(1). A draft or non-identical copy is a separate document within the meaning of this term.

B.    "Email" (Electronic mail) means an electronic means for sending, receiving, and managing communications via a multitude of different structured data applications (email client software), including, but not limited to, Outlook, Lotus Notes, other mail applications, or those often known as "webmail," including Google Gmail or Yahoo mail.

C.    "ESI" is an abbreviation of "electronically stored information" and is defined to be synonymous in meaning and equal in scope to the usage of that term as defined in Federal Rule of Civil Procedure 34(a)(1).

D.    "Extracted Text" means the text extracted from a Native Format file and includes all header, footer, and document body information.

E.    "Hash value" is a unique numerical identifier assigned to a file, a group of files, or a portion of a file based on a standard mathematical algorithm applied to the characteristics of the data set.

F.    "Load file" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load file may also contain data relevant to the individual Documents, including user or software created Metadata.

G.    "Metadata" means structured information regarding an information resource that describes, explains, locates, or otherwise makes it easier to retrieve, use, or manage that information resource.

H.    "Native Format" means the format of ESI is the application in which such ESI was originally created.

I.    "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

J.    "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

## II.    **GENERAL PROVISIONS**

A.    The Parties will prepare their production documents in advance in accordance with the agreed-upon specifications set forth below, but will not process them through a common vendor.

B.    The default assumption under this Order is that until the resolution of this action, each Party will agree to bear its own reasonable costs in producing documents in conformity with this Order.

C.    Scope of Discovery. Nothing set forth in this Order shall be read to change the Parties' obligations as to the proper scope of discovery pursuant to Federal Rule of Civil Procedure 26. Additionally, nothing herein shall be read to imply that Documents or ESI produced under its terms are relevant or admissible in this Action or in any other litigation.

D.    Preservation of Data. This Order does not alter or expand the preservation obligations of any Party.

E.    Privileges. Nothing in this Order shall be interpreted to require the disclosure of Documents or ESI that a Party contends are protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

F.    Reservation of Rights. The Parties reserve all rights under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court Northern District of Illinois.

G.    The Parties shall make reasonable, good faith efforts to comply with and resolve any disagreements concerning compliance with this Order. If a producing Party cannot comply with any material aspect of this Order, such Party shall inform the receiving Party in writing at or before the time of production as to why compliance with this Order was not possible. No Party

may seek relief from the Court concerning compliance with this Order until it has first conferred with other affected Parties to this action.

H.    The Parties agree that the absence of any term from this Order (including any provision proposed by a Party but not ultimately adopted herein) shall not be construed as a rejection of such term. To the contrary, the Parties reserve all rights with respect to all matters not specifically addressed herein.

III.    **COLLECTION OF DOCUMENTS AND ESI**

A.    Custodians. The Parties agree to meet and confer (verbally or through correspondence) in good faith to identify custodians who are likely to have Documents or ESI responsive to the Parties' discovery requests. Prior to the production of Documents and ESI, each Party shall provide to all other Parties a list of Document and ESI custodians from whom Documents and ESI will be collected. Each Party reserves the right to subsequently add or remove custodians, subject to and consistent with the removing Party's obligations under the Federal Rules of Civil Procedure; provided that the adding or removing Party gives advance notice of the addition or removal to the other Party. The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate.

B.    Sources. The Parties shall make reasonable efforts to identify and collect any Documents and ESI potentially relevant to this action from all sources of potentially responsive information, including hard-copy files and folders, email systems, cellular phones, messaging systems, cloud-based systems, computers, servers, network drives, and shared drives, consistent with the list of custodians disclosed in accordance with paragraph III.A, and without the need to produce duplicative information.

C.    To the extent that relevant ESI includes personal email, the Parties will make reasonable efforts to collect and produce this information (subject to relevant general and specific objections), provided a custodian has control over this data and it is available in a format that is accessible by the Parties. In the event that any Party identifies a particular source of responsive Documents or ESI for which application of this Order would be impossible or otherwise unduly burdensome or impractical, the Party identifying the source will promptly notify the other Parties, and the Parties shall meet and confer (verbally or through correspondence) concerning the source.

D.    Inaccessible or Unduly Burdensome ESI Sources. To the extent any Party identifies a source of ESI that such Party believes does not warrant the preservation, collection, review, or production of the ESI referenced in this Order, the Party identifying the source will promptly notify the other Parties, and the Parties shall meet and confer (verbally or through correspondence) concerning the source.

E.    Any instant message files saved to work computers or servers in the ordinary course of business shall be collected and reviewed for production. No Party shall be obligated to preserve instant message communications to the extent that the Party's instant messaging or IT system is not capable, without generating meaningful hardship or burden, of storing or saving such messages, in which case that Party shall inform the other Parties

F.    Search of ESI. The Parties shall meet and confer on a search protocol for responsive documents that may use keyword searching and date range limiters to identify ESI that is reasonably likely to have discoverable information regarding the subject matter of this action. The Parties agree that the fact that a document is hit or captured by the application of any search methodologies or search terms does not mean that such document is necessarily responsive to any propounded discovery request, non-privileged, and validly subject to production, or otherwise

6

relevant to this action. Determinations of the discoverability, responsiveness, and privilege of the documents and materials hit or captured by the application of search methodologies shall still be made by the producing Party. Nothing in this Order shall preclude the Parties from further meeting and conferring on the technology and/or methodology, including technology assisted review or other analytics methods, to be employed by a producing Party.

   G. Collection of ESI. The Parties shall use reasonable and proportionate best efforts to collect ESI in a forensically sound manner that does not alter metadata or other file attributes.

   H. Third-Party Documents. A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to this action have requested that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce to all adverse parties any documents obtained pursuant to a non-Party subpoena; the Issuing Party shall make any such production within ten (10) business days of receiving the production from the third party. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of third parties to object to a subpoena.

## IV. PRODUCTION PROTOCOL FOR SPECIFIED CATEGORIES OF DOCUMENTS

### A. General

1. Preservation of Native Files. When ESI is produced, the producing Party will maintain a separate copy or image as a native file and, in that separate file, it will not modify the native file in a manner that materially changes the file or the metadata.

2. Chain of Custody. To the extent not transmitted by hand or via secure file transfer service, the producing Party shall ship media and/or data via FedEx or UPS and provide a tracking number for all shipments to ensure proper chain of custody.

3.      Legibility. The Parties will make reasonable efforts to ensure that all Documents and ESI they produce are legible. If a Document is not legible and it is possible to produce a legible copy, such a legible copy will be produced (subject to relevant general and specific objections) within ten (10) business days of a request from a receiving Party, or as mutually agreed upon by the Parties. But if no legible copy can be made, then the original will be made available for inspection and copying within ten (10) business days of a request from a receiving Party, or as mutually agreed upon by the Parties.

4.      Authenticity. No Party shall object that Documents or ESI produced pursuant to this Order are not authentic based solely on the file naming convention described herein. The Parties otherwise reserve all rights regarding their ability to object to the authenticity of Documents or ESI.

### B.      Hard-Copy Documents

The Parties shall produce non-duplicative (as defined below) responsive hard-copy documents in single-page black and white TIFF format (300 DPI resolution, Group IV compression); the documents should be properly unitized (i.e., contain, to the extent reasonable and practicable, correct logical document breaks and capture logical document attachment ranges). A producing Party may produce color hard-copy documents as black-and-white images; where color is material to the interpretation of the document and upon reasonable request, the receiving Party may request that the document be produced in color (color documents will be produced as single page JPG images). The producing Party shall also provide document level OCR text files to accompany the TIFF format production. Any documents that present imaging or formatting problems will be promptly identified and the Parties will meet and confer in an attempt to resolve the problems. Hard copy documents should contain the following fields in ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g.,

8

Concordance, Relativity). The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row. Additionally, a cross-reference image file registration file that can be loaded into commercially acceptable production software (e.g., Opticon, Ipro) should be provided. Each TIFF in a production must be referenced in the corresponding image load file. The data load file should contain the following fields:

    a)      Custodian (name of custodian where the document originated);

    b)      Bates Begin (beginning production number);

    c)      Bates End (ending production number);

    d)      Begin Bates Attach (beginning attachment production number);

    e)      End Bates Attach (ending attachment production number);

    f)      Page count;

    g)      Confidential Properties (populated with the confidentiality status);

    h)      Redaction Field. Identifies documents that contain redactions in the production; and

    i)      CDVol. or ProdVol (the Name of media on which the data was produced).

**C.**      **Non-electronic mail ESI (excluding structured data)**

1.      The Parties shall produce non-electronic mail ESI originally maintained as ESI in single-page and white TIFF format (300 DPI resolution, Group IV Compression) along with corresponding document-level extracted text format, except that Excel spreadsheets (.xls, .xlsx), comma delimited text files (.csv), Access databases, and media files (e.g., video and audio files) shall be produced in native format. If the document contains comments or tracked changes, the TIFF images shall be generated to include the comments or track changes contained in the file. The Parties shall produce presentation files (e.g., MS PowerPoint and Google Presently) in both

native format and in single-page and white TIFF format (300 DPI resolution, Group IV Compression) along with corresponding document-level extracted text format. The Parties agree that when producing a native file, they will include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number, any applicable confidentiality legend and state "Document Produced in Native Format" on the TIFF image. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the Native Link field. The filename field produced in the production load file that reflects the original metadata should maintain the original file name. The Parties further agree to meet and confer concerning the production of additional file types or specific files in native format as discovery progresses, should a reasonable need for the production of such files in native format arise. The Parties shall produce an ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g., Concordance). The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row. Additionally, a cross-reference image file registration file that can be loaded into commercially acceptable production software (e.g., Opticon, Ipro) should be provided. Each TIFF in a production must be referenced in the corresponding load file. The load files should contain the following fields (to the extent the data is able to be automatically extracted from the file and/or is available without manual input).

     a)     Custodian (name of custodian where the document originated).

     b)     All Custodians (names of all custodians that had electronic files that were removed due to de-duplication).

c)    Created Date (date the file was created).

d)    Created Time (time the file was created).

e)    Last Modified Date (date the file was last modified).

f)    Last Modified Time (time the file was last modified).

g)    Last Saved By (name of user who last saved the file).

h)    File Name* (original name of the file).

i)    Subject* (any value populated in the Subject field of the document

j)    Title* (any value populated in the Title field of the document properties (if any).

k)    File Ext (extension for the file).

l)    MD5 Hash (or equivalent).

m)    Bates Begin (beginning production number).

n)    Bates End (ending production number).

o)    A field populated with the Bates number of the first page of the family group of documents (BEGBATESATT).

p)    A field populated with the Bates number of the last page of the family group of documents (ENDBATESATT).

q)    Attachment Name* (original file name or Bates numbers of all attachments to a parent document).

r)    Page count.

s)    Native link (path to the native file as included in the production (e.g., d:\PROD001\natives\ABC00015.xls) for all files produced in native format.

t)    Confidential Properties (populated with the confidentiality status).

u)    Redaction Field.  Identifies documents that contain redactions in the production.

v)    The Full Path* (full path location to where the file originally resided) need not be included in the load file, but should be preserved, if available, for potential provision upon reasonable request.

w)    CDVol or ProdVol (the name of media on which the data was produced).

x)    TimeZone. Three letter reference to time zone that the data was processed in, as agreed between Parties.

y)    Attachment Count

z)    Author

aa)    Document Type

bb)    File Size

2.    All non-electronic mail ESI (excluding structured data) shall be processed with a single time zone and a date and time setting that is consistent across all Parties' productions. The Parties agree to the use of Universal Time Coordinated (UTC).

**D.    Electronic Mail**

1.    The Parties shall produce electronic mail in single-page black and white TIFF format (300 DPI resolution, Group IV compression) along with the corresponding document-level extracted text, except that attachments of Excel spreadsheets (.xls, .xlsx), comma delimited text files (.csv), Access databases, and media files (e.g., video and audio files) collected from custodians shall be produced in native format. The Parties shall produce presentation files (e.g., MSPowerPoint and Google Presently) in both native format and in single-page and white TIFF format (300 DPI resolution, Group IV Compression) along with corresponding document-level extracted text format. The Parties agree that when producing a native file, they will include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number, and confidentiality

12

legend, and state "Document Produced in Native Format" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the document with its original file extension. The filename field produced in the production load file that reflects the original metadata should maintain the original file name. The Parties further agree to meet and confer concerning the production of additional file types or specific files in native format as discovery progresses should a reasonable need for the production of such files in native format arise. The Parties shall produce an ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g., Concordance). The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row. Additionally, a cross-reference image file registration file that can be loaded into commercially acceptable production software (e.g., Opticon, Ipro) should be provided. Each TIFF in a production must be referenced in the corresponding image load file. The load files should contain the following fields (to the extend the data is able to be automatically extracted from the file and/or is available without manual input):

    a)    Custodian (name of custodian where the document originated.

    b)    All Custodians (names of all custodians that had electronic files that were removed due to de-duplication).

    c)    Author (From field)*.

    d)    CC*.

    e)    BCC*.

    f)    Recipient (To field)*.

    g)    Subject* (subject line of the email).

h)  MD5 Hash (or equivalent).

i)  Date Sent (date the email was sent).

j)  Time Sent (time the email was sent).

k)  Date Received (date the email was received).

l)  Time Received (time the email was received).

m)  Parent Date (the date of the parent email should be applied to the parent email and all of the email attachments).

n)  File Ext (extension for the file).

o)  Bates Begin (beginning production number).

p)  Bates End (ending production number).

q)  Attachment Bates Begin (beginning production number of all attachments to a parent document).

r)  A field populated with the Bates number of the first page of the family group of documents (BEGBATESATT).

s)  A field populated with the Bates number of the last page of the family group of documents (ENDBATESATT).

t)  Page count.

u)  Confidential Properties (populated with the confidentiality status).

v)  Redaction Properties.

w)  Native link (path to the native file as included in the production e.g., d:\PROD001\natives\ABC00015.xls) for all files produced in native format.

x)  CDVol or ProdVol (the name of media on which the data was produced).

14

y)    TimeZone (three letter reference to reflect the time zone that the data was processed in, as agree between Parties).

z)    CID/Thread Index (e.g., email conversation index information).

2.    In addition to the foregoing fields, electronic mail shall be produced along with all relevant attachments in sequential order as part of a family, maintaining the parent-child relationship. Any emails or attachments to emails withheld on privilege grounds as to which any documents in the document family are produced in whole or in part: (a) will be included on a privilege log to be provided within a reasonable time period after production unless specifically carved out by a future agreement of the Parties relating to privilege logging, and (b) shall include a TIFF image placeholder for each unique withheld document, branded with a unique Bates number, and confidentiality legend, and state "Document Withheld as Privileged" on the TIFF image. This paragraph imposes no additional obligations on the Parties with respect to the content and format of privilege logs. This procedure is without prejudice to any challenges brought regarding documents withheld by the producing Party.

3.    All compressed or zipped ESI shall be unzipped or decompressed during processing. To the extent an electronic file contains embedded files, such files shall be produced as attachments in sequential order as part of a family, maintaining the parent-child relationship. Parties should negotiate to limit extraction or production of embedded objects to non-image based types to restrict extraction of images embedded within email or presentations (e.g., signature blocks).

4.    Each page of a produced document, except those documents that are produced in native format, shall have a legible, unique page identifier ("Bates Number") electronically "burned" (stamped) onto the image at a location that does not obliterate, conceal or interfere with

any information from the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend or redactions (where applicable). The confidential legend shall be "burned" (stamped) into the document's image at a location that does not obliterate or obscure any information from the source document. Any confidentiality designation or Bates Number range for a natively-produced document will be provided in a separate field and burned into the placeholder image.

5.    Each page image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension ".TIF." Any native documents shall be named with the Beginning Bates number of the document.

6.    A document level text file will be provided containing the extracted text (or OCR for documents where no extracted text exists). The file will be named after the Beginning Bates number of each document. Where a document contains redactions, only OCR text will be provided.

7.    A placeholder should be inserted for exception documents (i.e., failed documents that could not be processed due to corruption or password protection) that are part of a family being produced with the legend "This document could not be imaged" and a produced field indicating "Could Not Be Imaged." Such placeholder shall include a unique Beginning Bates number of the document.

8.    Electronic mail that cannot be reviewed, produced, and/or imaged in their entirety because of technical issues (other than the file types that do not require processing under the terms of this Order) should be identified as an exception file and included on a log that lists the file name, custodian, and reason for the exception (i.e., corruption, unavailable password protection, proprietary software, or other technical issue). The producing Party shall provide a copy of this

log to the receiving Party at agreed upon intervals, and shall provide a final copy of the log upon completion of document production. If the receiving Party requests production of any files listed on the exception log, the Parties will meet and confer on a reasonable and cost-effective means for attempting to provide the requested files.

9.    Files to be processed may be identified through the use of an inclusionary list of file types that typically contain meaningful user-created data. The following categories of electronic files may be specifically excluded from collection, review and production:

a)    System or executable files (.exe, .dll, etc.);

b)    ESI or data with a hash value that matches a value on the list(s) of known operating system and application files provided by the National Software Reference Library ("NSRL"), based out of the National Institute of Standards in Technology ("NIST"); and

c)    ESI or data with file extensions that typically contain no meaningful user-created data and/or cannot be reviewed in any meaningful format, including but not limited to: ani; bat; c: cab; cfg; class; dll; ex_; exe; fon; hlp; ico; icon; inf; ini; isu; java; jpa; kqp; mpe; msi; ocx; out; pcd; pcx; reg; sfw; sys; tag; ttf; and xp.

10.    In order to reduce the volume of documents reviewed and produced, each Party shall de-duplicate ESI using the MD5 hash value both vertically (within custodians) and horizontally (across custodians) within an organization. The de-duplicated originals and their associated metadata shall be securely retained such that reports containing relevant associated metadata about the documents can be made available upon reasonable request. Nothing in this Order shall preclude the Parties from further meet and confer on the scope of de-duplication.

11.    Where color is material to the interpretation of ESI and upon reasonable request, the receiving Party may request that the ESI be produced in color. The requesting Party must identify the documents by Bates number. Single-page JPG files are preferred for Relativity. Either color JPG or TIFF files are suitable for Concordance.

12.    For any productions made prior to entry of this Order, the producing Party shall supply, in a reasonably prompt manner, load files that comply with the provisions of the Order.

13.    All electronic mail shall be processed with a single time zone and a date and time setting that is consistent across all Parties' productions. The Parties agree to the use of Universal Time Coordinated (UTC).

### E.    Structured Data

The Parties will endeavor to agree upon the manner in which structured data, if any, will be produced following service of written document request responses and objections. If agreement cannot be reached after completion of a meet-and-confer process, the Parties may submit any issues for resolution by the Court.

## V.    PRODUCTION MEDIA AND ADDITIONAL FILE PROCESSING

Documents and ESI shall be produced on readily accessible computer or electronic media such as optical media (CD or DVD), external hard drives, or via an FTP site, or similar electronic media (the "Production Media"). Each piece of Production Media shall identify a production number or other unique identifying label corresponding to the Party and production with which the documents on the Production Media are associated (e.g., "[Defendant Party]001", "[Plaintiff Party]001"), as well as the volume of the material in that production (e.g., "-001", "-002"). For example, if the first production from a Party comprises document images on three hard drives, the Party shall label each hard drive in the following manner; "[Party Name] 001-001", "[Party Name] 001-002", and "[Party Name] 001-003." Each piece of Production Media shall be labeled to also

18

identify: (1) the production date; and (2) the production number or Bates Number range of the documents contained on the Production Media. Industry-standard encryption tools and practices must be used when producing documents. Passwords must be at least eight characters with a mix of character sets and sent in a separate communication from the encrypted data. The Parties agree to expeditiously provide replacement production media or provide other reasonable assistance in the event that the Receiving Party reports difficulty in accessing the media.

VI.    **LIMITATIONS**

    1.    Nothing in this Order shall prohibit a Party from seeking modification of any of its terms, either by stipulation or by application to the Court. Should any Party subsequently determine that it cannot in good faith proceed as required herein or without undue burden and cost, the Parties will meet and confer to attempt to resolve any dispute before seeking Court intervention.

    2.    This Order relates to the general identification and production of documents and ESI, and is not otherwise intended to alter the Parties' respective rights and obligations under the Federal Rules of Civil Procedure or the Local Rules of the United States District Court Northern District of Illinois.


**SO ORDERED.**

Dated:  4/8/2024

*M. David Weisman*
_____
M. David Weisman
United States Magistrate Judge

19

WE SO MOVE
and agree to abide by the
terms of this Order:

/s/ Kelly L. Tucker
Kelly L. Tucker
Laina M. Herbert
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, Delaware 19801
(302) 622-7000
(302) 622-7100 (facsimile)
ktucker@gelaw.com
lherbert@gelaw.com

William F. Moore
GRANT & EISENHOFER P.A.
30 N. LaSalle Street, Suite 2350
Chicago, Illinois 60602
(312) 610-5350
(312) 214-0001 (facsimile)
wmoore@gelaw.com

Richard S. Gordon
Benjamin H. Carney*
GORDON, WOLF & CARNEY, CHTD.
100 West Pennsylvania Ave., St. 100
Baltimore, Maryland 21204
(410) 825-2300
(410) 825-0066 (facsimile)
Rgordon@gwcfirm.com
Bcarney@gwcfirm.com

*Attorneys for Plaintiffs and the Putative
Class*

Dated: April 6, 2024

WE SO MOVE
and agree to abide by the
terms of this Order:

/s/ Philip P. Ehrlich
Jeffrey J. Bushofsky
Philip P. Ehrlich
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
T: (312) 845-1200
F: (312) 845-5559
Jeffrey.Bushofsky@ropesgray.com
Philip.Ehrlich@ropesgray.com

Mark A. Cianci*
ROPES & GRAY LLP
Prudential Twr., 800 Boylston Street
Boston, MA 02199
T: (617) 951-7122
Mark.Cianci@ropesgray.com

*Attorneys for Defendants*

* Admitted *pro hac vice*

Dated: April 6, 2024

## AFFIDAVIT OF PROCESS SERVER

### United States District Court for the Northern District of Illinois

**Stanley Morsberger, et al.**

                Plaintiff(s),

VS.

**ATI Holdings, LLC, et al.**

                Defendant(s).

Attorney: Timothy Farrell

Ropes & Gray LLP
1211 Avenue of the Americas
New York NY 10036



*327583*

**Case Number: 1:22-cv-01181**

Legal documents received by Same Day Process Service, Inc. on **12/05/2024** at **5:50 PM** to be served upon **Gilman & Bedigian, LLC at 1954 Greenspring Drive Suite 250, Timonium, MD 21093**

I, **Rodney Getlan**, swear and affirm that on December 09, 2024 at 11:22 AM, I did the following:

Served **Gilman & Bedigian, LLC** by delivering a conformed copy of the **Subpoena to Testify at a Deposition in a Civil Action; Federal Rule of Civil Procedure 45; Exhibit A; Exhibit 1 - Stipulation and Regarding Discovery of Electronically Stored Information; Witness Check for $113.37 to Charles Gilman, Esq. as Resident Agent of Gilman & Bedigian, LLC at 1954 Greenspring Drive Suite 250, Timonium, MD 21093**.

**Description of Person Accepting Service:**
Sex: Male Age: 58 Height: 5ft4in-5ft8in Weight: 161-200 lbs Skin Color: Caucasian Hair Color: Black & Gray

**Supplemental Data Appropriate to this Service:**

I declare under penalty of perjury that the foregoing information contained in this affidavit is true and correct and that I am a professional process server over the age of 18 and have no interest in the above legal matter.

**Rodney Getlan**
Process Server
**Same Day Process Service, Inc.**
**1413 K St., NW, 7th Floor**
**Washington DC 20005**
**(202)-398-4200**
**info@samedayprocess.com**

Internal Job
ID:327583



# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Stanley Morsberger**, *et al.*, | |
| *Plaintiffs*, | Case No. 1:22-cv-01181 |
| v. | |
| **ATI Holdings, LLC**, *et al.*, | Honorable Jorge L. Alonso |
| *Defendants*. | Honorable M. David Weisman |

**NOTICE OF SUBPOENA FOR DOCUMENTS AND TESTIMONY**
**DIRECTED TO RAFAEL LAW, LLC**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to the attached subpoena ("Subpoena") and Fed. R. Civ. P. 45, Defendants ATI Holdings, LLC; Athletic & Therapeutic Institute of Naperville, LLC; ATI Physical Therapy, Inc.; and Ray Wahl ("Defendants"), by and through their undersigned counsel, request production of any and all documents, information, or objects, including electronically stored information, in the possession, custody or control of Rafael Law, LLC ("Rafael Law") as specified in **Exhibit A**.

PLEASE TAKE FURTHER NOTICE THAT that, Defendants, by and through their undersigned counsel, will take a deposition upon oral examination of the following non-party at the time and location specified below, or at some other time and location agreed upon by the parties. The attached **Exhibit A** offers an overview of the topics to be inquired upon at this deposition.

| Third Party | Date/Time | Location |
|---|---|---|
| Rafael Law, LLC | January 22, 2025<br><br>9:00 a.m. ET | Ropes & Gray LLP<br>2099 Pennsylvania Avenue NW,<br>Washington, DC 20006 |

The deposition shall take place before a notary public or other officer authorized to administer oaths and record testimony pursuant to Fed. R. Civ. P. 28. The deposition will be recorded by stenographic, audio, video, and/or real-time transcription (for example, *LiveNote*), and will continue from day to day, excluding Saturdays, Sundays, and legal holidays, until completed. The deposition is being taken for the purpose of discovery, for use at trial, or both, or for such other purposes permitted under the Federal Rules of Civil Procedure.

PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil Procedure 45(g), the third party may be in contempt if it fails, without adequate excuse, to obey the subpoena, and that the third party has certain rights in response to the subpoena served on it as outlined in Federal Rule of Civil Procedure 45(d)-(e).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois

| | |
|---|---|
| Stanley Morsberger, et al. | )<br>) |
| *Plaintiff* | ) |
| v. | )<br>) |
| ATI Holdings, LLC, et al. | )<br>) |
| *Defendant* | ) |

Civil Action No.   1:22-cv-01181

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                   Rafael Law, LLC

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:   See attached Exhibit A.

| Place: Ropes & Gray LLP, 2099 Pennsylvania Avenue NW, Washington, DC 20006 | Date and Time:<br>01/22/2025 9:00 am |
|---|---|

The deposition will be recorded by this method:   Stenographic, audio, video, and/or real-time transcription

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See attached Exhibit A. Please provide the documents by Friday, January 10, 2025, at 9 AM ET.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/05/2025

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Timothy Farrell |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
ATI Holdings, LLC, et al. _____ , who issues or requests this subpoena, are:
Timothy Farrell, 191 N. Wacker Dr., 32nd Flr., Chicago, IL 60606, timothy.farrell@ropesgray.com, 312-845-1209

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   1:22-cv-01181

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

 ❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

 ❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

          _____
                *Server's signature*

          _____
                *Printed name and title*

          _____
                *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

<u>EXHIBIT A</u>

I.    **DEFINITIONS**

1.    "Action" means the action captioned *Morsberger, et al. v. ATI Holdings LLC, et al.*, No. 1:22-cv-01181 (N.D. Ill. filed Mar. 14, 2022).

2.    "And" and "or" shall be construed as either conjunctive or disjunctive, whichever is more inclusive in context.

3.    "Any" shall be construed as "all" and vice versa, as necessary to bring within the scope of the requests set forth below (together, the "Requests," and each individually, a "Request") all information that might otherwise be construed to be outside of its scope.

4.    "Accident" means the circumstances described in paragraphs 19, 82, and 87 of the Complaint (as defined below) that gave rise to Plaintiff Stanley Morsberger's underlying personal injury action and to the receipt of physical therapy services from certain Defendants.

5.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) between or among two or more persons or entities, whether transmitted orally or in writing, and whether transmitted in person, by an electronic device such as telephone or email, or by any other means or medium. The term shall include spoken words, conversations, conferences, discussions, interviews, reports, meetings, negotiations, agreements, understandings, and Documents (as defined below).

6.    "Complaint" means the First Amended Complaint [Dkt. 68] filed by Plaintiff in this Action on April 28, 2023.

7.    "Device" means any wireless cell phone, tablet, laptop computer, or other wireless electronic device used to communicate or store data.

8.    "Document" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and shall include all originals (both sides thereof), copies, non-identical copies

(whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise), and drafts—in each case—of the following items, whether printed or recorded (through a sound, video, or other electronic, magnetic, or digital recording system) or reproduced by hand, as well as all materials underlying, supporting, or used in the preparation of the following items: written Communications, letters, calendars, diaries, journals, correspondences, telegrams, telexes, facsimile transmissions, memoranda, records, summaries of personal conversations or interviews, notes, financial or statistical statements or compilations, contracts, agreements, analyses, pictures, films, plans, tape recordings, videotapes, disks, websites, text messages, electronic mail ("email"), other electronically transmitted messages, social media messages and postings, any other electronically transmitted information or communications, material of any sort and in any format maintained or available at any time on the internet (whether formerly, currently, or both), voicemail messages (including such messages that are digitized and forwarded to an email account), and any other writings, papers, and tangible things of whatever description. "Document" shall also include any "Electronically Stored Information" or "ESI," including (a) information generated, received, processed, recorded, or stored in or on a computer, server, or electronic device memory; (b) website data; and (c) outputs resulting from the use of any software program, operating system, or mobile application. A draft or non-identical copy is a separate Document within the meaning of these terms.

9.     "Include" and "including" mean "include without limitation" and "including without limitation," respectively.

10.     "Item" means any physical specimen, tangible thing, or other object bearing, containing, demonstrating, or otherwise including any discoverable information, other than a Document.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

11.      "Person" means, without limitation, any natural person, corporation, partnership, limited liability company, proprietorship, joint venture, association, government entity, group, or any other form of legal entity.

12.      "Plaintiff" means Stanley Morsberger, one of the plaintiffs in the Action.

13.      The verb "relate" and its variants encompasses the terms "regard," "refer," "reflect," and "concern" and shall be construed to bring within the scope of each Request any information that comprises, evidences, constitutes, describes, explicitly or implicitly refers to, was reviewed in conjunction with, or was generated as a result of the subject matter of the Request, including all information that reflects, records, memorializes, discusses, evaluates, considers, reviews, reports, or otherwise evidences the existence of the Request's subject matter.

14.      "Treatment" means the physical therapy services that Plaintiff received from certain Defendants between February 6, 2019, and March 7, 2019.

15.      "You" or "Your" means Rafael Law, LLC and any attorneys, agents, representatives, advisors, and any other persons acting for or on its behalf.

16.      The singular form of a word shall include the plural and vice versa, and the use of one gender shall include all, as contextually appropriate.

17.      Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

## II.    INSTRUCTIONS

The following instructions shall apply to the Requests below and should be considered as part of each Request.

1.      You are required to answer each Request set forth below and to produce all requested Items and Documents in Your possession, custody, or control, regardless of whether the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Items or Documents are possessed by You or by any successors, affiliates, assigns, agents, brokers, accountants, experts, representatives, attorneys, consultants, partners, or family members, or by any other persons acting or purporting to act on Your behalf.

2.      In responding to the Requests, You must collect, review, and produce Items and Documents pursuant to the procedures and requirements as set forth in the ESI Protocol attached hereto as **Exhibit 1**.

3.      In responding to these Requests, You shall inquire of all persons within Your control who have or may have Items or Documents responsive to the Requests.

4.      If You claim that any of the Requests are objectionable, then You shall (a) identify that portion of such Request claimed to be objectionable, and state the nature and basis of the claimed objection with sufficient particularity and in sufficient detail to permit the Court to adjudicate the validity of the claimed objection; (b) identify any Item or Document withheld from production pursuant to such claimed objection with sufficient particularity and in sufficient detail to permit the Court to determine whether the Item or Document falls within the scope of such claimed objection; and (c) answer each Request to the extent You do not claim it to be objectionable.

5.      If You withhold any requested Item or Document (in whole or in part) under a claim of privilege or other purported ground for nonproduction, You must prepare a log of such documents pursuant to the ESI Protocol.  You are further requested to provide all requested Items or Documents not subject in their entirety to a claim of privilege or other ground for nonproduction by redacting or otherwise protecting the portions over which You assert a privilege.

6.      If any Item or Document called for was formerly in Your possession, custody, or control and has been destroyed, discarded, or otherwise disposed of, You shall furnish a list setting

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

forth, as to each Item or Document or part thereof, the following information: (i) the nature of the Item or Document (*e.g.*, letter, memorandum, note, etc.); (ii) the name, address, occupation, title, and business affiliation of each person who prepared, received, or has had possession, custody, or control of the Item or Document; (iii) the date of the Item or Document; (iv) a description of the subject matter of the Item or Document; (v) the date of destruction or other disposition; (vi) a statement of the reasons for destruction or other disposition; (vii) the name, address, occupation, title, and business affiliation of any person who authorized destruction or other disposition, including You; (viii) the name, address, occupation, title, and business affiliation of each person who destroyed or disposed of the Item or Document, including You; and (ix) the Request(s) that call for the production of the Item or Document.

7.    Unless a Request specifies otherwise, each Request covers the time period from January 1, 2019, to March 4, 2022, inclusive ("Time Period").

## III.    DOCUMENT REQUESTS

1.    All Documents and Communications related to Your relationship with Plaintiff, including the contract or engagement letter that Plaintiff signed; any invoices or bills that You sent to Plaintiff; and any payments that You received from Plaintiff.

2.    The case files and other Documents and Communications compiled by or sent by or to You related to Your representation of Plaintiff with respect to the Accident, including intake notes; Communications with medical providers, insurers, claims adjusters, or other third parties; and Documents related to actual or potential claims, settlement discussions, and agreements.

3.    All Documents and Communications between (i) You or Plaintiff and (ii) any other person involved in the Accident.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

4.     All Documents and Communications between (i) You or Plaintiff and (ii) any agent of, attorney for, or other representative of any other person involved in the Accident.

5.     All insurance policies, agreements, summaries of coverage, and other Documents related to the relationship between (i) any insurance providers, including liability insurers, automobile insurers, health insurers, umbrella insurers, and accident insurers, and (ii) Plaintiff or any other person involved in the Accident.

6.     All Documents and Communications between (i) You or Plaintiff and (ii) any insurer or agent or representative of an insurer that provided automobile, liability, health, accident, or other insurance coverage to any person involved in the Accident, including all Documents and Communications regarding the amounts for which Plaintiff sought insurance recovery based on the receipt of the Treatment and Defendants' associated charges.

7.     All Documents and Communications from the Time Period between (i) You and (ii) Plaintiff regarding the Accident; any actual or potential claims, suits or recoveries related to the Accident; any Defendant; any Treatment provided by any Defendant; and any payments for such Treatment, including any discounts You negotiated with respect to such payments.

8.     All Documents and Communications related to any notices of or denials of coverage, explanations of benefits, medical bills or invoices, payment of medical bills or invoices, and Communications related to requests for reductions in medical bills related to medical treatment Plaintiff sought for personal injuries arising from the Accident.

9.     All Documents and Communications related to Plaintiff's Treatment.

10.     All Documents and Communications from the Time Period between (i) You or Plaintiff and (ii) any Defendant.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

11.    All Documents and Communications in which any Defendant purportedly represented to You or Plaintiff that Defendants had submitted claims for Plaintiff's Treatment to Plaintiff's health insurer.

12.    All Documents and Communications from the Time Period with any person— including third parties—relating to any Defendant.

13.    All Documents and Communications from the Time Period with any person— including third parties—relating to Plaintiff's Treatment.

14.    All Documents and Communications from the Time Period between Plaintiff and any employee, attorney, member, partner, associate, or representative of either Grant & Eisenhofer P.A. or Gordon, Wolf & Carney, Chtd., including all Documents and Communications related to any joint defense or fee-sharing agreements.

15.    All Documents and Communications related to any relationship between (i) You, (ii) Plaintiff, and (iii) Grant & Eisenhofer P.A. or Gordon, Wolf & Carney, Chtd.

16.    All Documents and Communications from the Time Period related to Plaintiff's decision to seek Treatment from Defendants, including referrals Plaintiff received from other health care professionals.

17.    All Documents and Communications related to Your or Plaintiff's receipt of any bills or invoices from any Defendant for Plaintiff's Treatment.

18.    All Documents and Communications related to the Request for Billing Discount You sent to Defendants on September 8, 2020.

19.    All Documents and Communications related to the settlement or resolution of any claims arising from or related to the Accident.

-7-

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

20.     All Documents and Communications related to Your or Plaintiff's payment to Defendants out of a third-party settlement in respect of a bill or invoice from Defendants for Plaintiff's Treatment, including all Documents and Communications related to the difference between the amount that You or Plaintiff paid Defendants out of a third-party settlement and the amount that Defendants billed or invoiced You or Plaintiff.

21.     Documents sufficient to show the process, procedures, and protocols pursuant to which You transmit requests for reductions in medical billing amounts.

## IV.    TOPICS FOR EXAMINATION

1.     Your relationship with Plaintiff.

2.     Your Communications with any Defendant regarding Plaintiff's Accident or Plaintiff's Treatment.

3.     Your Communications with any Defendant regarding Defendants' billing policies and procedures.

4.     Your Communications with any insurer, including any insurer or agent or representative of an insurer that provided automobile, liability, health, accident, or other insurance coverage to any person involved in the Accident, regarding Plaintiff's Accident or Plaintiff's Treatment.

5.     The settlement or resolution of any claims arising from or related to the Accident.

6.     Your or Plaintiff's receipt or payment of any bills or invoices from any Defendant for Plaintiff's Treatment.

7.     The Request for Billing Discount You sent to Defendants on September 8, 2020, including Your understanding of the Request for Billing Discount, any Communications related to

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

the Request for Billing Discount, and the circumstances under which You sent the Request for Billing Discount.

   8.  Your relationship with Grant & Eisenhofer P.A. or Gordon, Wolf & Carney, Chtd.

   9.  Any Documents, Communications, or Items You produce in response to this Subpoena.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Dated: December 5, 2024        Respectfully submitted,

*/s/ Timothy Farrell*

Jeffrey J. Bushofsky
Timothy Farrell
Philip P. Ehrlich
**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5559
Jeffrey.Bushofsky@ropesgray.com
Timothy.Farrell@ropesgray.com
Philip.Ehrlich@ropesgray.com

Thanithia Billings*
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Thanithia.Billings@ropesgray.com

*Admitted *pro hac vice*

*Attorneys for Defendants ATI Holdings, LLC;
Athletic & Therapeutic Institute of Naperville,
LLC; ATI Physical Therapy, Inc.; and Ray Wahl*

**CERTIFICATE OF SERVICE**

I, Philip P. Ehrlich, hereby certify that on December 5, 2024, I caused a true and correct copy of the foregoing document to be served via email on the following:

Kelly L. Tucker (ktucker@gelaw.com)
Laina M. Herbert (lherbert@gelaw.com)
Kevin W. Boyle (kboyle@gelaw.com)
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, Delaware 19801

William F. Moore (wmoore@gelaw.com)
GRANT & EISENHOFER P.A.
30 N. LaSalle Street, Suite 2350
Chicago, Illinois 60602

Richard S. Gordon (rgordon@GWCfirm.com)
Benjamin H. Carney (bcarney@GWCfirm.com)
Sara E. Assaid (sassaid@GWCfirm.com)
GORDON, WOLF & CARNEY, CHTD.
100 West Pennsylvania Ave., St. 100
Baltimore, Maryland 21204

*/s/ Philip P. Ehrlich*

Philip P. Ehrlich
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5559
Philip.Ehrlich@ropesgray.com

*Attorney for Defendants ATI Holdings, LLC; Athletic & Therapeutic Institute of Naperville, LLC; ATI Physical Therapy, Inc.; and Ray Wahl*

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| STANLEY MORSBERGER and | ) | |
| CLEMENTINE ELUH, on their own | ) | |
| behalf and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | Case No: 1:22-cv-01181 |
| Plaintiffs, | ) | Honorable Jorge L. Alonso |
| | ) | Honorable M. David Weisman |
| v. | ) | |
| | ) | |
| ATI HOLDINGS, LLC *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**STIPULATION AND REGARDING DISCOVERY OF <u>ELECTRONICALLY STORED INFORMATION</u>**

WHEREAS, the above action, brought by Plaintiffs Richard Morsberger and Clementine Eluh (collectively, "Plaintiffs") against Defendants ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, d/b/a/ ATI Physical Therapy, ATI Physical Therapy, Inc., and Ray Wahl (collectively, "Defendants," with Plaintiffs, the "Parties," and each individually a "Party") is pending before this Court;

WHEREAS, the Parties seek to facilitate the exchange of electronically stored information ("ESI") and hard-copy documents in this action, pursuant to this Court's authority and with the consent of the Parties;

WHEREAS, the Parties intend this Order to be interpreted such that, subject to the Federal Rules of Civil Procedure, responsive, non-privileged ESI is produced, while minimizing unnecessary burden and costs associated with the production;

WHEREAS, this Order is not intended to be an exhaustive list of discovery obligations or rights of the Parties, and obligations or rights not addressed by this Order are subject to the relevant

Federal Rules of Civil Procedure or to any other stipulations or agreements between the parties, if applicable;

WHEREAS, the Parties agree to cooperate in good faith in the implementation of this Order;

WHEREAS, the Parties and the Court recognize that this Order is based on facts and circumstances as they are currently known to each Party, that the electronic discovery process is iterative, and that additions and modifications to this Order may become necessary as more information becomes known to the Parties; and

WHEREAS, this Order may be modified by written stipulation of the Parties without further Order of the Court:

**IT IS HEREBY ORDERED:**

I.    **DEFINITIONS**

A.    "Document" or "documents" is defined to be synonymous in meaning equal in scope to the usage of that term as defined in Federal Rule of Civil Procedure 34(a)(1). A draft or non-identical copy is a separate document within the meaning of this term.

B.    "Email" (Electronic mail) means an electronic means for sending, receiving, and managing communications via a multitude of different structured data applications (email client software), including, but not limited to, Outlook, Lotus Notes, other mail applications, or those often known as "webmail," including Google Gmail or Yahoo mail.

C.    "ESI" is an abbreviation of "electronically stored information" and is defined to be synonymous in meaning and equal in scope to the usage of that term as defined in Federal Rule of Civil Procedure 34(a)(1).

2

D.  "Extracted Text" means the text extracted from a Native Format file and includes all header, footer, and document body information.

E.  "Hash value" is a unique numerical identifier assigned to a file, a group of files, or a portion of a file based on a standard mathematical algorithm applied to the characteristics of the data set.

F.  "Load file" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load file may also contain data relevant to the individual Documents, including user or software created Metadata.

G.  "Metadata" means structured information regarding an information resource that describes, explains, locates, or otherwise makes it easier to retrieve, use, or manage that information resource.

H.  "Native Format" means the format of ESI is the application in which such ESI was originally created.

I.  "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

J.  "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

II.    **GENERAL PROVISIONS**

A.    The Parties will prepare their production documents in advance in accordance with the agreed-upon specifications set forth below, but will not process them through a common vendor.

B.    The default assumption under this Order is that until the resolution of this action, each Party will agree to bear its own reasonable costs in producing documents in conformity with this Order.

C.    Scope of Discovery. Nothing set forth in this Order shall be read to change the Parties' obligations as to the proper scope of discovery pursuant to Federal Rule of Civil Procedure 26. Additionally, nothing herein shall be read to imply that Documents or ESI produced under its terms are relevant or admissible in this Action or in any other litigation.

D.    Preservation of Data. This Order does not alter or expand the preservation obligations of any Party.

E.    Privileges. Nothing in this Order shall be interpreted to require the disclosure of Documents or ESI that a Party contends are protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

F.    Reservation of Rights. The Parties reserve all rights under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court Northern District of Illinois.

G.    The Parties shall make reasonable, good faith efforts to comply with and resolve any disagreements concerning compliance with this Order. If a producing Party cannot comply with any material aspect of this Order, such Party shall inform the receiving Party in writing at or before the time of production as to why compliance with this Order was not possible. No Party

may seek relief from the Court concerning compliance with this Order until it has first conferred with other affected Parties to this action.

H.  The Parties agree that the absence of any term from this Order (including any provision proposed by a Party but not ultimately adopted herein) shall not be construed as a rejection of such term. To the contrary, the Parties reserve all rights with respect to all matters not specifically addressed herein.

### III.  COLLECTION OF DOCUMENTS AND ESI

A.  Custodians. The Parties agree to meet and confer (verbally or through correspondence) in good faith to identify custodians who are likely to have Documents or ESI responsive to the Parties' discovery requests. Prior to the production of Documents and ESI, each Party shall provide to all other Parties a list of Document and ESI custodians from whom Documents and ESI will be collected. Each Party reserves the right to subsequently add or remove custodians, subject to and consistent with the removing Party's obligations under the Federal Rules of Civil Procedure; provided that the adding or removing Party gives advance notice of the addition or removal to the other Party. The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate.

B.  Sources. The Parties shall make reasonable efforts to identify and collect any Documents and ESI potentially relevant to this action from all sources of potentially responsive information, including hard-copy files and folders, email systems, cellular phones, messaging systems, cloud-based systems, computers, servers, network drives, and shared drives, consistent with the list of custodians disclosed in accordance with paragraph III.A, and without the need to produce duplicative information.

C.     To the extent that relevant ESI includes personal email, the Parties will make reasonable efforts to collect and produce this information (subject to relevant general and specific objections), provided a custodian has control over this data and it is available in a format that is accessible by the Parties. In the event that any Party identifies a particular source of responsive Documents or ESI for which application of this Order would be impossible or otherwise unduly burdensome or impractical, the Party identifying the source will promptly notify the other Parties, and the Parties shall meet and confer (verbally or through correspondence) concerning the source.

D.     Inaccessible or Unduly Burdensome ESI Sources. To the extent any Party identifies a source of ESI that such Party believes does not warrant the preservation, collection, review, or production of the ESI referenced in this Order, the Party identifying the source will promptly notify the other Parties, and the Parties shall meet and confer (verbally or through correspondence) concerning the source.

E.     Any instant message files saved to work computers or servers in the ordinary course of business shall be collected and reviewed for production. No Party shall be obligated to preserve instant message communications to the extent that the Party's instant messaging or IT system is not capable, without generating meaningful hardship or burden, of storing or saving such messages, in which case that Party shall inform the other Parties

F.     Search of ESI. The Parties shall meet and confer on a search protocol for responsive documents that may use keyword searching and date range limiters to identify ESI that is reasonably likely to have discoverable information regarding the subject matter of this action. The Parties agree that the fact that a document is hit or captured by the application of any search methodologies or search terms does not mean that such document is necessarily responsive to any propounded discovery request, non-privileged, and validly subject to production, or otherwise

6

relevant to this action. Determinations of the discoverability, responsiveness, and privilege of the documents and materials hit or captured by the application of search methodologies shall still be made by the producing Party. Nothing in this Order shall preclude the Parties from further meeting and conferring on the technology and/or methodology, including technology assisted review or other analytics methods, to be employed by a producing Party.

       G.      Collection of ESI. The Parties shall use reasonable and proportionate best efforts to collect ESI in a forensically sound manner that does not alter metadata or other file attributes.

       H.      Third-Party Documents. A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to this action have requested that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce to all adverse parties any documents obtained pursuant to a non-Party subpoena; the Issuing Party shall make any such production within ten (10) business days of receiving the production from the third party. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of third parties to object to a subpoena.

**IV.      PRODUCTION PROTOCOL FOR SPECIFIED CATEGORIES OF DOCUMENTS**

      **A.      General**

      1.      Preservation of Native Files. When ESI is produced, the producing Party will maintain a separate copy or image as a native file and, in that separate file, it will not modify the native file in a manner that materially changes the file or the metadata.

      2.      Chain of Custody. To the extent not transmitted by hand or via secure file transfer service, the producing Party shall ship media and/or data via FedEx or UPS and provide a tracking number for all shipments to ensure proper chain of custody.

3.      Legibility. The Parties will make reasonable efforts to ensure that all Documents and ESI they produce are legible. If a Document is not legible and it is possible to produce a legible copy, such a legible copy will be produced (subject to relevant general and specific objections) within ten (10) business days of a request from a receiving Party, or as mutually agreed upon by the Parties. But if no legible copy can be made, then the original will be made available for inspection and copying within ten (10) business days of a request from a receiving Party, or as mutually agreed upon by the Parties.

4.      Authenticity. No Party shall object that Documents or ESI produced pursuant to this Order are not authentic based solely on the file naming convention described herein. The Parties otherwise reserve all rights regarding their ability to object to the authenticity of Documents or ESI.

**B.      Hard-Copy Documents**

The Parties shall produce non-duplicative (as defined below) responsive hard-copy documents in single-page black and white TIFF format (300 DPI resolution, Group IV compression); the documents should be properly unitized (i.e., contain, to the extent reasonable and practicable, correct logical document breaks and capture logical document attachment ranges). A producing Party may produce color hard-copy documents as black-and-white images; where color is material to the interpretation of the document and upon reasonable request, the receiving Party may request that the document be produced in color (color documents will be produced as single page JPG images). The producing Party shall also provide document level OCR text files to accompany the TIFF format production. Any documents that present imaging or formatting problems will be promptly identified and the Parties will meet and confer in an attempt to resolve the problems. Hard copy documents should contain the following fields in ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g.,

Concordance, Relativity). The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row. Additionally, a cross-reference image file registration file that can be loaded into commercially acceptable production software (e.g., Opticon, Ipro) should be provided. Each TIFF in a production must be referenced in the corresponding image load file. The data load file should contain the following fields:

a) Custodian (name of custodian where the document originated);

b) Bates Begin (beginning production number);

c) Bates End (ending production number);

d) Begin Bates Attach (beginning attachment production number);

e) End Bates Attach (ending attachment production number);

f) Page count;

g) Confidential Properties (populated with the confidentiality status);

h) Redaction Field. Identifies documents that contain redactions in the production; and

i) CDVol. or ProdVol (the Name of media on which the data was produced).

**C.    Non-electronic mail ESI (excluding structured data)**

1. The Parties shall produce non-electronic mail ESI originally maintained as ESI in single-page and white TIFF format (300 DPI resolution, Group IV Compression) along with corresponding document-level extracted text format, except that Excel spreadsheets (.xls, .xlsx), comma delimited text files (.csv), Access databases, and media files (e.g., video and audio files) shall be produced in native format. If the document contains comments or tracked changes, the TIFF images shall be generated to include the comments or track changes contained in the file. The Parties shall produce presentation files (e.g., MS PowerPoint and Google Presently) in both

native format and in single-page and white TIFF format (300 DPI resolution, Group IV Compression) along with corresponding document-level extracted text format. The Parties agree that when producing a native file, they will include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number, any applicable confidentiality legend and state "Document Produced in Native Format" on the TIFF image. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the Native Link field. The filename field produced in the production load file that reflects the original metadata should maintain the original file name. The Parties further agree to meet and confer concerning the production of additional file types or specific files in native format as discovery progresses, should a reasonable need for the production of such files in native format arise. The Parties shall produce an ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g., Concordance). The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row. Additionally, a cross-reference image file registration file that can be loaded into commercially acceptable production software (e.g., Opticon, Ipro) should be provided. Each TIFF in a production must be referenced in the corresponding load file. The load files should contain the following fields (to the extent the data is able to be automatically extracted from the file and/or is available without manual input).

    a)     Custodian (name of custodian where the document originated).

    b)     All Custodians (names of all custodians that had electronic files that were removed due to de-duplication).

c)    Created Date (date the file was created).

d)    Created Time (time the file was created).

e)    Last Modified Date (date the file was last modified).

f)    Last Modified Time (time the file was last modified).

g)    Last Saved By (name of user who last saved the file).

h)    File Name* (original name of the file).

i)    Subject* (any value populated in the Subject field of the document

j)    Title* (any value populated in the Title field of the document properties (if any).

k)    File Ext (extension for the file).

l)    MD5 Hash (or equivalent).

m)    Bates Begin (beginning production number).

n)    Bates End (ending production number).

o)    A field populated with the Bates number of the first page of the family group of documents (BEGBATESATT).

p)    A field populated with the Bates number of the last page of the family group of documents (ENDBATESATT).

q)    Attachment Name* (original file name or Bates numbers of all attachments to a parent document).

r)    Page count.

s)    Native link (path to the native file as included in the production (e.g., d:\PROD001\natives\ABC00015.xls) for all files produced in native format.

t)    Confidential Properties (populated with the confidentiality status).

u)    Redaction Field.  Identifies documents that contain redactions in the production.

v)   The Full Path* (full path location to where the file originally resided) need not be included in the load file, but should be preserved, if available, for potential provision upon reasonable request.

w)   CDVol or ProdVol (the name of media on which the data was produced).

x)   TimeZone. Three letter reference to time zone that the data was processed in, as agreed between Parties.

y)   Attachment Count

z)   Author

aa)   Document Type

bb)   File Size

2.   All non-electronic mail ESI (excluding structured data) shall be processed with a single time zone and a date and time setting that is consistent across all Parties' productions. The Parties agree to the use of Universal Time Coordinated (UTC).

**D.    Electronic Mail**

1.   The Parties shall produce electronic mail in single-page black and white TIFF format (300 DPI resolution, Group IV compression) along with the corresponding document-level extracted text, except that attachments of Excel spreadsheets (.xls, .xlsx), comma delimited text files (.csv), Access databases, and media files (e.g., video and audio files) collected from custodians shall be produced in native format. The Parties shall produce presentation files (e.g., MSPowerPoint and Google Presently) in both native format and in single-page and white TIFF format (300 DPI resolution, Group IV Compression) along with corresponding document-level extracted text format. The Parties agree that when producing a native file, they will include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number, and confidentiality

12

legend, and state "Document Produced in Native Format" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the document with its original file extension. The filename field produced in the production load file that reflects the original metadata should maintain the original file name. The Parties further agree to meet and confer concerning the production of additional file types or specific files in native format as discovery progresses should a reasonable need for the production of such files in native format arise. The Parties shall produce an ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g., Concordance). The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row. Additionally, a cross-reference image file registration file that can be loaded into commercially acceptable production software (e.g., Opticon, Ipro) should be provided. Each TIFF in a production must be referenced in the corresponding image load file. The load files should contain the following fields (to the extend the data is able to be automatically extracted from the file and/or is available without manual input):

    a) Custodian (name of custodian where the document originated.

    b) All Custodians (names of all custodians that had electronic files that were removed due to de-duplication).

    c) Author (From field)*.

    d) CC*.

    e) BCC*.

    f) Recipient (To field)*.

    g) Subject* (subject line of the email).

h)      MD5 Hash (or equivalent).

i)      Date Sent (date the email was sent).

j)      Time Sent (time the email was sent).

k)      Date Received (date the email was received).

l)      Time Received (time the email was received).

m)      Parent Date (the date of the parent email should be applied to the parent email and all of the email attachments).

n)      File Ext (extension for the file).

o)      Bates Begin (beginning production number).

p)      Bates End (ending production number).

q)      Attachment Bates Begin (beginning production number of all attachments to a parent document).

r)      A field populated with the Bates number of the first page of the family group of documents (BEGBATESATT).

s)      A field populated with the Bates number of the last page of the family group of documents (ENDBATESATT).

t)      Page count.

u)      Confidential Properties (populated with the confidentiality status).

v)      Redaction Properties.

w)      Native link (path to the native file as included in the production e.g., d:\PROD001\natives\ABC00015.xls) for all files produced in native format.

x)      CDVol or ProdVol (the name of media on which the data was produced).

y)    TimeZone (three letter reference to reflect the time zone that the data was processed in, as agree between Parties).

z)    CID/Thread Index (e.g., email conversation index information).

2.    In addition to the foregoing fields, electronic mail shall be produced along with all relevant attachments in sequential order as part of a family, maintaining the parent-child relationship.  Any emails or attachments to emails withheld on privilege grounds as to which any documents in the document family are produced in whole or in part: (a) will be included on a privilege log to be provided within a reasonable time period after production unless specifically carved out by a future agreement of the Parties relating to privilege logging, and (b) shall include a TIFF image placeholder for each unique withheld document, branded with a unique Bates number, and confidentiality legend, and state "Document Withheld as Privileged" on the TIFF image.  This paragraph imposes no additional obligations on the Parties with respect to the content and format of privilege logs.   This procedure is without prejudice to any challenges brought regarding documents withheld by the producing Party.

3.    All compressed or zipped ESI shall be unzipped or decompressed during processing.  To the extent an electronic file contains embedded files, such files shall be produced as attachments in sequential order as part of a family, maintaining the parent-child relationship.  Parties should negotiate to limit extraction or production of embedded objects to non-image based types to restrict extraction of images embedded within email or presentations (e.g., signature blocks).

4.    Each page of a produced document, except those documents that are produced in native format, shall have a legible, unique page identifier ("Bates Number") electronically "burned" (stamped) onto the image at a location that does not obliterate, conceal or interfere with

15

any information from the source document.  No other legend or stamp will be placed on the document image other than a confidentiality legend or redactions (where applicable).  The confidential legend shall be "burned" (stamped) into the document's image at a location that does not obliterate or obscure any information from the source document.  Any confidentiality designation or Bates Number range for a natively-produced document will be provided in a separate field and burned into the placeholder image.

5.      Each page image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension ".TIF."  Any native documents shall be named with the Beginning Bates number of the document.

6.      A document level text file will be provided containing the extracted text (or OCR for documents where no extracted text exists).  The file will be named after the Beginning Bates number of each document.  Where a document contains redactions, only OCR text will be provided.

7.      A placeholder should be inserted for exception documents (i.e., failed documents that could not be processed due to corruption or password protection) that are part of a family being produced with the legend "This document could not be imaged" and a produced field indicating "Could Not Be Imaged."  Such placeholder shall include a unique Beginning Bates number of the document.

8.      Electronic mail that cannot be reviewed, produced, and/or imaged in their entirety because of technical issues (other than the file types that do not require processing under the terms of this Order) should be identified as an exception file and included on a log that lists the file name, custodian, and reason for the exception (i.e., corruption, unavailable password protection, proprietary software, or other technical issue).  The producing Party shall provide a copy of this

16

log to the receiving Party at agreed upon intervals, and shall provide a final copy of the log upon completion of document production. If the receiving Party requests production of any files listed on the exception log, the Parties will meet and confer on a reasonable and cost-effective means for attempting to provide the requested files.

9.    Files to be processed may be identified through the use of an inclusionary list of file types that typically contain meaningful user-created data. The following categories of electronic files may be specifically excluded from collection, review and production:

a)    System or executable files (.exe, .dll, etc.);

b)    ESI or data with a hash value that matches a value on the list(s) of known operating system and application files provided by the National Software Reference Library ("NSRL"), based out of the National Institute of Standards in Technology ("NIST"); and

c)    ESI or data with file extensions that typically contain no meaningful user-created data and/or cannot be reviewed in any meaningful format, including but not limited to: ani; bat; c: cab; cfg; class; dll; ex_; exe; fon; hlp; ico; icon; inf; ini; isu; java; jpa; kqp; mpe; msi; ocx; out; pcd; pcx; reg; sfw; sys; tag; ttf; and xp.

10.    In order to reduce the volume of documents reviewed and produced, each Party shall de-duplicate ESI using the MD5 hash value both vertically (within custodians) and horizontally (across custodians) within an organization. The de-duplicated originals and their associated metadata shall be securely retained such that reports containing relevant associated metadata about the documents can be made available upon reasonable request. Nothing in this Order shall preclude the Parties from further meet and confer on the scope of de-duplication.

11.    Where color is material to the interpretation of ESI and upon reasonable request, the receiving Party may request that the ESI be produced in color. The requesting Party must identify the documents by Bates number. Single-page JPG files are preferred for Relativity. Either color JPG or TIFF files are suitable for Concordance.

12.    For any productions made prior to entry of this Order, the producing Party shall supply, in a reasonably prompt manner, load files that comply with the provisions of the Order.

13.    All electronic mail shall be processed with a single time zone and a date and time setting that is consistent across all Parties' productions. The Parties agree to the use of Universal Time Coordinated (UTC).

### E.    Structured Data

The Parties will endeavor to agree upon the manner in which structured data, if any, will be produced following service of written document request responses and objections. If agreement cannot be reached after completion of a meet-and-confer process, the Parties may submit any issues for resolution by the Court.

## V.    PRODUCTION MEDIA AND ADDITIONAL FILE PROCESSING

Documents and ESI shall be produced on readily accessible computer or electronic media such as optical media (CD or DVD), external hard drives, or via an FTP site, or similar electronic media (the "Production Media"). Each piece of Production Media shall identify a production number or other unique identifying label corresponding to the Party and production with which the documents on the Production Media are associated (e.g., "[Defendant Party]001", "[Plaintiff Party]001"), as well as the volume of the material in that production (e.g., "-001", "-002"). For example, if the first production from a Party comprises document images on three hard drives, the Party shall label each hard drive in the following manner; "[Party Name] 001-001", "[Party Name] 001-002", and "[Party Name] 001-003." Each piece of Production Media shall be labeled to also

18

identify: (1) the production date; and (2) the production number or Bates Number range of the documents contained on the Production Media. Industry-standard encryption tools and practices must be used when producing documents. Passwords must be at least eight characters with a mix of character sets and sent in a separate communication from the encrypted data. The Parties agree to expeditiously provide replacement production media or provide other reasonable assistance in the event that the Receiving Party reports difficulty in accessing the media.

## VI.    LIMITATIONS

1.    Nothing in this Order shall prohibit a Party from seeking modification of any of its terms, either by stipulation or by application to the Court. Should any Party subsequently determine that it cannot in good faith proceed as required herein or without undue burden and cost, the Parties will meet and confer to attempt to resolve any dispute before seeking Court intervention.

2.    This Order relates to the general identification and production of documents and ESI, and is not otherwise intended to alter the Parties' respective rights and obligations under the Federal Rules of Civil Procedure or the Local Rules of the United States District Court Northern District of Illinois.


**SO ORDERED.**

Dated: _4/8/2024_____

_M. David Weisman_

M. David Weisman
United States Magistrate Judge

WE SO MOVE
and agree to abide by the
terms of this Order:

/s/ Kelly L. Tucker
Kelly L. Tucker
Laina M. Herbert
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, Delaware 19801
(302) 622-7000
(302) 622-7100 (facsimile)
ktucker@gelaw.com
lherbert@gelaw.com

William F. Moore
GRANT & EISENHOFER P.A.
30 N. LaSalle Street, Suite 2350
Chicago, Illinois 60602
(312) 610-5350
(312) 214-0001 (facsimile)
wmoore@gelaw.com

Richard S. Gordon
Benjamin H. Carney*
GORDON, WOLF & CARNEY, CHTD.
100 West Pennsylvania Ave., St. 100
Baltimore, Maryland 21204
(410) 825-2300
(410) 825-0066 (facsimile)
Rgordon@gwcfirm.com
Bcarney@gwcfirm.com

*Attorneys for Plaintiffs and the Putative
Class*

Dated: April 6, 2024

WE SO MOVE
and agree to abide by the
terms of this Order:

/s/ Philip P. Ehrlich
Jeffrey J. Bushofsky
Philip P. Ehrlich
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
T: (312) 845-1200
F: (312) 845-5559
Jeffrey.Bushofsky@ropesgray.com
Philip.Ehrlich@ropesgray.com

Mark A. Cianci*
ROPES & GRAY LLP
Prudential Twr., 800 Boylston Street
Boston, MA 02199
T: (617) 951-7122
Mark.Cianci@ropesgray.com

*Attorneys for Defendants*

* Admitted *pro hac vice*

Dated: April 6, 2024

# AFFIDAVIT OF PROCESS SERVER

### United States District Court for the Northern District of Illinois

**Stanley Morsberger, et al.**

        Plaintiff(s),

VS.

**ATI Holdings, LLC, et al.**

        Defendant(s).

Attorney: Timothy Farrell

Ropes & Gray LLP
1211 Avenue of the Americas
New York NY 10036



*327582*

**Case Number: 1:22-cv-01181**

Legal documents received by Same Day Process Service, Inc. on **12/05/2024** at **5:43 PM** to be served upon **Rafael Law, LLC at 3604 Eastern Avenue Suite 100, Baltimore, MD 21224**

I, **Rodney Getlan**, swear and affirm that on **December 06, 2024** at **1:30 PM**, I did the following:

Served **Rafael Law, LLC** by delivering a conformed copy of the **Subpoena to Testify at a Deposition in a Civil Action; Federal Rule of Civil Procedure 45; Exhibit A; Exhibit 1 - Stipulation and Regarding Discovery of Electronically Stored Information; Witness Check for $96.03** to Ben Badro as Paralegal & Authorized Agent of **Rafael Law, LLC at 3604 Eastern Avenue Suite 100, Baltimore, MD 21224.**

**Description of Person Accepting Service:**
Sex: Male Age: 28 Height: 5ft4in-5ft8in Weight: 131-160 lbs Skin Color: Caucasian Hair Color: Black

**Supplemental Data Appropriate to this Service:**

I declare under penalty of perjury that the foregoing information contained in this affidavit is true and correct and that I am a professional process server over the age of 18 and have no interest in the above legal matter.

**Rodney Getlan**
Process Server
**Same Day Process Service, Inc.**
**1413 K St., NW, 7th Floor**
**Washington DC 20005**
**(202)-398-4200**
**info@samedayprocess.com**

Internal Job
ID:327582



# EXHIBIT 3

| From: | Lauren Geisser |
|---|---|
| To: | Ehrlich, Philip; Farrell, Timothy |
| Cc: | Zachary M. Lipp; rgordon@gwcfirm.com; lherbert@gelaw.com; Rafael Elan; Fons, Chris |
| Subject: | RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. - request for extension |
| Date: | Friday, January 17, 2025 8:51:36 AM |
| Attachments: | image001.png |

## THIS MESSAGE IS FROM AN EXTERNAL SENDER
This message came from a sender outside of Ropes & Gray

Hi Phillip:

Pursuant to my emails of 12.17.24, and 12.18.24, I can host the depositions at my Timonium office.  Also per my email of 12.18.24, please confer with your colleagues for dates that work for the Parties, and we can go from there.

**Lauren M. Geisser, Esquire**

Description: G&B_email_2_2b



Baltimore 410-560-4999  Philadelphia 215-561-4999
www.gilmanbedigian.com
Admitted MD, PA and D.C.

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow the Law Offices of Gilman & Bedigian LLC for Local Legal News and Safety Information:**

Facebook | Twitter | Google+ | LinkedIn

**From:** Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Sent:** Wednesday, January 15, 2025 4:56 PM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Zachary M. Lipp <zlipp@dmvinjurylaw.com>; rgordon@gwcfirm.com; lherbert@gelaw.com; Rafael Elan <elan@rafaellaw.com>; Fons, Chris <Chris.Fons@ropesgray.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. - request for extension

All,

We write to confirm that, at your request, the depositions of Wingfield, Ginsburg & Lipp, P.C.; Elan B. Rafael, LLC; and Gilman & Bedigian, LLC will not be going forward next week. As discussed below, we look forward to receiving separate responses and objections to our subpoenas from each of

Wingfield, Ginsburg & Lipp, P.C; Elan B. Rafael, LLC; and Gilman & Bedigian, LLC, on February 6.

You indicated below that you would prefer that the depositions take place somewhere other than the location for which they were noticed. What alternate location do you have in mind? Please also let us know what dates each of the subpoena recipients is available for a deposition in March.

Best,
Philip

**Philip P. Ehrlich**
**ROPES & GRAY LLP**
T +1 312 845 1123 | M +1 312 833 5754
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Philip.Ehrlich@ropesgray.com
www.ropesgray.com
pronouns: he/him/his
This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Ehrlich, Philip
**Sent:** Wednesday, December 18, 2024 10:24 PM
**To:** 'Lauren Geisser' <lgeisser@gblegalteam.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Zachary M. Lipp <zlipp@dmvinjurylaw.com>; rgordon@gwcfirm.com; lherbert@gelaw.com; Rafael Elan <elan@rafaellaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. - request for extension

Hi Ms. Geisser,

Thank you for your note. If any of the subpoena recipients on this email is represented by counsel, please let us know so that we can direct our correspondence to counsel.

We understood the previous email to be from Mr. Lipp regarding the subpoena served on his firm, Wingfield, Ginsburg & Lipp, P.C. Are you representing Wingfield, Ginsburg & Lipp, P.C. with respect to that subpoena? Or is your email with respect to the separate subpoena served on your firm, Gilman & Bedigian, LLC?

In either case, if an extra week extension, in addition to the 3-week extension we initially offered, will allow the subpoena recipients to provide responses and objections in good faith, we are fine with that deadline. We look forward to receiving separate responses and objections from Wingfield, Ginsburg & Lipp, P.C; Elan B. Rafael, LLC; and Gilman & Bedigian, LLC, on February 6.

What alternate location do you have in mind for the depositions?

Best,

Philip

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Wednesday, December 18, 2024 5:51 PM
**To:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Zachary M. Lipp <zlipp@dmvinjurylaw.com>; 'timothy.farrell@ropesgray.com';
rgordon@gwcfirm.com; lherbert@gelaw.com; Rafael Elan <elan@rafaellaw.com>; Ehrlich, Philip
<Philip.Ehrlich@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Subject:** Re: Morsberger, et al. v. ATI Holdings, LLC, et. al. - request for extension

Hi Tim:

Mr. Lipp is out of office until December 20th.
February 6th is the earliest the firms can provide responses and objections in good faith.  I'm
heading out of town, it's the holidays, we all have obligations, and need the time requested.  As
indicated in my email, responses and objections will be produced at that time.

With respect to deposition dates, please advise if you are amenable to the change of location, and
dates the Parties' counsel are available towards the end of February/beginning of March.   Then we
can go from there.

Thanks,

Lauren M. Geisser, Esquire
GILMAN & BEDIGIAN, L.L.C.
410 560 4999
www.gilmanbedigian.com
Admitted MD, D.C., PA

**Message and Attachments are Confidential, Privileged and/or Work Product**

Sent from my iPhone

> On Dec 18, 2024, at 6:33 PM, Farrell, Timothy <Timothy.Farrell@ropesgray.com>
> wrote:
>
> Mr. Lipp,
>
> Thank you for your note.
>
> A subpoena in the above-referenced case was served on Wingfield, Ginsburg & Lipp,
> P.C. on December 6, 2024.
>
> We are happy to work with you on an extension. The subpoena called for your firm to

serve responses and objections to the document requests by January 10, 2025. Would a three-week extension, until January 31, 2025, be sufficient? We would expect that, with that extension, your firm will serve not only responses and objections on January 31, but also responsive documents.

We are also happy to find dates in February for your firm's deposition pursuant to the subpoena. Please let us know what dates a representative from your firm is available, and we will find a date that works for us and for plaintiffs' counsel.

Finally, you appear to have copied on this email representatives from Gilman & Bedigian, LLC, and Rafael Law, LLC, which were both served with separate subpoenas in the above-referenced case. In addition to the document requests and topics for examination listed in the subpoena, please produce and be prepared to testify about all Documents and Communications with Gilman & Bedigian, LLC and/or Rafael Law, LLC regarding any subpoenas served in the above-referenced cases.

Happy to discuss if that would be useful.

Thank you,
Tim

Timothy R. Farrell
ROPES & GRAY LLP
T +1 312 845 1209 | M +1 646 337 9376
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Timothy.Farrell@ropesgray.com<mailto:Timothy.Farrell@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com>
pronouns: he/him/his

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

_____

On Dec 18, 2024, at 07:57, Zachary M. Lipp <zlipp@dmvinjurylaw.com> wrote:

Mr. Farrell,

My office received a subpoena pursuant to the above referenced matter.  Please confirm the date of service.  Additionally, we are requesting a reasonable extension to provide responses and objections to the subpoena.  I am unavailable on 1/21/25 and will need to look at other dates into February.  I look forward to your response.  Thank you in advance.


Best regards,

Zachary M. Lipp, Esq.
Wingfield, Ginsburg & Lipp, P.C.
700 Fifth Street, N.W., Suite 300
Washington, D.C. 20001
(Office) 202.789.8000 x132
(Cell) 301.580.9555
(Fax) 877.563.3536
(Email) zlipp@dmvinjurylaw.com<mailto:zlipp@dmvinjurylaw.com>
(Website)
www.dmvinjurylaw.com<https://urldefense.com/v3/__http://www.dmvinjurylaw.com/__;!!GACWFz6mw-g!fmUd2PVgKTyIgw-M33hzue3beAaTcC1nYpevtqvAzVEIF4AENfQjeCEuMJ_55V_jOjboNcf53twG1gUJwfKQmWuVI7U$>


[image001.png]
<https://urldefense.com/v3/__https://www.facebook.com/dmvinjurylaw/?ref=aymt_homepage_panel&eid=ARAhUwscl4eGRgUPxEJUD0StkoL6b3Kq81af9d-UaKiGePbGIKBqljZQ0DEu3TLPh2qwqvcSf_xtY3-R__;!!GACWFz6mw-g!fmUd2PVgKTyIgw-M33hzue3beAaTcC1nYpevtqvAzVEIF4AENfQjeCEuMJ_55V_jOjboNcf53twG1gUJwfKQ98fcS70$>[image002.png]
<https://urldefense.com/v3/__https://www.linkedin.com/company/wingfield-&-ginsburg-p-c-/?viewAsMember=true__;!!GACWFz6mw-g!fmUd2PVgKTyIgw-M33hzue3beAaTcC1nYpevtqvAzVEIF4AENfQjeCEuMJ_55V_jOjboNcf53twG1gUJwfKQ40pS4-4$>[image003.png]
<https://urldefense.com/v3/__https://twitter.com/dmvinjurylaw__;!!GACWFz6mw-g!fmUd2PVgKTyIgw-M33hzue3beAaTcC1nYpevtqvAzVEIF4AENfQjeCEuMJ_55V_jOjboNcf53twG1gUJwfKQSN6kHZc$>


[image004.png] [image005.jpg]
[image006.png]  [image007.png]


CONFIDENTIALITY NOTICE: The information in this e-mail message, and any attachment, is intended for the sole use of the individual and entity to whom it is addressed. This information may be privileged, confidential, and protected from

disclosure. If you are not the intended recipient you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it, or its, contents, is strictly prohibited. If you think you have received this e-mail in error, please e-mail the sender and destroy all copies of this communication and any attachments. Thank you.

<image001.png>
<image002.png>
<image003.png>
<image004.png>
<image005.jpg>
<image006.png>
<image007.png>

# EXHIBIT 4



gblegalteam.com

# GILMAN & BEDIGIAN, LLC
## ————Trial Attorneys

**LAUREN GEISSER**
(MD, PA, TX, AND DC BARS)
lgeisser@gblegalteam.com

1954 Greenspring Drive, Suite 250
Timonium, Maryland 21093
(410) 560-4999-Phone
(410) 308-3116-Fax
* All Mail to This Address

20 Ash Street, Suite 360
Conshohocken, Pennsylvania 19428
(215) 561-4999-Phone
(410) 308-3116-Fax

February 4, 2025

Timothy Farrell, Esquire
Ropes & Gray, LLP
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606

RE:    *Stanley Morsberger, et al., v. ATI Holdings, LLC, et al.*
          Case No.: 1:22-cv-01181

Mr. Farrell:

As set forth below, Gilman & Bedigian, LLC's ("G&B" or "Firm") objects to the December 5, 2024 subpoena *duces tecum* in the matter of *Morsberger, et al v. ATI Holdings, LLC, et al.,* Case No. 1:22-cv-01181 ("Litigation"). Per my email with your colleague, we agreed upon a response date of February 6, 2025. For all the reasons stated herein, I am asking that you promptly withdraw the subpoena.

Since, as you know,  G&B is a Maryland law firm, served with your subpoena at our Maryland location, we comply with the Maryland Rules of Ethics and applicable privileges within Maryland, for two reasons. First, because Maryland's ethical requirements apply to the representation of all of our Maryland clients and, second because Maryland is the forum state in which this subpoena would be enforced. *See Pacific Life Insurance Co. v. Wells Fargo Bank, NA,* 702 F.Supp.3d 370, 377 (D.Md. 2023). Maryland Rule 19-301.6 states that "[a]n attorney shall not reveal information *relating to* the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is otherwise permitted." (emphasis added). As such, the Firm cannot respond—one way or another—to the subpoena given the Maryland rules of ethics and any responses would include matters relating to clients.

Notwithstanding, and without waiver, assuming *arguendo* that any ethical issues could promptly be resolved, there are still several reasons why you must withdraw the subpoena,

Timothy Farrell, Esquire
February 4, 2025
2 | P a g e

including but not limited to, the present posture of the Litigation. The United States District Court for the District of Maryland views non-party subpoenas to law firms skeptically. *See e.g., E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.,* Civil No. WMN-08-0984, 2010 WL 2572809, at *2-4 (D.Md. June 22, 2010); *Maxtena, Inc. v. Marks,* 289 F.R.D. 427, 440-442 (D.Md. 2012). Such subpoenas are permitted *only after* the information has been determined to not be available from another source. *Id.* Certainly, while *E.E.O.C.* and *McCormick* were resolved on the issue of taking a non-party lawyer's deposition, a subpoena seeking documents from a non-party lawyer would unquestionably be viewed by the Court similarly, as the reasons are analogous. Namely, that subpoenas issued to a non-party lawyer are disruptive, overly burdensome, and any attempted response carries the navigation of various privileges, and concerns of waiver, not borne by non-lawyers. Thus, the United States District Court for the District of Maryland imposes obligations on parties to always make reasonable efforts to seek information elsewhere first. *Id.* My understanding is that there have been no efforts to obtain the information you are seeking from the Firm, from anyone else, and as such, until such time that the efforts are made, the subpoenas issued to law firms are presumptively improper.

Even if serving a non-party lawyer was appropriate at this stage of litigation, the information sought still lacks relevance to the claims made, and defenses raised, in the Litigation. The requests are an overbroad wish list not tailored to the Litigation. For instance, and by way of example only, you go as far as to demand all communications we have had with your client, as well as all communications we have had with the attorneys who are representing the Plaintiffs in the current Litigation. These requests are not in any way limited to any claims or defenses in Litigation. Moreover, you should be looking to your client for communications with G&B, in accordance with the guidance of *Maxtena* and *E.E.O.C.*.

Further, the subpoena *duces tecum* seeks information that would invariably contain the names of clients, personal medical information of clients, attorney-client privileged information, and attorney-work product. As stated above, the disclosure of a client's name is a violation of the Maryland Rules of Ethics. If a lawyer cannot ethically disclose the identity of a client, certainly a lawyer cannot go further by producing documentation regarding same. Moreover, information protected by the attorney work product, which you are requesting, enjoys near absolute immunity and can be discovered by adverse parties only in exceedingly rare and extraordinary circumstances, none of which exist here. Further, the subpoenaing of medical information, and documentation, is subject to *Maryland Health-General Article* § 4-301, et. seq. ("Article"). As you may be aware, since you represent a healthcare provider in Maryland, this Article applies not just to healthcare entities, but to anyone who requests or produces a medical record. *Id.* Requesting, or producing a record in violation of that Article, carries not only liability for actual damages, but the requestor or producer could be charged and found guilty of a misdemeanor, and on conviction is subject to a fine not exceeding $1,000 for the first offense and not exceeding $5,000 for each subsequent conviction for a violation of any provision of this subtitle. *Id.* We will not participate in the skirting of the Article, which would invariably happen, should we comply with ATI's subpoena as issued.

Timothy Farrell, Esquire
February 4, 2025
**3** | P a g e

     In issuing the subpoena *duces tecum,* you have made no efforts (reasonable or otherwise) to obtain a waiver of the privilege from any client. Nor did you attempt to exclude requests that fall within the work product privilege from your subpoena. None of the topics are even tailored to pre-emptively resolve these overarching issues, nor limit the requests to the claims, defenses, or issues presently between the Parties. Rather, you expect a non-party Law Firm to sift through client files, and information dating back to the creation of the Firm and spend countless hours determining whether there is any information or documents that might be discoverable. This is contrary to the  intent of the discovery rules.

     Further, the subpoena *duces tecum* directed at the Firm is an attempt to avoid your discovery obligations under F.R.C.P. 34. Namely, Plaintiffs' Reponses and Objections to Defendants' First Set of Requests for Production of Documents are replete with objections to the Requests based on: attorney-client privilege; attorney work product; material not relevant to any claim or defense; and requested material not calculated to lead to discovery of admissible evidence. Fully knowing Plaintiffs position on those topics, you seek the same information from this non-party Law Firm. Failing to resolve discovery issues amongst the parties and then serving a subpoena involving the same topics to a third party, is an improper attempt to usurp your discovery obligations. The United States District Court for the District of Maryland views such behavior as presumptively improper, going so far as to question whether an attorney can even comply with his Rule 26(g)(1)(B)(ii) obligations to certify that the subpoenas were not served "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *See Richardson v. Sexual Assault/Spouse Abuse Research Center, Inc.*, No. MJG-09-3404, 270 F.R.D. 223, at 225-228. In, fact, Judge Grimm has indicated that using a third-party subpoena under F.R.C.P. 45 **could rise to the level of contempt if not immediately modified** when the topics are related to a current discovery issue by and between the parties. *Id.* As such, given the outstanding discovery dispute between the Parties in Litigation, I am requesting that you immediately withdraw the subpoena *duces tecum* as they are topics of current objections of discovery answered by the Plaintiffs.

     The Firm also objects to the production of the information requested, as it is highly confidential commercial information and/or trade secrets unique to the Firm. As your client is aware, this Firm maintains a large marketing presence throughout the United States and focuses its marketing solely on personal injury matters. The practice of personal injury law is highly competitive and requires the protection of confidential business practices and trade secrets. Even the smallest of personal injury firms guard its law practice operations carefully. As such, how the Firm maintains communications, and how the Firm otherwise manages processes, procedures, negotiations, and protocols are all highly confidential trade secrets and business practices. Even how the Firm communicates with third parties contains confidential information and/or trade secrets, that when viewed collectively, would allow a competitor, or others such as medical providers like the Defendant, to discern highly confidential and valuable information. As such, the information subpoenaed constitutes valuable, special, and unique assets of the Firm and any use or disclosure may cause substantial loss of competitive advantage and other serious injuries to the

Timothy Farrell, Esquire
February 4, 2025
4 | P a g e

Firm and, critically, to our clients – both current and future. This list is not exhaustive, yet an example of the items you have requested in your subpoena that are not tailored in any way to the Litigation, highly improper, and intrusive. Moreover, in this instance, you are aware that the Firm maintains business relationships with your client. Disclosing our trade secrets and business practices directly to your clients, could cause irreparable financial detriment and harm to the Firm and the clients we represent.

The Firm certainly agrees that Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the: (1) needs of the case, (2) importance of the issues at stake in the action, (3) amount in controversy, (4) parties' relative access to relevant information, (5) parties' resources, (6) importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. F.R.C.P. 26(b)(1). While we recognize that information within this scope of discovery need not be admissible in evidence to be discoverable, a subpoena to a third party which "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden," must be quashed or modified. F.R.C.P. 45(d)(3)(A)(iii)-(iv). *See Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 439 (D. Md. 2012) ("[w]hether a subpoena subjects a witness to undue burden within the meaning of Rule 45[(d)](3)(A)(iv) usually raises a question of the reasonableness of the subpoena," an analysis that requires "weighing a subpoena's benefits and burdens" and "consider[ing] whether the information is necessary and whether it is available from any other source."); *See also Pacific Life Ins. Co., v. Wells Fargo Bank, N.A.* 702 F. Supp.3d 370,376 (D.Md. 2023). "[E]ven assuming that [ ] information is relevant (in the broadest sense), the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had." *Innovative Therapies, Inc. Meents*, 302 F.R.D. 364, 377 (2014) citing to *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir.2004). Rule 26(b)(2)(C)(iii) requires a court to limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Here, even a cursory review of the topics indicates that you are on a fishing expedition, with no eye toward proportionality or any appropriate cost-benefit analysis. In short, you are seeking our Firm to do the work for your client. In summary only, this subpoena *duces tecum* indicates that ATI has failed to consider, in any respect, the Maryland Rules of Ethics, the Article, and any other law for that matter, before it issued same. Especially troubling in this regard, you even attempted to add to the topics set forth in the subpoena, via email, on December 18, 2024 ("please produce and be prepared to testify about all Documents and Communications with Gilman & Bedigian, LLC and/or Rafael Law, LLC regarding any subpoenas served in the above-referenced cases."). I know of no authority that would permit ATI to amend a subpoena in this manner.

As a result of the numerous deficiencies and ethical hurdles, G&B objects to the subpoena in all respects and cannot provide the documents, data, other information or testimony requested. With that said, the Firm remains open to discussing this matter with you in good faith. If there is

Timothy Farrell, Esquire
February 4, 2025
5 | P a g e

any way that G&B can ethically respond to the requests and provide testimony, as required by the
subpoena, or that you can obviate the black letter requirements of the Article, I ask that you let us
know in writing. We simply do not see how G&B can respond to the subpoena without breaching
our duties and obligations under Maryland law; nor do we see how your client has made efforts to
procure this information without burdening a non-party law firm first, which is required.

Very truly yours,

Lauren M. Geisser

# EXHIBIT 5

| From: | Lauren Geisser |
|---|---|
| To: | Farrell, Timothy; Elan Rafael; Fons, Chris; Laina Herbert |
| Cc: | Richard Gordon; Ehrlich, Philip; Conroy, Catherine; Sabrina Newell; Benjamin Badro; Kelly Tucker |
| Subject: | RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. -- Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762] |
| Date: | Friday, July 18, 2025 3:21:18 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image007.png |
| | image008.png |
| | image009.png |
| | image011.png |

**THIS MESSAGE IS FROM AN EXTERNAL SENDER**
This message came from a sender outside of Ropes & Gray

Tim:

I am in depositions every day next week.  If the attorneys involved in this matter can carve out 30 minutes on July 28th, please circulate a zoom link, for a meet and confer.  I can be available on July 28th from 9:30 am-2:30 pm.  Thanks,

**Lauren M. Geisser, Esquire**

G&B_email_2_2b



Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Sent:** Friday, July 18, 2025 1:25 PM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Elan Rafael <elan@rafaellaw.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Laina Herbert <lherbert@gelaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker <ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. -- Subpoena Correspondence; Meet &

1

Confer [IWOV-LEGAL.FID329762]

Lauren—

I'm not sure we do disagree on what a law firm can be deposed on.  I can assure you we deal with issues of privilege every day.  We have no intention of asking you to disclose attorney-client confidences or work product.  As our limited and straightforward topics indicate, we simply need information around the <u>non-privileged</u> circumstances of Mr. Morsberger's PI case as it relates to his PT treatment and reimbursement of that treatment.  The topics (pasted below for reference) make this particularly clear where most of them are focused on communications with *third parties.*  And evidence of these communications is needed particularly given the dearth of available documents from your file and from the plaintiffs.  It will be a short deposition focused on these non-privileged aspects of Mr. Morsberger's case.

Given your stated position to date, however, we are preparing a Rule 45 motion to be filed in Maryland district court.  We do note the meet and confer requirement in that court, so please advise when today or early next week you can speak to satisfy that obligation.

Thank you,
Tim


IV. TOPICS FOR EXAMINATION
1. Your relationship with Plaintiff.
2. Your Communications with any Defendant regarding Plaintiff's Accident or Plaintiff's Treatment.
3. Your Communications with any Defendant regarding Defendants' billing policies and procedures.
4. Your Communications with any insurer, including any insurer or agent or representative of an insurer that provided automobile, liability, health, accident, or other insurance coverage to any person involved in the Accident, regarding Plaintiff's Accident or Plaintiff's Treatment.
5. The settlement or resolution of any claims arising from or related to the Accident.
6. Your or Plaintiff's receipt or payment of any bills or invoices from any Defendant for Plaintiff's Treatment.
7. Your relationship with Grant & Eisenhofer P.A. or Gordon, Wolf & Carney, Chtd.
8. Any Documents, Communications, or Items You produce in response to this Subpoena.


**Timothy R. Farrell**
**ROPES & GRAY LLP**

T +1 312 845 1209 | M +1 646 337 9376
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Timothy.Farrell@ropesgray.com
www.ropesgray.com
pronouns: he/him/his

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Wednesday, July 16, 2025 3:31 PM
**To:** Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Laina Herbert <lherbert@gelaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker <ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Tim:

I do not believe I have indicated to you that I find this subpoena, or the efforts to resolve the subpoena, a joke. Rather, I have worked continuously and diligently to bring this subpoena matter to a swift conclusion. None of my efforts have been to obstruct. Rather, we even produced documents to you well in advance of your requested time frame.

At this this juncture, we appear to disagree on what a law firm (that holds myriads of privileges and protections) can be deposed on, most of which cannot even be waived if a law firm desired. I have encouraged you to seek third party non-law firm depositions that could potentially provide the same information, that would not grapple with issues of attorney-work product, attorney-client privilege, and the like. You have declined to explore those avenues. I have asked you to limit the topics of the subpoena given our document production and prior meet and confer. You have declined to do so. I do not believe there is more we can do to try and resolve this.

As I have previously mentioned, my hope is to avoid a jurisdictional motion and focus on the merits of the topics that you have our position on, should you feel the need to file a motion to compel. This involves Maryland law and a Maryland firm. Please ensure any motions are filed in Maryland, or, perhaps, please make efforts to depose a non-law firm that may have the same or similar information, which would abate the need to seek court intervention on issues of privilege and the like.

3

**Lauren M. Geisser, Esquire**

G&B_email_2_2b

Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Elan Rafael <elan@rafaellaw.com>
**Sent:** Monday, July 14, 2025 1:32 PM
**To:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Lauren Geisser
<lgeisser@gblegalteam.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Laina Herbert
<lherbert@gelaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>;
Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell
<sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker
<ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet &
Confer [IWOV-LEGAL.FID329762]

Good afternoon Tim,

I confirm that your understanding is correct: I defer to Lauren and her position on this
matter.
Best regards,
**Elan B. Rafael, Esq.**
RAFAEL LAW, LLC
3604 Eastern Avenue Ste. 100
Baltimore, MD 21224
W: 410-779-3585  F: 410-779-3593
www.rafaellaw.com/

**From:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Sent:** Friday, July 11, 2025 12:21 PM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Laina
Herbert <lherbert@gelaw.com>; Elan Rafael <elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>;

4

Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell
<sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker
<ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet &
Confer [IWOV-LEGAL.FID329762]

Lauren,

Your note bears no connection to reality, and appears to treat our subpoena is if it is a joke.  It is not
a joke. Your client is representing a class purporting to seek millions of dollars in recovery from my
client.  Whereas your client's entire purported stake in this case turns on the fact that he
purportedly obtained recovery in a personal injury case that was somehow impacted by ATI's
"fraudulent" practices in not submitting his physical therapy bills to insurance, we received almost
zero discovery from him regarding his personal injury case, and thus need to obtain whatever
discovery we can from you, his personal injury lawyer.  We have issued you a valid subpoena for
documents and testimony under Rule 45, and we are entitled to that discovery.

We have never suggested that we would forgo a deposition. Quite the opposite. We have continued
to preserve our request for a deposition and have repeated on multiple occasions that we would not
be withdrawing such a request, including during our meet and confer on May 2 and our May 5 letter
which expressly stated:

> "Regarding depositions, the parties agree to continue any deposition notices, pending
> review of the Firms' productions. **To the extent depositions are necessary, the parties
> agree to negotiate a reasonable time and place for those depositions, consistent with
> Federal Rule of Civil Procedure 45.**"

We again expressed in an email on May 5 that "[w]e likewise would prefer to work out any issues
regarding any depositions informally (including time and place), and we will endeavor to notice you
of our intent to take a deposition as soon as possible after reviewing the documents." After
reviewing your 84-page production, we immediately notified you of our intent to take a deposition
on May 28. We have always been clear and consistent in our communications about a deposition of
your firm.

In short, you are simply misstating the record.  That gamesmanship, unfortunately, has been a
pattern reflected in your firm's response to our subpoena, which was served at your Timonium over
7 months ago. We complied with your request for an extension only to receive a letter six weeks
later asking that we withdraw our subpoenas. We then engaged in protracted discussions in
response to your concerns over attorney-client privilege, burning valuable time and resources before
finally reaching a resolution at our meet and confer on May 2, 2025. During this meeting, you finally
agreed to review your files and produce nonprivileged records, and we stated -- yet again -- that our
need for a deposition would depend on the materials you were able to produce.

As we noted in the midst of your refusal to produce documents, we do not believe the federal court
will appreciate this demonstrable pattern of obstruction, and the same is true with respect to your

approach to our request for a short deposition. But that is where we are. Please advise soon if you are willing to sit for a short deposition and thus comply with Rule 45, so that we can spare all of us the expense and distraction of preparing a motion to compel. Otherwise, you can expect service of that motion in short order.

Finally, **Elan**, our understanding is that you share the positions of Lauren and her firm. Please confirm that is true. If that is not the case, we are willing to find a time to discuss a deposition of your firm separately.

Sincerely,
Tim

**Timothy R. Farrell**
**ROPES & GRAY LLP**
T +1 312 845 1209 | M +1 646 337 9376
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Timothy.Farrell@ropesgray.com
www.ropesgray.com
pronouns: he/him/his

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Thursday, July 10, 2025 4:32 PM
**To:** Fons, Chris <Chris.Fons@ropesgray.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Laina Herbert <lherbert@gelaw.com>; Elan Rafael <elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker <ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Hi Chris:

You have had our position in writing since the inception of this subpoena. As you know, since our last meet and confer, we provided all documents to you to resolve the subpoena and deposition notice. The document production was provided on the condition that your firm would take steps to avoid a deposition of our law firms. Since we have produced the requested documents—which were provided weeks before the date you even requested—you have not taken steps, informal or formal, to resolve the need for a deposition as you represented you would. Rather, you

expect us to limit the topics you have provided, so you can then respond. In doing so, you send an email about once a month attempting to blame the delay on our firm without limiting any of the deposition topics.

Given no effort to minimize the subpoena topics have been made by you, it is apparent the representations made during that meet and confer to limit the need for the deposition, if we produced the documents, was merely pretext.

Moreover, I have reviewed the Court transcript. Thank you for providing it. You have everything you advised the Court you needed from us and so it is concerning you continue to push a narrative that you need this deposition. Per the transcript I have reviewed, you indicated to the Court that discovery from the named Plaintiffs' personal injury law firms was needed to determine "what these plaintiffs and their attorneys are saying to the outside world about where they think their source of recovery for these physical therapy sources is" and other such third-party communications. The Court indicated these communications were to be limited to non-privileged information regarding the class representatives only.

As such, given the Court's statements, your statements to Court, and what transpired in our prior meet and confer, you have been provided the universe of communications and everything appropriately requested.

I do believe, respectfully, that there is confusion here so please allow me to explain why I think you should move on from this. The collateral source rule is applicable to this class plaintiff. As such, the third-party communications you think exist, do not, and you now have verification by way of the document production (and this email). I believe the Court tried to indicate that the collateral source rule was applicable as well and may have been lost. Perhaps this is why you continue to send the same deposition notice each month? Perhaps that is why you continue to send emails that are at odds with the transcript? Ultimately there is no need to answer these questions, as we produced everything requested, and there is no need to continue this back and forth.

In closing, another meet and confer would be entirely appropriate if you followed through with the representations you previously made during our last meet and confer. You did not. Another meet and confer may also be appropriate if the transcript left open some confusion that needed clarification as to what the Court found appropriate. There is no confusion. As such, it appears we are at an impasse.

If you decide to move forward with a deposition, ensure it is issued in Maryland, at my office. Otherwise, you will incur further delay on a separate jurisdictional motion. Please note this was also discussed at our

last meeting and confer as well.

Take care,

_____

**Lauren M. Geisser, Esquire**

| G&B_email_2_2b |
| :-- |
| ⊡ |

Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Fons, Chris <Chris.Fons@ropesgray.com>
**Sent:** Wednesday, July 9, 2025 7:02 PM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Farrell, Timothy
<Timothy.Farrell@ropesgray.com>; Laina Herbert <lherbert@gelaw.com>; Elan Rafael
<elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>;
Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell
<sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker
<ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet &
Confer [IWOV-LEGAL.FID329762]

Lauren,

Have you reviewed the topics we proposed? We believe that the deposition topics are straight-
forward and fairly limited. They focus almost entirely on your work for Mr. Morsberger and
communications with ATI. Barring anything unexpected, we believe we can keep the deposition to
around 3.5 hours. If there is a specific topic that you have concerns about, we will consider your
objection, but we are not going to further limit our topics when you have offered no specific reason
to do so.

Finally, I must reiterate my request from Monday that you provide your availability for a meet and
confer **this week**. Discovery closes next month, and Judge Weisman said in a minute entry today
(see Dkt. 211) that we should seek to enforce our subpoenas "as soon as practicable," if that is
necessary. We cannot continue this back-and-forth where you refuse to offer times to meet about
the deposition or identify a single deposition topic for which you have concerns.

Best,
Chris

**Christopher J. Fons**
**ROPES & GRAY LLP**
T +1 202 626 3998
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Chris.Fons@ropesgray.com
www.ropesgray.com
pronouns: he/him/his
*Not admitted in the District of Columbia. Supervised by Ropes & Gray LLP attorneys who are members of the District of Columbia Bar.*

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Wednesday, July 09, 2025 2:37 PM
**To:** Fons, Chris <Chris.Fons@ropesgray.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Laina Herbert <lherbert@gelaw.com>; Elan Rafael <elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker <ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Hi Chris – thanks for the transcript. I plan to read it as soon as I have time. With respect to the 'dearth' of documentation you indicate creates the need for the designee depositions, I would be grateful if you would look at the 2024 deposition notices you keep re-circulating, to see if any of the topics can be reduced or modified.

Certainly, the documents you are indicating require the need for the deposition presumably came after the 2024 notices, and so I am hoping you can limit the topics or otherwise be specific enough for us to respond if we will provide a designee voluntarily.

Thanks,

**Lauren M. Geisser, Esquire**

G&B_email_2_2b



Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

9

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Fons, Chris <Chris.Fons@ropesgray.com>
**Sent:** Monday, July 7, 2025 1:21 PM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Farrell, Timothy
<Timothy.Farrell@ropesgray.com>; Laina Herbert <lherbert@gelaw.com>; Elan Rafael
<elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>;
Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell
<sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker
<ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet &
Confer [IWOV-LEGAL.FID329762]

Lauren,

Attached is the hearing transcript you requested. I have also attached the subpoenas that we served
on your and Elan's firms in December 2024, which included our deposition topics. As we have
explained before, given the dearth of materials produced to us by Plaintiffs, we intend to depose
your and Elan's firms before the named Plaintiffs in our case. Since discovery closes on August 29,
we must schedule your depositions soon.

Please let us know when you are available to meet and confer this week about the depositions. If
you plan to oppose sitting for a deposition, please let us know as soon as possible so that we can
seek relief from the Court.

Best,
Chris


**Christopher J. Fons**
**ROPES & GRAY LLP**
T +1 202 626 3998
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Chris.Fons@ropesgray.com
www.ropesgray.com
pronouns: he/him/his
Not admitted in the District of Columbia. Supervised by Ropes & Gray LLP attorneys who are members of the District of Columbia Bar.

This message (including attachments) is privileged and confidential. If you are not the intended recipient,
please delete it without further distribution and reply to the sender that you have received the message in
error.

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Wednesday, June 25, 2025 9:03 AM
**To:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Laina Herbert <lherbert@gelaw.com>; Elan Rafael <elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker <ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FiD329762]

Hi Tim:

In an effort to try and address your request I asked for a copy of the transcript, and a reissued subpoena with deposition topics reflecting what Judge Weisman indicated was discoverable. This is what we need to address your request. This was requested at the beginning of June. Without this information I do not see how we can move forward.

Thanks,

---

**Lauren M. Geisser, Esquire**

G&B_email_2_2b



Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Sent:** Tuesday, June 24, 2025 4:03 PM
**To:** Fons, Chris <Chris.Fons@ropesgray.com>; Lauren Geisser <lgeisser@gblegalteam.com>; Laina Herbert <lherbert@gelaw.com>; Elan Rafael <elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker <ktucker@gelaw.com>

**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Lauren/Elan—

I'm following up on Chris's email below concerning the depositions of Lauren and Elan's firms. Please let us know when you are available to discuss. I think folks may be talking past each other here. Whether Judge Weisman raised questions about whether we intended to seek privileged communications between you and the named plaintiffs or other clients is irrelevant. As we said in our meet and confer, we're not seeking either, whether in documents or in testimony. What we *are* seeking is discovery into how the named plaintiffs' cases were handled, particularly as it relates to demanding recovery for physical therapy costs, and how those matters were handled vis-à-vis ATI, the PI defendants, and any relevant insurers. That is neither privileged nor related to other clients. And I expect it to be a short deposition.

Can we please just get a deposition scheduled? We will compel the subpoena if we have to, but I am confident it will be easier on everyone to check this box and move on with the case.

Many thanks,
Tim

**Timothy R. Farrell**
**ROPES & GRAY LLP**
T +1 312 845 1209 | M +1 646 337 9376
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Timothy.Farrell@ropesgray.com
www.ropesgray.com
pronouns: he/him/his

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Fons, Chris <Chris.Fons@ropesgray.com>
**Sent:** Thursday, June 05, 2025 11:18 AM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Laina Herbert <lherbert@gelaw.com>; Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker <ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Laina, Lauren —

We do not agree with Laina's recollection of the hearing and we dispute that Judge Weisman entered an order regarding our subpoena for documents and deposition testimony. Laina, are you representing that Judge Weisman entered an order limiting our ability to take depositions of Lauren and Elan's firms?

In any event, we do not believe that any disagreement about the hearing should create issues for purposes of our depositions. As you'll see in our proposed deposition topics, the topics are primarily focused on the Stanley Morsberger and his accident. There are two deposition topics that are not specifically related to Mr. Morsberger—(1) the law firms' communications with any Defendant regarding Defendants' billing policies and procedures, and (2) the law firms' relationship with Grant & Eisenhofer P.A. or Gordon, Wolf & Carney, Chtd—but we do not expect that testimony about either of these topics would require specific information about the firms' other clients. As we've said before, we are interested in Lauren and Elan's representation of Mr. Morsberger and their general practices related to patients who had sought treatment from ATI; we do not intend to get into privileged information or specifics about the firms' other clients. Laina, if you believe Judge Weisman entered an order limiting our ability to obtain testimony on our proposed topics, please identify the specific topics for which you have concerns.

Lauren, we do not think it is reasonable for you to be completely unavailable to discuss deposition topics for weeks at a time. If you are headed out of town in a couple of weeks for vacation, we are happy to find a time to jump on a quick call before or after your depositions. As indicated above, there is no reason to delay these conversations because we are not, as you suggest, "under a Court Order" that limits our deposition topics. Please let us know when you are available during the next five business days.

Best,
Chris


**Christopher J. Fons**
**ROPES & GRAY LLP**
T +1 312 845 1118
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Chris.Fons@ropesgray.com
www.ropesgray.com
pronouns: he/him/his

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Thursday, June 05, 2025 7:51 AM
**To:** Laina Herbert <lherbert@gelaw.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker <ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Chris:

At a minimum, there are certainly varying degrees of comprehension on what Judge Weisman Ordered on May 8th. If Laina's recollection is accurate, then we have complied with the scope of the subpoena that Judge Weisman found discoverable and not overreaching.

I am in depositions the next five business days. I am then leaving town. This is why this firm's documentation was produced to you well in advance of the agreed upon timeframe I discussed with Tim.

Please order the transcript if you want to have a meaningful conversation about this and so we can start to work through the permissible 30(b)(6) topics, if any. Please connect with the parties and propose times to meet that permit time for you to order and circulate the transcript. You client is party to this matter, not mine. If you are under a Court Order on this topic, we are entitled to review it. Again, I am trying to work with you on this, but we are not parties and were not present at this conference. I am merely requesting clarification on what Judge Weisman Ordered on the topics were are attempting to discuss.

Thanks,

---

**Lauren M. Geisser, Esquire**

G&B_email_2_2b

Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Laina Herbert <lherbert@gelaw.com>
**Sent:** Wednesday, June 4, 2025 2:54 PM
**To:** Fons, Chris <Chris.Fons@ropesgray.com>; Lauren Geisser <lgeisser@gblegalteam.com>; Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>; Kelly Tucker <ktucker@gelaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet &

Confer [IWOV-LEGAL.FID329762]

Chris –

At the April 29 hearing, it is my recollection that Judge Weisman agreed that Defendants are only entitled to information from the personal injury firms that they subpoenaed concerning the Named Plaintiffs and not with respect to any of the firms' other clients who received treatment at ATI Physical Therapy's facilities. It is also my recollection that Tim confirmed to the Court that Defendants are seeking non-privileged communications regarding the class representatives only.

Regards, Laina

**Laina M. Herbert | Grant & Eisenhofer P.A.**
(she/her)
Senior Counsel
123 S. Justison Street
Wilmington, DE 19801
Tel: 302.622.7016
Fax: 302.622.7100
Cell: 302.332.4210
LHerbert@gelaw.com | www.gelaw.com

This e-mail, and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me at (302) 622-7016 and permanently delete the original and any copy of any e-mail and any printout thereof.

**From:** Fons, Chris <Chris.Fons@ropesgray.com>
**Sent:** Tuesday, June 3, 2025 10:05 AM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Laina Herbert <lherbert@gelaw.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Lauren,

Your statement that our request for a deposition is "contrary to the agreed plan" is incorrect. As

stated in our May 5 email below, "[w]e likewise would prefer to work out any issues regarding any depositions informally (including time and place), and we will endeavor to notice you of our intent to take a deposition as soon as possible after reviewing the documents." After we reviewed your document productions, we determined that depositions were necessary and requested availability during the next two months. That being said, we are willing to discuss the depositions informally this week. Are you available Wednesday after 3pm ET?

Regarding deposition topics, we provided the topics in the original subpoenas that we served on your and Elan's firms. *See* Gilman & Bedigian Subpoena, Ex. A at 8; Rafael Law Subpoena, Ex. A at 8–9.

As for the hearing before Judge Weisman, the docket entry you referenced simply indicates that the parties were to file a JSR by May 8 that provides, among other things, "the status of non-privileged information from personal-injury attorneys." Dkt. 196. On May 8, the parties filed the JSR requested by the Court explaining the status of the subpoenas, including that we agreed to continue depositions dates to allow the parties to review your productions. *See* Dkt. 197. The Court did not in any way limit our plan to depose your law firms for testimony about relevant, non-privileged information. Regardless, we do not have a transcript from that hearing, and we do not intend to delay discussions of depositions while one is being prepared. If you would like to review the transcript, you are free to contact the clerk and request that one be prepared.

Finally, we understand your May 29 email to mean that you have produced all responsive, non-privileged communications. However, as requested in my May 28 email, can you please confirm that you have not withheld any documents involving third parties or, as agreed, client communications that simply transmitted non-privileged information or attachments?

Thank you,
Chris


**Christopher J. Fons**
**ROPES & GRAY LLP**
T +1 312 845 1118
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Chris.Fons@ropesgray.com
www.ropesgray.com
pronouns: he/him/his

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Thursday, May 29, 2025 8:53 AM
**To:** Fons, Chris <Chris.Fons@ropesgray.com>; Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Laina Herbert <lherbert@gelaw.com>; Ehrlich, Philip

<Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Good day:

Based upon our previous conversations, emails, and written correspondence, your request for a 30(b)(6) deposition is contrary to the agreed upon plan we made.  Namely, you agreed to make efforts to resolve any questions informally before taking steps to procure a deposition. Please advise what we can resolve in an informal manner.

Moreover, we have complied with everything you have requested of us, that is the subject of the subpoena.  We are aware that the subpoenas directed to the personal injury firms were discussed during the magistrate status hearing and were limited by the Court. (see for example, document no. 196).  As such, given that we have complied with your requests, we view the deposition requested as not appropriate.

Notwithstanding, and in an effort to cooperate, kindly forward the 30(b)(6) topics you propose, along with the transcript of the hearing memorialized by Judge Weisman in document no. 196, as well as any other discussions on the topic you have had with the Court. That way we can review and get back to you.

Thanks,

---

**Lauren M. Geisser, Esquire**
G&B_email_2_2b

Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Fons, Chris <Chris.Fons@ropesgray.com>
**Sent:** Wednesday, May 28, 2025 3:45 PM
**To:** Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Laina Herbert <lherbert@gelaw.com>; Ehrlich, Philip

<Philip.Ehrlich@ropesgray.com>; Lauren Geisser <lgeisser@gblegalteam.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Lauren, Elan –

Thank you for your respective document productions. Your letters indicate that Gilman & Bedigian, LLC, and Rafael Law, LLC, have completed their productions of all responsive, non-privileged documents. Can you please confirm this to be true? In addition, since you have not produced any privilege logs, can you please confirm that you have not withheld any documents involving third parties or, as agreed, client communications that simply transmitted non-privileged information or attachments?

Furthermore, based on our review of your materials, we believe that Rule 30(b)(6) depositions of your law firms are necessary. Can you please provide your availability for depositions in June and July?

Thank you,
Chris

**Christopher J. Fons**
**ROPES & GRAY LLP**
T +1 312 845 1118
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Chris.Fons@ropesgray.com
www.ropesgray.com
pronouns: he/him/his

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Elan Rafael <elan@rafaellaw.com>
**Sent:** Tuesday, May 27, 2025 9:01 AM
**To:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Laina Herbert <lherbert@gelaw.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Lauren Geisser <lgeisser@gblegalteam.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Sabrina Newell <sabrina@gblegalteam.com>; Benjamin Badro <ben@rafaellaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Dear Mr. Farrell,

Attached is my document production. Please note that the documents previously produced by Ms. Geisser have not been included.

Thank you,

**Elan B. Rafael, Esq.**
RAFAEL LAW, LLC
3604 Eastern Avenue Ste. 100
Baltimore, MD 21224
W: 410-779-3585   F: 410-779-3593
www.rafaellaw.com/

**From:** Sabrina Newell <sabrina@gblegalteam.com>
**Sent:** Tuesday, May 13, 2025 3:57 PM
**To:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Laina Herbert <lherbert@gelaw.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Lauren Geisser <lgeisser@gblegalteam.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Elan Rafael <elan@rafaellaw.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Mr. Farrell:

Please see the attached correspondence from Ms. Geisser and responsive document production.

Warm Regards,

*Sabrina Marie Newell*

Sabrina M. Newell (she/her)
Paralegal

G&B_email_2_2b

Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Sent:** Monday, May 5, 2025 16:38
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Conroy, Catherine
<Catherine.Conroy@ropesgray.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell
<sabrina@gblegalteam.com>; Elan Rafael <elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Laina Herbert <lherbert@gelaw.com>; Fons, Chris
<Chris.Fons@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet &
Confer [IWOV-LEGAL.FID329762]

Thanks Lauren—

As discussed Friday, we're agreeing that what you've agreed to produce satisfies our requests. I
should add that this includes the files for your respective clients but also, as I noted Friday, any
referral or similar agreements, if any, between your firm and Ms. Hibbert or Mr. Gordan's firms (this
last piece is probably the one category that does not subsume the rest of the requests, and it
sounded like there are no such agreements, but I will let you all clarify that). So it is those two
categories of documents, which, again, should satisfy all of our requests. For that reason, I do not
believe "withdrawing" our requests makes sense. We've propounded our requests and now agreed
that a full production of those categories of documents should satisfy them.

The reservation of rights is simply prophylaxis, given that we haven't seen the productions or heard
back from you on privilege, medical records, etc. So we don't want a "gotcha" moment where a
production is made where we have questions or concerns and we're told we have no recourse to ask
question or seek assurances that a full production has been made. Assuming you produce
everything we've talked about, we're not expanding our document requests or asking for more, if
that's your concern. But we do reserve our rights to seek assurances that we have a full and fair
production.

Happy to discuss.

Thanks,
Tim

**Timothy R. Farrell**
**ROPES & GRAY LLP**
T +1 312 845 1209 | M +1 646 337 9376
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Timothy.Farrell@ropesgray.com
www.ropesgray.com
pronouns: he/him/his

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Monday, May 05, 2025 2:43 PM
**To:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>; Elan Rafael <elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Laina Herbert <lherbert@gelaw.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Hi Tim:

Thanks for your email. I am asking for confirmation that the rest of your document requests are being withdrawn. My understanding is that you are streamlining and limiting your requests, and by doing so, we are consenting to producing those documents. The last sentence, or rather, second to last sentence of your letter today – that "ATI reserves all rights and waives none"—indicates that you are not withdrawing the other outstanding Document Requests. Please advise. You have indicated some urgency in receiving these documents. I have time tomorrow to work on this, and then will not be able to for another week.

**Lauren M. Geisser, Esquire**

G&B_email_2_2b



Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Sent:** Monday, May 5, 2025 3:21 PM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Conroy, Catherine
<Catherine.Conroy@ropesgray.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell
<sabrina@gblegalteam.com>; Elan Rafael <elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Laina Herbert <lherbert@gelaw.com>; Fons, Chris
<Chris.Fons@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet &
Confer [IWOV-LEGAL.FID329762]

Thanks Lauren. I'm not sure I follow your first point. What is contradictory about the last sentence
in our letter? As to your second point, I think we are saying the same thing. We likewise would
prefer to work out any issues regarding any depositions informally (including time and place), and
we will endeavor to notice you of our intent to take a deposition as soon as possible after reviewing
the documents. We have an interest in moving this along, so I am hopeful we will be able to let you
know within that 10 day window (although we obviously will let you know if circumstances make
that impossible).

Thanks,
Tim

**Timothy R. Farrell**
**ROPES & GRAY LLP**
T +1 312 845 1209 | M +1 646 337 9376
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Timothy.Farrell@ropesgray.com
www.ropesgray.com
pronouns: he/him/his

This message (including attachments) is privileged and confidential. If you are not the intended recipient,
please delete it without further distribution and reply to the sender that you have received the message in
error.

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Monday, May 05, 2025 10:14 AM
**To:** Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Zachary M. Lipp
<zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>; Elan Rafael
<elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Laina Herbert <lherbert@gelaw.com>; Fons, Chris
<Chris.Fons@ropesgray.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Ehrlich, Philip
<Philip.Ehrlich@ropesgray.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet &
Confer [IWOV-LEGAL.FID329762]

Tim, I agree with the general recap outlined in your letter with the following two exceptions:

1st – My understanding of the agreement reached on Friday, is that once we produce the documents outlined in the attached letter, we will have complied with the Document Requests of the Subpoena. The last sentence of your letter contradicts this. Please advise.

2nd – With respect to any depositions, you agreed to reach out to us and try and resolve any questions you have in an informal manner, and to the extent it cannot be resolved, you will note the deposition where the firms are located, understanding that we object. Please confirm.

Further, and although not mentioned last Friday, I'd ask that you let me know if you intend seek a deposition within ten (10) business days of receiving the documents from us, to avoid having to readdress this issue several months from now. If this does not work, let me know a reasonable timeframe.

Thanks,

**Lauren M. Geisser, Esquire**

G&B_email_2_2b

Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Conroy, Catherine <Catherine.Conroy@ropesgray.com>
**Sent:** Monday, May 5, 2025 10:57 AM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>; Elan Rafael <elan@rafaellaw.com>
**Cc:** Richard Gordon <rgordon@gwcfirm.com>; Laina Herbert <lherbert@gelaw.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

All,

Thank you for your time last week. As discussed, I am attaching a letter memorializing our agreed upon approach for productions in response to the December 2024 subpoenas served in connection with *Morsberger v. ATI Holdings, LLC*, Case No. 1:22-cv-01181 (N.D. Ill.). We understand that you have proposed three weeks to prepare your productions, and that Plaintiffs' counsel has asserted the need for two weeks to conduct its own privilege review.  We want to stress again our concerns regarding the proposed timeline and urge that production be completed as soon as possible to avoid seeking further discovery extensions in our matter.

Please let us know of any questions.

Best,
Katie

**Catherine E. Conroy**
**ROPES & GRAY LLP**
T +1 312 845 1253
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Catherine.Conroy@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Laina Herbert <lherbert@gelaw.com>
**Sent:** Saturday, April 26, 2025 7:46 AM
**To:** Fons, Chris <Chris.Fons@ropesgray.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>
**Cc:** Lauren Geisser <lgeisser@gblegalteam.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>; Elan Rafael <elan@rafaellaw.com>; Richard Gordon <rgordon@gwcfirm.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer [IWOV-LEGAL.FID329762]

Hi Chris –

Richard Gordon and I plan to participate to ensure that Mr. Morsberger's and Ms. Eluh's attorney-client privilege is not waived. Yes, May 2 at 10 am ET works for us.

Regards, Laina

**Laina M. Herbert | Grant & Eisenhofer P.A.**
(she/her)
Senior Counsel
123 S. Justison Street
Wilmington, DE 19801
Tel: 302.622.7016
Fax: 302.622.7100
Cell: 302.332.4210
LHerbert@gelaw.com | www.gelaw.com

This e-mail, and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me at (302) 622-7016 and permanently delete the original and any copy of any e-mail and any printout thereof.

**From:** Fons, Chris <Chris.Fons@ropesgray.com>
**Sent:** Friday, April 25, 2025 2:58 PM
**To:** Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Elan Rafael <elan@rafaellaw.com>; Laina Herbert <lherbert@gelaw.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Richard Gordon <rgordon@gwcfirm.com>
**Cc:** Lauren Geisser <lgeisser@gblegalteam.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer

Lauren,

Your proposed time works for us.

As for Plaintiffs' counsel, you colleague included Laina Herbert in this email chain. Laina, do you plan to attend this meet and confer? And if so, does May 2nd at 10am ET work for you?

Best,
Chris

**Christopher J. Fons**
**ROPES & GRAY LLP**
T +1 312 845 1118
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Chris.Fons@ropesgray.com
www.ropesgray.com
pronouns: he/him/his
This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in

error.

**From:** Zachary M. Lipp <zlipp@dmvinjurylaw.com>
**Sent:** Friday, April 25, 2025 1:15 PM
**To:** Sabrina Newell <sabrina@gblegalteam.com>; Farrell, Timothy
<Timothy.Farrell@ropesgray.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Ehrlich, Philip
<Philip.Ehrlich@ropesgray.com>; Elan Rafael <elan@rafaellaw.com>; Laina Herbert
<lherbert@gelaw.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Richard Gordon
<rgordon@gwcfirm.com>
**Cc:** Lauren Geisser <lgeisser@gblegalteam.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet &
Confer

Received, thank you.  I will make myself available at that time.  Thank you.


Best regards,



**Zachary M. Lipp, Esq.**
**Wingfield, Ginsburg & Lipp, P.C.**
**700 Fifth Street, N.W., Suite 300**
**Washington, D.C. 20001**
**(Office) 202.789.8000 x132**
**(Cell) 301.580.9555**
**(Fax) 877.563.3536**
**(Email) zlipp@dmvinjurylaw.com**
**(Website) www.dmvinjurylaw.com**





CONFIDENTIALITY NOTICE: The information in this e-mail message, and any attachment, is
intended for the sole use of the individual and entity to whom it is addressed. This information
may be privileged, confidential, and protected from disclosure. If you are not the intended
recipient you are hereby notified that you have received this communication in error and that

26

any review, disclosure, dissemination, distribution or copying of it, or its, contents, is strictly prohibited. If you think you have received this e-mail in error, please e-mail the sender and destroy all copies of this communication and any attachments. Thank you.

**From:** Sabrina Newell <sabrina@gblegalteam.com>
**Sent:** Friday, April 25, 2025 1:33 PM
**To:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; Elan Rafael <elan@rafaellaw.com>; Laina Herbert <lherbert@gelaw.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>; Richard Gordon <rgordon@gwcfirm.com>
**Cc:** Lauren Geisser <lgeisser@gblegalteam.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet & Confer

> **Caution:** This is an external email and may be malicious. Please take care when clicking links or opening attachments.

Good afternoon,

Please see link below:

Topic: Morsberger, et al. v. ATI Holdings, LLC, et. al. - Call with Counsel
Time: May 2, 2025 10:00 AM Eastern Time (US and Canada)
Join Zoom Meeting
https://us06web.zoom.us/j/89675091770?pwd=8pvpS6zxdNUyw4qr2borDaNUioK6qk.1

Meeting ID: 896 7509 1770
Passcode: 049966

Warm Regards,

*Sabrina Marie Newell*

Sabrina M. Newell (she/her)
Paralegal

G&B_email_2_2b



Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Friday, April 25, 2025 13:28
**To:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Fons, Chris <Chris.Fons@ropesgray.com>;
Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Cc:** Elan Rafael <elan@rafaellaw.com>; Laina Herbert <lherbert@gelaw.com>; Zachary M. Lipp
<zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>; Conroy, Catherine
<Catherine.Conroy@ropesgray.com>; Richard Gordon <rgordon@gwcfirm.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence; Meet &
Confer

Tim:

Momentarily my office will circulate a zoom link for 10 am EST, on May 2nd to meet and
confer.  Please let know if this does not work for you, and class plaintiffs' counsel.  If it does
not, we will need to look into the following week.

---

**Lauren M. Geisser, Esquire**

G&B_email_2_2b

Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Lauren Geisser
**Sent:** Thursday, April 24, 2025 9:18 AM
**To:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Fons, Chris <Chris.Fons@ropesgray.com>;
Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Cc:** Elan Rafael <elan@rafaellaw.com>; Laina Herbert <lherbert@gelaw.com>; Zachary M. Lipp
<zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>; Conroy, Catherine
<Catherine.Conroy@ropesgray.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et al. – Subpoena Correspondence

Tim:

I will be in touch with you tomorrow regarding dates. I am looking towards the end of next week as I am already obligated the beginning half of next week. I believe it is prudent to include Plaintiffs' counsel from the class action in the meet and confer. Their clients, after all, have an interest in your discovery requests. Will you be contacting them to obtain availability or shall I?

**Lauren M. Geisser, Esquire**

G&B_email_2_2b

Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Sent:** Tuesday, April 22, 2025 11:54 AM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Cc:** Elan Rafael <elan@rafaellaw.com>; Laina Herbert <lherbert@gelaw.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence

Lauren—

We would very much prefer to work quickly and collaboratively with you to get the discovery we need with as little conflict, expense, and hassle as necessary. I think the best means to that end is for us to get on the phone near term and hammer out a discovery plan.

These subpoenas were served in December. We consented to a month-long extension for you to provide "responses and objections in good faith," only to have you serve a letter demanding that the subpoenas be withdrawn. In the interim, we have been focused on party discovery, which has only further underscored the need for discovery from your firms. Party class-certification document discovery is nearing its close and we will be scheduling depositions soon.

We accordingly need document discovery from your firms promptly. I appreciate needing some

29

time to review the correspondence and requests, but that time is hours or a few days, not a week or more.  (I just reviewed everything in the last 20 minutes.)  If your firms' position is simply that it will not produce documents, just let us know now so we can seek appropriate relief under Rule 45.  We are willing to meet and confer, but your refusal to even schedule a short meeting within a reasonable time is difficult to interpret as anything other than intentional delay with the hope that our client will simply relent.  I can assure you that my client is committed to getting all the discovery it needs to defend this case, and I do not believe it will sit well with the federal court reviewing our motion to compel if your client attempts to put us off for another series of weeks only to refuse any production again.

Please either let me know if your firms' position is that it is refusing to produce, or otherwise please let me know times you can be available this week or next to discuss.

Many thanks,
Tim


**Timothy R. Farrell**
**ROPES & GRAY LLP**
T +1 312 845 1209 | M +1 646 337 9376
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Timothy.Farrell@ropesgray.com
www.ropesgray.com
pronouns: he/him/his
This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Tuesday, April 22, 2025 7:45 AM
**To:** Fons, Chris <Chris.Fons@ropesgray.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Cc:** Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Laina Herbert <lherbert@gelaw.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence

Chris:

Good morning.

Since our February 4th correspondence, we appropriately presumed the issue had resolved after you reviewed the relevant case law we provided.  Notwithstanding, and surprisingly, we received correspondence from you on April 9th about the issue, again.  Given that two months have passed since our last communication, I simply cannot meet

your request to meet and confer by the end of this month, as we all to review everything in detail, again. I have not even had time to review your April 9ᵗʰ correspondence as it was sent right before the Jewish holidays.

Notwithstanding, and in an effort to continue this dialogue, we will get you dates and times over the next week and a half for a meet and confer in May.

**Lauren M. Geisser, Esquire**

G&B_email_2_2b

Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

**From:** Fons, Chris <Chris.Fons@ropesgray.com>
**Sent:** Monday, April 21, 2025 2:55 PM
**To:** Lauren Geisser <lgeisser@gblegalteam.com>; Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Cc:** Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Laina Herbert <lherbert@gelaw.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>; Conroy, Catherine <Catherine.Conroy@ropesgray.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence

Counsel,

Thank you for your note on Friday. Please let us know when we can expect a substantive response. We also reiterate our request to schedule a meet and confer this month because we believe that would be the most efficient way to resolve these subpoenas. Are you available for a call in the next week and a half?

To your question, defendants have identified your firms as the most efficient and direct source (and in some cases only source) of the discovery sought through our subpoenas. Thus, whether we are seeking discovery from other third parties is not relevant to your firm's obligations to comply with the subpoenas. To the extent you continue to suggest that our subpoenas are permitted only after the information we seek is determined to be unavailable from another source, *see* Ltr. from L. Geisser to T. Farrell dated Feb. 4, 2025, at 2 (citing *EEOC v. McCormick & Schmick's Seafood Rest., Inc.*, No. WMN-08-0984, 2010 WL 2572809 (D. Md. June 22, 2010); *Maxtena, Inc., v. Marks*, 289 F.R.D. 427, (D. Md. 2012)), our letter explains why the *McCormick* and *Maxtena* cases are inapposite.

Again, those cases sought discovery from the opposing counsel *in that litigation*; that is not the case here.

We look forward to hearing from you soon.

Best,
Chris

**Christopher J. Fons**
**ROPES & GRAY LLP**
T +1 312 845 1118
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Chris.Fons@ropesgray.com
www.ropesgray.com
pronouns: he/him/his
This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Lauren Geisser <lgeisser@gblegalteam.com>
**Sent:** Friday, April 18, 2025 6:48 AM
**To:** Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Cc:** Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>; Laina Herbert <lherbert@gelaw.com>; Fons, Chris <Chris.Fons@ropesgray.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence

Hi Phillip:

While we consider our response to your most recent correspondence, we ask that you let us know what efforts you have undertaken to obtain this discovery from third parties?

Thanks,

**Lauren M. Geisser, Esquire**
Description: G&B_email_2_2b

Baltimore 410-560-4999  Philadelphia 215-561-4999
www.gilmanbedigian.com
Admitted MD, PA and D.C.

**Message and Attachments are Confidential, Privileged and/or Work Product**

32

**Follow the Law Offices of Gilman & Bedigian LLC for Local Legal News and Safety Information:**

Facebook | Twitter | Google+ | LinkedIn

**From:** Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>
**Sent:** Wednesday, April 9, 2025 6:01 PM
**To:** Elan Rafael <elan@rafaellaw.com>; Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** lherbert@gelaw.com; Fons, Chris <Chris.Fons@ropesgray.com>; Lauren Geisser
<lgeisser@gblegalteam.com>; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; Sabrina Newell
<sabrina@gblegalteam.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence

Counsel,

Please see the attached correspondence.

Best,
Philip

**Philip P. Ehrlich**
**ROPES & GRAY LLP**
T +1 312 845 1123 | M +1 312 833 5754
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Philip.Ehrlich@ropesgray.com
www.ropesgray.com
pronouns: he/him/his
This message (including attachments) is privileged and confidential. If you are not the intended recipient,
please delete it without further distribution and reply to the sender that you have received the message in
error.

**From:** Elan Rafael <elan@rafaellaw.com>
**Sent:** Wednesday, February 05, 2025 8:18 AM
**To:** Farrell, Timothy <Timothy.Farrell@ropesgray.com>
**Cc:** Ehrlich, Philip <Philip.Ehrlich@ropesgray.com>; lherbert@gelaw.com; Fons, Chris
<Chris.Fons@ropesgray.com>; Lauren Geisser <lgeisser@gblegalteam.com>; Zachary M. Lipp
<zlipp@dmvinjurylaw.com>; Sabrina Newell <sabrina@gblegalteam.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence



Counsel,

Rafael, LLC adopts and incorporates the objections detailed by Gilman & Bedigian in
their response dated February 4, 2025.

Respectfully,

**Elan B. Rafael, Esq.**
RAFAEL LAW, LLC
3604 Eastern Avenue Ste. 100
Baltimore, MD 21224
W: 410-779-3585   F: 410-779-3593
www.rafaellaw.com/

**From:** Zachary M. Lipp <zlipp@dmvinjurylaw.com>
**Sent:** Tuesday, February 4, 2025 1:37 PM
**To:** Sabrina Newell <sabrina@gblegalteam.com>; Timothy.Farrell@ropesgray.com
**Cc:** Philip.Ehrlich@ropesgray.com; lherbert@gelaw.com; Elan Rafael <elan@rafaellaw.com>; Chris.Fons@ropesgray.com; Lauren Geisser <lgeisser@gblegalteam.com>
**Subject:** RE: Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence

Counsel,

Wingfield, Ginsburg & Lipp adopts and incorporates Gilman & Bedigian's objections as outlined in their February 4, 2025 response.

Best regards,

Zachary M. Lipp, Esq.
Wingfield, Ginsburg & Lipp, P.C.
700 Fifth Street, N.W., Suite 300
Washington, D.C. 20001
(Office) 202.789.8000 x132
(Cell) 301.580.9555
(Fax) 877.563.3536
(Email) zlipp@dmvinjurylaw.com
(Website) www.dmvinjurylaw.com





CONFIDENTIALITY NOTICE: The information in this e-mail message, and any attachment, is intended for the sole use of the individual and entity to whom it is addressed. This information may be privileged, confidential, and protected from disclosure. If you are not the intended recipient you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it, or its, contents, is strictly prohibited. If you think you have received this e-mail in error, please e-mail the sender and destroy all copies of this communication and any attachments. Thank you.

**From:** Sabrina Newell <sabrina@gblegalteam.com>
**Sent:** Tuesday, February 4, 2025 10:52 AM
**To:** Timothy.Farrell@ropesgray.com
**Cc:** Philip.Ehrlich@ropesgray.com; Zachary M. Lipp <zlipp@dmvinjurylaw.com>; lherbert@gelaw.com; elan@rafaellaw.com; Chris.Fons@ropesgray.com; Lauren Geisser <lgeisser@gblegalteam.com>
**Subject:** Morsberger, et al. v. ATI Holdings, LLC, et. al. – Subpoena Correspondence

> **Caution:** This is an external email and may be malicious. Please take care when clicking links or opening attachments.

Counsel,

Please see attached correspondence in regard to the above-referenced matter. Thank you.

Warm Regards,

*Sabrina Marie Newell*

Sabrina M. Newell (she/her)
Paralegal

35

G&B_email_2_2b

Baltimore 410-560-4999  Philadelphia 215-561-4999 Texas 214-271-4999
www.gilmanbedigian.com

**Message and Attachments are Confidential, Privileged and/or Work Product**

**Follow Gilman & Bedigian LLC:**

Facebook | X | LinkedIn | Instagram | TikTok

# EXHIBIT 6



ROPES & GRAY LLP
191 NORTH WACKER DRIVE
32nd FLOOR
CHICAGO, ILLINOIS 60606-4302
WWW.ROPESGRAY.COM

April 9, 2025

Timothy R. Farrell
T +1 312 845 1209
timothy.farrell@ropesgray.com

**VIA EMAIL**

Lauren Geisser
Gilman & Bedigian, LLC
1954 Greenspring Drive, Suite 250
Timonium, Maryland 21093
lgeisser@gblegalteam.com

Zachary M. Lipp
Wingfield, Ginsburg & Lipp, P.C.
700 Fifth Street, N.W., Suite 300
Washington, D.C. 20001
zlipp@dmvinjurylaw.com

Elan B. Rafael
Rafael Law, LLC
3604 Eastern Avenue Suite 100
Baltimore, MD 21224
elan@rafaellaw.com

Re:    Subpoena responses in
       *Morsberger v. ATI Holdings, LLC*, Case No. 1:22-cv-01181 (N.D. Ill.)

Counsel:

I write on behalf of ATI Holdings, LLC; Athletic & Therapeutic Institute of Naperville, LLC; ATI Physical Therapy, Inc.; and Ray Wahl (together, "ATI"), in response to Ms. Geisser's letter to me dated February 4, 2025 (the "February Letter"). I also respond to Mr. Lipp's February 4, 2025 email and Mr. Rafael's February 5, 2025 email purporting to incorporate the February Letter's objections.

As you know, in early December 2024, ATI served Gilman & Bedigian, LLC; Wingfield, Ginsburg & Lipp, P.C.; and Rafael Law, LLC (together, the "Firms") with separate subpoenas under Federal Rule of Civil Procedure 45.[1] On December 18, 2024, Mr. Lipp asked me for a "reasonable extension to provide responses and objections." When I offered a three-week extension, Ms. Geisser, apparently

---

[1] The subpoena to Gilman & Bedigian, LLC was served on December 9, 2024, and the subpoenas to Wingfield, Ginsburg & Lipp, P.C., and Rafael Law, LLC, were served on December 6, 2024.

ROPES & GRAY LLP

- 2 -                                                                                        April 9, 2025

representing not only her own firm, but also Wingfield, Ginsburg & Lipp, P.C., and Rafael Law, LLC, indicated that "February 6th is the earliest the firms can provide responses and objections in good faith." And on January 17, 2025, in response to a question from my colleague about scheduling the Firms' depositions, Ms. Geisser offered to "host the depositions at [her] Timonium office."

Considering that background, I was surprised and disappointed to receive the February Letter, in which you "object[ed] to the subpoena in all respects," accused us of "fail[ing] to consider, in any respect, the Maryland Rules of Ethics, the [Maryland Health-General] Article, and any other law for that matter," suggested—in bold font—that our subpoenas "could rise to the level of contempt if not immediately modified," and asked us, for the very first time, to "promptly withdraw the subpoena[s]."

We decline your request. The subpoenas will not be withdrawn. The subpoenas are valid under the Federal Rules and Maryland law, and they properly request relevant, non-privileged information. We expect the Firms to comply, and we reserve all rights to move to compel, if necessary.

But we are not there yet. Despite the February Letter's bluster, you indicated that the "Firm[s] remain[] open to discussing this matter . . . in good faith." We appreciate your offer, and we would like to schedule a meet and confer this month. Please let us know when the Firms are available in April for a conversation. Additionally, please let us know whether each Firm is representing itself in connection with its subpoena responses or whether, as appears to be true, Ms. Geisser is representing all the Firms.

To make our meet and confer as productive as possible, we address below the points you raised in the February Letter. Despite the discussion below, ATI reserves all rights to make additional arguments, and it waives none.

**Maryland Rules of Ethics**

Invoking the Maryland Rules of Ethics, the February Letter asserts that the Firms "cannot respond—one way another—to the subpoena[s]" because "any responses would include matters relating to clients." But the Maryland Rules of Ethics plainly do *not* create the intractable "ethical hurdles" that the Firms suggest.

Maryland's highest court has confirmed that, when "relevant evidence [is] sought through discovery," the "ethical duty of confidence takes a back seat to the quest for truth," and, "unless protected by the attorney-client privilege," the evidence "*must be produced.*" *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 689-90 (2000) (emphasis added). "Stated differently, the search for truth is paramount to just disposition of cases in controversy and Maryland's broad discovery rules take precedent over the attorney's ethical duty of confidentiality unless protected by law." *Id.*

The Maryland Rules of Ethics thus do not prohibit the Firms from responding to the Subpoenas. The must Firms promptly withdraw all objections purportedly based on the Maryland Rules of Ethics.

ROPES & GRAY LLP

- 3 -                                                                                    April 9, 2025

## Attorney-Client Privilege

The February Letter suggests that a court would view the Subpoenas "skeptically" because they are directed to non-party lawyers. For support, however, the February Letter relies entirely on cases in which a party sought discovery from its opposing counsel *in that litigation. See E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, 2010 WL 2572809, at *1-2 (D. Md. June 22, 2010) (defendants in EEOC enforcement action sought to depose EEOC attorneys); *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 440-41 (D. Md. 2012) (defendant sought to depose plaintiff's corporate counsel). As far as we are aware, the Firms are *not* representing Mr. Morsberger or Ms. Eluh with respect to their claims against ATI *in this case.* For that reason, *E.E.O.C.* and *Maxtena* are not on point.

The Subpoenas also include requests that clearly do not implicate attorney-client privilege. As just one example, the Subpoenas request documents and testimony about communications between (i) You or the plaintiffs and (ii) plaintiffs' or the third-party tortfeasors' insurers or agents or representatives of those insurers. Those communications with third parties cannot possibly be privileged. Even more strikingly, the Subpoena to Wingfield, Ginsburg & Lipp, P.C. requests documents and communications filed with the court or presented to the jury in *Clementine Eluh v. Abel Wayeso*, Case No. D-06-CV-22-021356 (District Court for Montgomery County, Md. – Civil), as well as communications with opposing counsel in that case. Documents that Ms. Eluh's attorneys filed in court or sent to opposing counsel cannot be privileged or protected, and they must be produced.

To the extent the Firms believe in good faith that other requests do call for production of or testimony about privileged or protected materials, the Federal Rules require the Firms to "expressly make the claim" and provide details to support it. Fed. R. Civ. P. 26(b)(5)(A).[2] Even the cases the Firms cite in the February Letter, however, make clear that the types of "generalized claims of privilege" that the Firms interposed "are insufficient." *Richardson v. Sexual Assault/Spouse Abuse Research Center, Inc.*, 280 F.R.D. 223, 227-28 (D. Md. 2010) (party refusing to respond to discovery request "obligated to particularize the basis for any privilege claims the raise"). If the Firms intend to make privilege objections, the Firms must make them. Otherwise, the Firms must respond to the Subpoenas' requests.

## Relevance

In the February Letter, the Firms assert that the Subpoenas are "an overbroad wish list not tailored to the Litigation." As examples of the Subpoenas' purported overbreadth, the Firms cite ATI's requests for communications between the Firms and ATI and communications between the Firms and the

---

[2] ATI reserves all rights to argue that Mr. Morsberger and Ms. Eluh waived the privilege by putting the advice they received from the Firms and the communications they had with the Firms about ATI's billing at issue in their complaints. *See, e.g., CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170, 198-210 (Md. 2012).

ROPES & GRAY LLP

                                    - 4 -                            April 9, 2025

third-party tortfeasors. But, as you may know, the Court has permitted Mr. Morsberger's and Ms. Eluh's claims against ATI to proceed only to the extent they are premised on "extra-contractual conduct," including "representations, advertisements, and communications regarding how insurance and billing would be handled." *Morsberger v. ATI Holdings, LLC*, 2024 WL 308465, at *5 (N.D. Ill. Jan. 26, 2024). Based on the Court's ruling, what ATI told Mr. Morsberger and Ms. Eluh through their attorneys, and what those attorneys communicated with the third-party tortfeasors who ultimately footed the bill for Mr. Morsberger's and Ms. Eluh's treatment, are relevant to liability and to damages. And that is especially true because, as you may know, ATI has argued that Ms. Eluh waived and Mr. Morsberger released any potential claims they had against ATI in communications between ATI and the Firms.

If there are specific requests that the Firms believe are overbroad or disproportionate, ATI is of course willing to discuss ways to narrow them. But the Firms' boilerplate cries of "fishing expedition" are not productive and are not a reason for the Firms to continue to refuse to respond.

**Maryland Health General Article**

The February Letter contends that the Subpoenas somehow "skirt[]" the Maryland Health General Article and so the Firms cannot respond. Even assuming the Article applies to the Firms, however, the Article expressly *requires* the disclosure of medical records "without the authorization of a person in interest" in certain situations "in accordance with compulsory process," which "includes a subpoena." Md. Health Gen. §§ 4-306(a), (b)(6).

As you may know, the Court has already entered a qualified protective order pursuant to 45 C.F.R. § 164.512(e)(1)(V) and the Health Insurance Portability and Accountability Act. We have attached that qualified order to this letter for your reference. As you also know, ATI served copies of the Subpoenas on Mr. Morsberger and Ms. Eluh through their counsel in December 2024. As far as ATI is aware, despite having notice of the Subpoenas, neither Mr. Morsberger nor Ms. Eluh has raised any objections to the Firms responding. If you have authority indicating that, under those circumstances, the Article not only does not require, but in fact prohibits, the Firms from responding to the Subpoenas, please provide it.

In any event, if the Firms believe that the Subpoenas implicate protected health information, ATI is willing to discuss how the Firms can comply with both the Subpoenas and the Maryland Health General Article. The Firms cannot, however, refuse to respond to the Subpoenas in their entirety merely because the Firms believe that some requests may require the Firms to produce medical information and documentation.

**Federal Rule of Civil Procedure 34**

Citing only *Richardson*, the February Letter asserts (in bold) that the Subpoenas "**could rise to the level of contempt if not immediately modified**" because they "attempt to avoid [ATI's] discovery

ROPES & GRAY LLP

- 5 -                                                                April 9, 2025

obligations under" Rule 34 by asking the Firms for information that Mr. Morsberger and Ms. Eluh refused to provide.

To start, we do not understand how the Firms know what ATI's discovery requests to Mr. Morsberger and Ms. Eluh contain or know that Plaintiffs' responses are supposedly "replete with objections." ATI's discovery requests were not filed publicly, and they were served on Mr. Morsberger and Ms. Eluh in August 2022 subject to the now-entered protective order. That the Firms appear to have received ATI's requests and Plaintiffs' responses nonetheless is troubling and raises further concerns about the communications between the Firms and the lawyers representing Mr. Morsberger and Ms. Eluh in this case. We look forward to discussing this issue during our meet and confer.

But putting that issue to the side, *Richardson* does not remotely suggest that ATI's Subpoenas are contemptible or improper. In *Richardson*, the plaintiff served Rule 45 subpoenas *on the defendants* after the defendants objected to the plaintiff's requests for production under Rule 34. *See* 270 F.R.D. at 225-26. That is not at all the case here. ATI served the subpoenas on the Firms, *not* on the plaintiffs. Nor do the Subpoenas simply request information that the plaintiffs refused to provide. To the contrary, the Subpoenas request documents, information, and testimony specifically from the Firms because of the Firms' unique role in the events underlying this litigation. Plaintiffs' individual discovery objections notwithstanding, ATI is free to subpoena third parties, such as the Firms, for materials that plaintiffs are unable to produce. Especially because Mr. Morsberger and Ms. Eluh themselves produced only a handful of documents, ATI's Subpoenas are proper, and the Firms must respond to them.

**Trade Secrets**

The February Letter asserts that the Firms cannot respond to the Subpoenas because they request "confidential commercial information and/or trade secrets unique to the Firm[s]." The Firms are apparently concerned that "[d]isclosing [their] trade secrets and business practices directly to [ATI] could cause irreparable financial detriment and harm to the Firm[s] and the clients [they] represent." But the Firms view protectible trade secrets and confidential information far too broadly. Based on the February Letter, every communication the Firms have with anyone—including ATI, insurers, the courts, and opposing counsel—is a trade secret or confidential information that cannot be produced. That simply cannot be the case and the Firms have offered no credible basis for such an expansive assertion of trade secrets. In all events, the Court has already entered a stipulated confidentiality order (which, again, we have included with this letter) that permits the Firms to designate any material they produce as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." If the Firms believe that even that level of protection is insufficient, ATI is willing to discuss whether an additional "outside counsel's eyes only" level of protection would be appropriate in this case. But competitors routinely produce confidential information in response to subpoenas, and the Firms cannot broadly refuse to respond based only on nonspecific confidentiality concerns.

*            *            *

ROPES & GRAY LLP

- 6 -                                                   April 9, 2025

We look forward to discussing your objections and our responses in good faith, and we remain optimistic that we can reach a reasonable resolution without involving the court. If, however, the Firms continue to refuse to respond to ATI's valid subpoenas, ATI reserves all rights to seek appropriate relief. Please advise when you can be available for a meet and confer on these matters.

ATI reserves all rights as to the Subpoenas and intends to waive no rights, positions, objections, or arguments with this letter.

Sincerely,

/s/ Timothy R. Farrell

Timothy R. Farrell


cc:    Laina Herbert (lherbert@gelaw.com)
       Philip Ehrlich (philip.ehrlich@ropesgray.com)
       Chris Fons (chris.fons@ropesgray.com)

Exhibit A

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

STANLEY MORSBERGER and    )
CLEMENTINE ELUH, on their own behalf )
and on behalf of all others similarly situated,)
                        )      Case No: 1:22-cv-01181
Plaintiffs,              )      Honorable Jorge L. Alonso
                        )      Honorable M. David Weisman
v.                    )
                        )
ATI HOLDINGS, LLC *et al.*      )
                        )
Defendants.           )

## AMENDED STIPULATED CONFIDENTIALITY ORDER

WHEREAS, the parties to this Agreed Confidentiality Order have agreed to the terms of this Order; accordingly, it is **ORDERED**:

1.    **Scope**.  All materials produced or adduced in the course of discovery, including initial disclosures, responses to discovery requests and subpoenas, deposition testimony and exhibits, and information derived directly therefrom (hereinafter, collectively, "documents"), shall be subject to this Order concerning Confidential Information as defined below.  This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2.    **Confidential Information**. As used in this Order, "Confidential Information" means information designated as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" by the producing party that falls within one or more of the following categories: (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial, or financial information that the party has maintained as confidential; (d) personal health information ("PHI") concerning any individual, including Protected Health Information as

defined by the Health Insurance Portability and Accountability Act of 1996, Pub. Law 10-191, and its implementing regulations (collectively, "HIPAA"); (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; (g) personnel or employment records of a person who is not a party to the case; or (h) any document or information that the producing party determines, reasonably and in good faith, to constitute confidential personal, business, financial, or other information, subject to Paragraph 3(b) below.  Information or documents that are available to the public may not be designated as Confidential Information.

      3.    **Designation**.

          (a)    A party may designate a document as Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" on the document and on all copies in a manner that will not interfere with the legibility of the document.  As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information.  The marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" shall be applied prior to or at the time of the documents are produced or disclosed.  Applying the marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.  Any copies that are made of any documents marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE

ORDER" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked.

(b)     Documents may be designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only in those circumstances where the producing party believes in good faith that (a) such document contains PHI, or (b) disclosure of such document would cause a substantial risk of a significant competitive or commercial disadvantage to the producing party, including but not limited to because the document contains information that reflects the producing party's:  research and development; trade secrets; potential future products; confidential agreements with third parties; or any other information of such sensitivity that the producing party might sustain injury by its disclosure to a party, including information in written, oral, electronic, graphic, pictorial, audiovisual, or other form, whether it is a document, information contained in a document, item produced for inspection, information revealed during a deposition, information revealed in an interrogatory, or otherwise.  Any party may object to the classification of discovery material as "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" by following the procedure set forth in Paragraph 11.  Nothing herein shall be construed to allow for global designations of all documents as "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY."

(c)    The designation of a document as Confidential Information is a certification by an attorney that the document contains Confidential Information as defined in this Order.

(d)    All PHI that is filed with the Court must be (1) filed under seal or *in camera*, or (2) redacted from any filing that is publicly available, all in accordance with the applicable rules and procedures of the United States District Court for the Northern District of Illinois.

4.    **Depositions.**  Unless all parties agree on the record at the time the deposition testimony is taken, all deposition testimony taken in this case shall be treated as Confidential Information until the expiration of the following:  No later than the earlier of the 21st day after the transcript is delivered to the witness or 30 days after the testimony was given.  Within this time period, a party may serve a Notice of Designation to all parties of record as to specific portions of the testimony that are designated Confidential Information, and thereafter, only those portions identified in the Notice of Designation shall be protected by the terms of this Order. The failure to serve a timely Notice of Designation shall waive any designation of testimony taken in that deposition as Confidential Information, unless otherwise ordered by the Court.

5.    **Protection of Confidential Material**.

(a)    **General Protections**.  Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation and any appeal thereof.  In a putative class action, Confidential Information may be disclosed only to the named plaintiff(s) and not to any other member of the putative class unless and until a class including the putative member has been certified.  Nothing contained in this Order

-4-

shall preclude a producing party from using its own Confidential Information in any manner it sees fit, or from revealing such Confidential Information to whomever it chooses, without the prior consent of any other party or of this Court; however, should a Designating Party use its Confidential Information in such a way that renders any confidentiality designation pursuant to the terms of this order no longer applicable, the Designating Party shall promptly inform all other Parties that such Document, testimony, or information should no longer be treated as Confidential Information.

    (b)    **Limited Third-Party Disclosures**.  The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information designated "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" to any third person or entity except as set forth herein in subparagraphs (i)-(ix).  Subject to these requirements, the following categories of persons may be allowed to review Confidential Information designated "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER":

        i.    Counsel.  Counsel for the parties and employees of counsel who have responsibility for the action;

        ii.    Parties.  Individual parties and directors or employees of a party but only to the extent counsel determines in good faith that the director's or employee's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed;

        iii.    The Court and its personnel;

        iv.    Court Reporters and Recorders.  Court reporters and recorders engaged for depositions;

v.    Contractors.  Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process, index, sort, host, or otherwise manage the storage or retrieval of electronically stored documents, but only to the extent such disclosure would comply with HIPAA;

vi.    Consultants and Experts.  Consultants, investigators, or other experts employed or retained by the parties or counsel for the parties to assist in the preparation and trial of this action, but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound, and only to the extent such disclosure would comply with HIPAA;

vii.    Witnesses at depositions.  During their depositions, witnesses in this action to whom disclosure is reasonably necessary, provided such witness is first advised of and agrees on the record to the terms and conditions of this Order or executes the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound, and only to the extent such disclosure would comply with HIPAA.  If a witness refuses to agree on the record to the terms and conditions of this Order or to sign Attachment A, and if the producing party refuses to agree on the record to the disclosure of the Confidential Information to the witness, which consent shall not be unreasonably denied, counsel for any party may seek a court order requiring the witness to abide by the terms and conditions of this Order.  Witnesses shall not retain a copy of documents containing Confidential Information, except witnesses may receive

a copy of all exhibits marked at their depositions in connection with review of the transcripts. Pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential Information pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

        viii.    Author or recipient. The author or recipient of the document (not including a person who received the document in the course of litigation); and

        ix.    Others by Consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered.

    (c)    The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to any third person or entity except as set forth in subparagraphs 5(b)(i), (iii), (iv), (v), (vi), (vii), (viii), and (ix) above.

    (d)    **Control of Documents**. Counsel for the parties shall make all reasonable and appropriate efforts to prevent unauthorized or inadvertent disclosure of Confidential Information. Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

    (e)    **Binding Non-Parties to Order.** As set out in paragraph 20, non-party discovery respondents and other persons or entities who have not signed this Order but who will produce or receive in this litigation information qualifying as Confidential

Information may join this Order by executing and filing with the Court an agreement to be fully bound by this Order.

6.      **Limitations on the Use of Certain Discovery**. The Parties agree to the following provisions regarding discovery related to class certification, meaning discovery that is exchanged prior to the Court's ruling on class certification in connection with briefing on Defendants' forthcoming Motion to Deny Class Certification or Plaintiffs' forthcoming motion to certify their class under Federal Rule of Civil Procedure 23 ("Class Certification Discovery"):

(a)     Defendants may redact the names and other personal health and identifying information that could be used to identify ATI patients who are not named plaintiffs in this action.

(b)     Plaintiffs agree not to use the Class Certification Discovery produced by Defendants to identify or add any new named plaintiff.

(c)     In the event Plaintiffs seek to add a new named plaintiff to the Complaint prior to a decision on class certification in this Action, Defendants, if they have a good faith basis, may: (a) raise with the Court their concern that Plaintiffs identified the proposed new named plaintiff using information contained in Defendants' Class Certification Discovery, and (b) seek to exclude the proposed new named plaintiff from participation as a representative plaintiff.  If such a filing is made, Plaintiffs must make a *prima facie* showing that they identified the proposed new named plaintiff using information or documents obtained from another source and not the information contained in Defendants' Class Certification Discovery production.  Plaintiffs may meet their burden by producing, by way of example only, sworn affidavits or documentary evidence demonstrating their compliance with Paragraph 6.  Once Plaintiffs make a *prima facie* showing, as required by

this subparagraph, the burden to prove the proposed new named plaintiff was identified using information or documents obtained from Defendants' Class Certification Discovery production shifts to Defendants.

(d)     The Parties agree that nothing in Paragraph 6(c) shall require Plaintiffs to reveal, disclose and/or produce information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.  If Plaintiffs choose to produce, disclose, or rely upon information or materials protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection in connection with making the *prima facie* showing required by Paragraph 6(c), the Parties agree that such a production, disclosure, or reliance will not (i) waive any privilege or protection for that specific document or the information contained therein and/or (ii) serve as the basis for a claim of subject matter waiver.  By implementing the procedures set forth in Paragraph 6, Plaintiffs intend to preserve, and not waive, any applicable privilege or protection.

(e)     Subject to the restrictions imposed by the Confidentiality Order, Plaintiffs may use the Class Certification Discovery prior to the Court's ruling on class certification for any proper purpose other than for identifying or adding any new named plaintiff to the Complaint.

(f)     Subject to the restrictions imposed by the Confidentiality Order, nothing in Paragraph 6 shall limit the use of any discovery, including Class Certification Discovery, by any Party, after the Court's ruling on class certification.  Subject to the restrictions imposed by the Confidentiality Order, if the Court certifies a class in this Action, Plaintiffs

may use the Class Certification Discovery for any proper purpose, including for the purpose of identifying new named plaintiffs.

7.    **Inadvertent Failure to Designate**.    An inadvertent failure to designate a document as Confidential Information does not, standing alone, waive the right to so designate the document.  If a party designates a document as Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Order.  No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential Information.

8.    **Inadvertent Production**.

(a)    If a producing party determines that the party has inadvertently produced documents or materials that are subject to a claim of privilege or immunity, or are otherwise protected from disclosure (together, "privileged information"), the producing party shall inform counsel for each of the parties of the inadvertent production in writing. Inadvertent production of privileged or otherwise protected discovery materials will not be deemed to have waived any privilege.  Any claim of inadvertent production, as set forth herein, shall be without prejudice to the right of the receiving party to seek an order from the Court directing the production of the document on the ground that the claimed privilege or protection is invalid or inapplicable; provided, however, that claimed inadvertent production of the document or information in the course of this action shall not constitute grounds for asserting waiver of the privilege or protection.  Pursuant to

Federal Rule of Civil Procedure 26(b)(5)(B), counsel for the receiving parties shall be permitted to sequester the inadvertently produced privileged information pending the Court's resolution. The parties may refer to the document in any motions to the Court concerning that document. The parties shall seek the Court's leave to file under seal all copies of the document, and all quotations or other detailed descriptions of the document's contents contained in any other filing.

(b)      Privacy rights protected by the General Data Protection Regulation 2016/679 ("GDPR"), HIPAA, or any other rule or requirement are not waived by the production of protected information, including PHI.

(c)      A party who discovers that it received what it reasonably believes to be a privileged or protected document that was inadvertently disclosed or produced must promptly notify the disclosing or producing party or non-party.

(d)      If a producing party claims during a deposition that privileged information was inadvertently produced in a document, then upon request of that party, questioning about the information in the document for which privilege is claimed shall immediately cease. The party receiving the document in discovery shall have the right to continue the deposition until after the resolution of any dispute concerning the document's privileged nature, solely so that the receiving party may question the witness about the claimed privileged document in the event that the document is ruled non-privileged or not protected from discovery.

9.      **Qualified Protective Order**. This Order is intended to and shall constitute a qualified protective order pursuant to 45 C.F.R. § 164.512(e)(1)(v).

10.      **Filing of Confidential Information**.  This Order does not, by itself, authorize the filing of any document under seal.  Any party wishing to file a document designated as Confidential Information in connection with a motion, brief or other submission to the Court must comply with Local Rule 26.2.

11.      **No Greater Protection of Specific Documents**.  Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.

12.      **Challenges by a Party to Designation as Confidential Information**.  The designation of any material or document as Confidential Information is subject to challenge by any party.  The following procedure shall apply to any such challenge.

(a)      **Meet and Confer**.  A party challenging the designation of Confidential Information must do so in good faith and must begin the process by conferring directly with counsel for the designating party.  In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation.  The designating party must respond to the challenge within ten business days, either by withdrawing the designation, or by setting forth in reasonable detail the reasons why the designating party believes the information is entitled to the designated status.

(b)      **Judicial Intervention**.  If the parties do not thereafter reach agreement with respect to the modification or withdrawal requested, a party that elects to challenge

a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge. Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure. The burden of persuasion in any such challenge proceeding shall be on the designating party. Until the Court rules on the challenge, all parties shall continue to treat the materials as Confidential Information under the terms of this Order.

13.    **Action by the Court**. Applications to the Court for an order relating to materials or documents designated Confidential Information shall be by motion. Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

14.    **Use of Confidential Documents or Information at Trial**. Nothing in this Order shall be construed to affect the use of any document, material, or information at any trial or hearing, except to the extent prohibited by HIPAA. A party that intends to present or that anticipates that another party may present Confidential Information at a hearing or trial may do so without prior consultation with any other party and without seeking impoundment of such material, except that such party must inform the Court and the producing party at least immediately prior to its use or introduction at hearing or trial that such Confidential Information is subject to the terms of this Protective Order, and except to the extent prohibited by HIPAA. The Court may thereafter make such orders as are necessary to govern the use of such documents or information at hearings or trial. All material produced in the litigation shall only be used in connection with this action, including discovery, hearings, trial, and appeal, if any, unless otherwise expressly agreed by the parties in writing. No material produced shall be

disclosed to any other person or entity or used for any other purpose or use, including, but not limited to, use in business, governmental, media, commercial, or administrative or other judicial proceedings, unless otherwise agreed to beforehand in writing by the parties, so ordered by the Court, or as otherwise expressly provided in this Order, and only to the extent permitted by HIPAA.

15.    **Confidential Information Subpoenaed or Ordered Produced in Other Litigation**.

(a)    If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order.  Such notification must include a copy of the subpoena or court order.

(b)    The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order.  In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c)    The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information in the court from which the subpoena or order issued.  In the event the designating party objects to the production or other disclosure, it shall notify the party in possession of the Confidential Information within

five business days of receipt of notice of the subpoena or compulsory process and shall file a motion for a protective order with the appropriate forum. The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. In the absence of a motion for a protective order filed prior to the date on which production or disclosure is required, the party in possession of the Confidential Information may comply with the subpoena or other form of compulsory process and its compliance shall not be deemed a violation of this Order. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody, or control Confidential Information by the other party to this case.

(d) Notwithstanding the above provisions, any documents containing Protected Health Information, as defined by HIPAA, shall not be disclosed for any purpose whatsoever other than in this litigation.

16. **Challenges by Members of the Public to Sealing Orders**. A party or interested member of the public has a right to challenge the sealing of particular documents that have been filed under seal, and the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

17. **Obligations on Conclusion of Litigation**.

(a) **Order Continues in Force**. Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

(b)      **Obligations at Conclusion of Litigation**.  Within sixty-three days after dismissal or entry of final judgment not subject to further appeal, all Confidential Information and documents marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" under this Order, including copies as defined in ^ 3(a), shall be returned to the producing party or certified by a receiving party to have been destroyed unless the document has been offered into evidence or filed without restriction as to disclosure or has otherwise lost its confidentiality designation.  The parties agree that the receiving party shall not be required to locate, isolate, and return e-mails (including attachments to e-mails) that may include Confidential Information or Confidential Information contained in deposition transcripts or drafts or final expert reports.

(c)      **Retention of Work Product and One Set of Filed Documents**. Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) attorney work product, including an index that refers or relates to designated Confidential Information so long as that work product does not duplicate verbatim substantial portions of Confidential Information, and a complete set of all documents filed with the Court including those filed under seal.  Any retained Confidential Information shall continue to be protected under this Order.  An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose or use Confidential Information, and only to the extent consistent with HIPAA.

(d)      Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System.  Filings under seal shall be deleted from the ECF system only upon order of the Court.

-16-

18. **Order Subject to Modification**. This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

19. **Additional Protections**. This Order is entered without prejudice to the right of any party to apply to the Court at any time for additional protection or to relax or rescind the restrictions of this Order, when convenience or necessity requires, but only to the extent consistent with HIPAA. No party waives any right it otherwise would have to object to disclosing or producing any information, documents, or things on any ground not addressed in this Order. Similarly, no party waives any right to object on any ground to the use in evidence of any material covered by this Order.

20. **No Prior Judicial Determination**. This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document or material designated Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

21. **Non-Party Discovery**. This Order shall apply with full force and effect to non-party producing documents or discovery in response to a subpoena issued by a party in this action, who may designate any discovery material "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in accordance with the terms set forth herein. Any party issuing a subpoena to a non-party shall enclose a copy of this Order and notify the non-party that the protections of this Order are available to such non-party.

22.     **Persons Bound**.  This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.  Each individual who receives any Confidential Information in accordance with any provision of this Order hereby agrees to be subject to the jurisdiction of the Court for the purpose of any proceedings relating to performance under, compliance with, or violation of this Order.

**SO ORDERED**.

Dated: 3/3/2025_____

M. David Weisman
United States Magistrate Judge

WE SO MOVE
and agree to abide by the
terms of this Order:

_/s/ Laina M. Herbert_____
Kelly L. Tucker
Laina M. Herbert
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, Delaware 19801
(302) 622-7000
(302) 622-7100 (facsimile)
ktucker@gelaw.com
lherbert@gelaw.com

William F. Moore
GRANT & EISENHOFER P.A.
30 N. LaSalle Street, Suite 2350
Chicago, Illinois 60602
(312) 610-5350
(312) 214-0001 (facsimile)
wmoore@gelaw.com

Richard S. Gordon
Benjamin H. Carney*
GORDON, WOLF & CARNEY, CHTD.
100 West Pennsylvania Ave., St. 100
Baltimore, Maryland 21204
(410) 825-2300
(410) 825-0066 (facsimile)
Rgordon@gwcfirm.com
Bcarney@gwcfirm.com

*Attorneys for Plaintiffs and the Putative Class*

Dated:  February 27, 2025

WE SO MOVE
and agree to abide by the
terms of this Order:

_/s/ Timothy R. Farrell_____
Jeffrey J. Bushofsky
Timothy Farrell
Philip P. Ehrlich
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
T: (312) 845-1200
F: (312) 845-5559
Jeffrey.Bushofsky@ropesgray.com
Timothy.Farrell@ropesgray.com
Philip.Ehrlich@ropesgray.com

Emily A. Cobb**
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
T: (212) 596-9000
Emily.Cobb@ropesgray.com

*Attorney for Defendants*

** Admitted *pro hac vice*

Dated:  February 27, 2025

-19-

## ATTACHMENT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STANLEY MORSBERGER and | ) | |
| CLEMENTINE ELUH, on their own behalf | ) | |
| and on behalf of all others similarly situated, | ) | |
| | ) | Case No: 1:22-cv-01181 |
| Plaintiffs, | ) | Honorable Jorge L. Alonso |
| | ) | Honorable M. David Weisman |
| v. | ) | |
| | ) | |
| ATI HOLDINGS, LLC, *et al.* | ) | |
| Defendants. | ) | |

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

The undersigned hereby acknowledges that he/she has read the Confidentiality Order

dated _____ in the above-captioned action and attached hereto, understands the

terms thereof, and agrees to be bound by its terms.  The undersigned submits to the jurisdiction of

the United States District Court for the Northern District of Illinois in matters relating to the

Confidentiality Order and understands that the terms of the Confidentiality Order obligate him/her

to use materials designated as Confidential Information in accordance with the Order solely for

the purposes of the above-captioned action, and not to disclose any such Confidential Information

to any other person, firm or concern.

The undersigned acknowledges that violation of the Confidentiality Order may result in

penalties for contempt of court.

Name: _____

Address: _____

_____

_____

Dated: _____        _____

[Signature of Person to Be Bound]

# EXHIBIT 7

1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
2                            EASTERN DIVISION

3    STANLEY MORSBERGER, *et al.*,          )   Case No. 22 C 01181
                                            )
4            Plaintiffs,                     )
                                            )
5        v.                                  )
                                            )
6    ATI HOLDINGS, LLC, *et al.*,            )   Chicago, Illinois
                                            )   July 1, 2025
7            Defendants.                     )   10:36 a.m.

8
                    TRANSCRIPT OF PROCEEDINGS - STATUS
9      BEFORE THE HONORABLE M. DAVID WEISMAN, MAGISTRATE JUDGE

10
     APPEARANCES:
11

12   For the Plaintiffs:      GRANT & EISENHOFER P.A.
                              BY:    MS. LAINA M. HERBERT
13                            123 Justison Street, Suite 701
                              Wilmington, DE 19081
14

15   For the Defendants:     ROPES & GRAY LLP
                              BY:    MR. TIMOTHY R. FARRELL
16                                   MR. CHRISTOPHER J. FONS
                              191 N. Wacker Drive, 32nd Floor
17                            Chicago, Illinois 60606

18

19          FAILURE TO SPEAK DIRECTLY INTO MICROPHONE
              RESULTS IN INAUDIBLE PROCEEDINGS AS NOTED.
20

21   Transcriber:            KRISTEN J. CARANNANTE, RPR, RMR, FCRR
                              Court Reporter
22                            10 Montgomery Place, #1D
                              Brooklyn, New York 11215
23                            848.459.3124
                              kjcarannante@gmail.com

24                                * * * * *
         PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
25       TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

1              (Proceedings heard in open court:)

2              THE CLERK:    22 C 1181, Morsberger, *et al.* v.

3    ATI Holdings, LLC, *et al.*

4              THE COURT:    Gentlemen, my apologies.

5              MR. FARRELL:    Not a problem, your Honor.  Do you need

6    a break?

7              THE COURT:    No, I don't.

8              And I'm sorry, counsel.  I didn't see you.  I

9    apologize to all of you.

10             All right.  So --

11             MR. FARRELL:    Good morning, your Honor.  Tim Farrell

12   and Chris Fons, for the defendants.

13             THE COURT:    Good morning.

14             MS. HERBERT:    Laina Herbert, your Honor, of Grant

15   & Eisenhofer, for the plaintiffs.

16             THE COURT:    Good morning.

17             I know you all want more time.  I am happy to talk

18   about that.  I just wanted a sense of where we are going here.

19   So tell me, because I know plaintiff does the laboring oar on

20   most of this at the beginning.

21             MS. HERBERT:    Thank you, your Honor.

22             Plaintiffs believe that an extension of time is

23   important for at least two reasons.  First, defendants produced

24   a substantial amount of documents after the discovery deadline,

25   about 53,000 documents, 27,000 pages in addition to the 15,000

1  documents they produced on the discovery deadline, which was

2  about 54,000 pages, and we are working through those documents.

3  But one thing that has become abundantly clear as we have

4  looked through them is that defendants have not produced

5  patient records or patient intake records.

6          Those documents go to the heart of the case, they go

7  to whether and when ATI knew that plaintiffs -- or patients

8  that were seeking physical therapy from them were injured by a

9  third party, and what they did with that information, whether

10  they took their insurance information and they verified it,

11  what representations ATI made to those patients and the intake

12  documents, also the notice of financial responsibility form

13  that the patients sign.  This goes to numerosity, at a minimum,

14  and typicality, as well.  And these are certainly related to

15  the class certification discovery that your Honor ordered and,

16  you know, if they are not produced, we will unfortunately have

17  to compel that.

18          And second, we have asked for dates for four

19  witnesses' depositions, but none of those deposition dates have

20  been confirmed.  Last Wednesday, April 24, defendants told us

21  for the first time that Ms. Meyer, one of the witnesses that we

22  asked to be deposed in her individual capacity, is no longer at

23  ATI.  So we are waiting for Ms. Meyer's last known address so

24  that we can subpoena her.  We want to take the 30(b)(6)

25  deposition first, your Honor, so that we can decide if we need

1   additional depositions; and, if so, which depositions that we

2   need.  Again, no dates have been put on the calendar yet.

3          And we had asked for dates in May for the witnesses

4   that we seek to depose——that's the 30(b)(6) witness

5   Ms.~Buonauro, Ms. Meyer, and Ms.~Avila——but the attorney who

6   was planning to handle those depositions for our firm is

7   leaving our firm.  So even if we get dates at this point, we

8   may have to deal with scheduling issues.

9          Ms. Tucker has a multi-day jury trial in the Eastern

10  District of Virginia that is going to be set either for the end

11  of June or beginning of July.

12         I have eight days of expert and client depositions

13  that are confirmed between the third week of May and the end of

14  July.  I can provide the captions for those cases if your Honor

15  would like.

16         And also, Mr. Gordon is going to be out of the country

17  May 14 through 19 and unavailable from June 1 through 5.

18         Again, you know, if the 30(b)(6) deposition identifies

19  additional witnesses, we need to build in time to schedule

20  those witnesses' depositions.  So we are seeking a discovery

21  cutoff of July 31 if defendants produce the patient records,

22  which include the intake records, by June 30.

23         THE COURT:    Okay.  It seems like a lot of stuff to get

24  done by July 31.

25         Tell me what defendants are thinking.

1          MR. FARRELL:    So just a couple of responses, just to

2    clarify.  We have produced 5300, not 53,000 additional

3    documents.

4          THE COURT:    What's a zero?  Right?

5          MR. FARRELL:    What's a zero?  And those documents were

6    just documents that fell off of our privilege -- initial

7    privilege screening, and it was certainly a larger quantum of

8    documents than I expected for the privilege screening.

9          But the nature of the document requests, your Honor,

10   deal with our patients who are dealing with personal injury

11   lawsuits, and so, as a result of the nature of the request, it

12   was just a higher volume of documents that hit our initial

13   privilege filter.  We have promptly reviewed those and produced

14   anything that we determined wasn't privileged.  But they did

15   come, it is true, after the close of our substantial discovery,

16   which was closer to 40,000 documents in total.

17         THE COURT:    Okay.  Just so everyone knows, no problem

18   with that from my perspective.  That's fine.

19         MR. FARRELL:    Just wanted to clarify that point.

20         THE COURT:    Yes.  That's how it should work.

21         But keep going.

22         MR. FARRELL:    On deposition dates, your Honor, we just

23   received the 30(b)(6) topics last week.  I think we can -- we

24   have got some scope issues with some of them, but I think we

25   can hammer those out with the plaintiffs.  I don't see an issue

1    there.  We are meeting and conferring on Friday.

2                    THE COURT:    Can I ask you a question on that?  Do you

3    think you will need one witness?  Do you think you will need

4    multiple?  I don't know what it looks like.

5                    MR. FARRELL:    We expect to have one --

6                    THE COURT:    Okay.

7                    MR. FARRELL:    -- 30(b)(6) designee for the topics.

8                    THE COURT:    Keep going.

9                    MR. FARRELL:    And we don't see any reason we can't

10    hammer out those topics, prepare that witness, and put them up

11    for deposition before the end of the fact discovery deadline.

12                    Early May is tough for us.  Just to complete

13    negotiations over those topics, prepare a witness, and then put

14    them up next week is --

15                    THE COURT:    Yes.

16                    MR. FARRELL:    -- challenging.

17                    THE COURT:    You can get more time.  I am just --

18                    MR. FARRELL:    Yes.

19                    THE COURT:    Just so everyone knows, I don't like to

20    give more time and then do it piecemeal and then everyone is

21    doing this fire drill to explain why you need more time.  So I

22    am fine with it.  The case, we had some issues at the

23    beginning.  We have gotten past that.  So I am just trying to

24    understand where we are.

25                    MR. FARRELL:    Sure.

1        THE COURT:    If July 31, you all think you can get it

2    done, I'm not up-ended by that in the least.  But I also don't

3    want you to make planning or scheduling decisions more

4    difficult than they need to be, so that's fine.

5        MR. FARRELL:    I think the other two wrinkles are,

6    number one, this patient records issue, which I heard for the

7    first time from Ms. Herbert outside of court this morning.  I

8    thought we negotiated that and resolved that.  I need to look

9    back at the negotiating history, but I am quite certain we

10    would have objected to producing every patient record for every

11    patient of ATI's and the class that hasn't been certified yet.

12        It's my understanding we have produced data on all of

13    the patients so that they can establish numerosity data for

14    each patient that has -- you know, how many patients came in

15    and presented with insurance, who were personal injury

16    plaintiffs.  We think that is more than sufficient than

17    producing every patient record for every patient in an

18    uncertified class.  And I am quite certain that was our

19    position when we negotiated this.  I need to look back.  And we

20    are going to talk about that on Friday, as well.

21        THE COURT:    Okay.

22        MR. FARRELL:    So if they plan on moving to compel, I

23    suspect that we will be opposing that.

24        So if that is the amount of time it takes, you know,

25    to resolve that motion to compel, obviously, we would need to

1    build that in, your Honor.

2         From our perspective, you know, again, if all goes

3    well, and it's like a remodeling project, things never go as

4    expected, but our only two issues that could hold things up

5    from our perspective is we just have our own questions about

6    some of the plaintiffs' document collection and privilege

7    issues.  Again, we are hoping to work those out with counsel,

8    and we are speaking on those on Friday; but, if not, we may

9    have our own motion to compel.

10         And then finally and somewhat relatedly, we are trying

11   to get the plaintiffs' files from their personal injury counsel

12   and their communications, particularly given the dearth of

13   communications that we have gotten from the plaintiffs

14   themselves.  So we are hoping to shore up that discovery from

15   their PI lawyers.  They have been recalcitrant so far, so we

16   may have to move to compel them.

17         THE COURT:    Give me a preview of that.  So I can

18   understand why it may be of interest to you and maybe even

19   relevant, but it sounds like there is a privilege issue baked

20   in there, so walk me through what you are trying to get or what

21   you are thinking you want.

22         MR. FARRELL:    Well, there are a lot of reasons, just

23   on the merits of class certification, but the most easy example

24   is for Ms. Eluh, for example.  She received a waiver showing

25   that she didn't have insurance and that she was going to

1    proceed on her own dime, which makes her, we think,

2    disqualified as a class representative.  She doesn't have that

3    document in her possession, custody, or control.  We think

4    maybe her attorney does.  So it's important for us to have all

5    communications around that.  Those would be third-party

6    communications.  Those would not --

7                    THE COURT:    Third-party.  Okay.

8                    MR. FARRELL:     -- be privileged, for example.

9                    In the case of Mr. Morsberger, he signed a release

10    with ATI, right?  So all the third-party communications around

11    the release are obviously also, similarly, relevant.  There are

12    a lot of other examples, but those are the two very obvious

13    ones.

14                    THE COURT:    So when you are saying "all

15    communications," you don't actually -- you don't mean

16    communications between potential class members and their

17    attorneys, for their (indiscernible.)

18                    MR. FARRELL:    We would not expect them to produce

19    privileged --

20                    THE COURT:    Okay.

21                    MR. FARRELL:     -- communications solely between the

22    attorneys and their clients, correct.

23                    THE COURT:    Okay.

24                    MS. HERBERT:     And, your Honor, that has not been made

25    clear and that's what we're (audio disruption) in that

1    meet-and-confer on Friday just to protect --

2              THE COURT:   Yes.

3              MS. HERBERT:    -- our client's privilege.  Because if

4    we are hearing -- and I am hearing for the first time now that

5    they are just seeking third-party communications and not

6    communications between our clients and their PI attorneys, but

7    just third-party communications.  I think that kind of makes it

8    a different --

9              THE COURT:   Yes.

10             MS. HERBERT:    -- you know, a different subpoena.

11             THE COURT:   I am asking --

12             MS. HERBERT:   Yes.

13             THE COURT:   I am just trying to understand.  So, and

14   then I understand what you are saying about, you know, maybe

15   class rep issues exist, but those type of -- is that something

16   that you think everyone in the class would have the -- the

17   potential class would have done?

18             MR. FARRELL:   Well, we are just asking --

19             THE COURT:   Said, I'll get the treatment and it will

20   be on my dime?

21             MR. FARRELL:   Well, yes, that's one of the arguments

22   for why these particular class reps are not proper class reps.

23             THE COURT:   Yes.  I'm not asking that question.  Well,

24   I get that.  But as you might -- I am sure you do this all the

25   time, where you knock out a class rep, but that just means you

1    find someone else who doesn't have the problem.

2                    MR. FARRELL:    Well, your Honor, I think that stuff

3    is -- those types of communications are obviously relevant on

4    the merits --

5                    THE COURT:    Okay.

6                    MR. FARRELL:    -- for sure.

7                    THE COURT:    And I don't dispute --

8                    MR. FARRELL:    And here we are --

9                    THE COURT:    Yes.

10                    MR. FARRELL:    Here we are in class discovery right

11    now, so that's what we are focused on.

12                    THE COURT:    Okay.  I am not agreeing or disagreeing

13    with anything you are saying.  I get what you are saying.  I am

14    just trying to understand where that fits in to class

15    certification issues.

16                    MR. FARRELL:    And just to provide sort of one broader

17    example, right, we know plaintiffs' attorneys maximize

18    recovery, and one of the ways they do that is aggregating all

19    of the expenses that their clients incurred flowing from the

20    accident.  Right?  And so we would expect to see the named

21    plaintiffs and other plaintiffs' attorneys going to, you know,

22    the other side and saying, well, they incurred all these costs

23    and physical therapy bills to maximize recovery for their

24    clients in the PI case, and now they are turning around and

25    claiming that ATI defrauded them by seeking recovery for that

1    same recovery that they sought in the PI case, rather than

2    billing their insurance company.  So that's obviously relevant

3    on the merits and on class representation, as well.

4                THE COURT:    I understand that.  A couple of questions

5    on that.

6                We all know the doctrine related to insurance and

7    collateral source for damages.  As I understand the case, so

8    the issue is more about how much services were -- uninsured

9    were billed at a different rate altogether than insured.  Is

10    that one of the theories plaintiff had with the class?

11                MR. FARRELL:    Not as I understand the complaint,

12    your Honor, but she is the plaintiffs' counsel.

13                MS. HERBERT:    That the plaintiffs and potential class

14    members here had health insurance, but rather than their health

15    insurance being billed, when ATI knew that they had been

16    injured by a third-party, they declined to bill their health

17    insurance, as they were required to do, but instead took that

18    out of the settlement money that the plaintiffs and other

19    potential class members received from the third-party

20    settlements.

21                THE COURT:    And was the billing inflated because there

22    was no insurance adjustment?

23                MS. HERBERT:    That is correct, because they did not

24    get the -- our clients paid --

25                THE COURT:    The discount.

1        MS. HERBERT:    -- the bill as if they had no insurance

2  when they actually did.

3        THE COURT:    All right.  And you are -- defendant is

4  obviously interested in understanding what they were told about

5  insurance and what people understood when they went to get

6  treatment, correct?

7        MR. FARRELL:    Well, I think she is more interested in

8  that.  I am more interested in what the -- because the only

9  claims that are left, your Honor, are a fraud claim and an

10  unjust enrichment claim.  So what we are interested in is what

11  these plaintiffs and their attorneys were saying to the outside

12  world about where they think their source of recovery for these

13  physical therapy services is.

14        THE COURT:    "The outside world" being the insurance

15  companies.

16        MR. FARRELL:    The insurance companies and --

17        THE COURT:    Auto insurance companies.

18        MR. FARRELL:    -- PI defendants, right.

19        THE COURT:    Yes.  We keep saying insurance companies,

20  but there is health insurance --

21        MR. FARRELL:    Right.

22        THE COURT:    -- and then -- I understand.  Okay.

23  I know this is far afield from time, but keep going.

24        MR. FARRELL:    So, you know, I think the big

25  contingencies here are a potential motion to compel on their

1    request for every --

2                    THE COURT:    All patient medical records.

3                    MR. FARRELL:    Patient medical records (indiscernible)

4    by class.  And if we have to file a motion to compel which,

5    with the PI attorneys, it sounds like maybe we won't,

6    hopefully.

7                    THE COURT:    Sorry for interrupting.  Have you served

8    subpoenas to the plaintiff personal injury attorneys?

9                    MR. FARRELL:    We have.

10                   THE COURT:    How many subpoenas have you --

11                   MR. FARRELL:    Three.

12                   THE COURT:    -- served?

13                   Three.  Okay.

14                   Are they here?  What state are they in?

15                   MR. FARRELL:    They are in Maryland.

16                   THE COURT:    Okay.  How are you -- what is your thought

17   on -- if you are going to do that, I am kind of inclined to get

18   that scheduled out because I think you are going to need to

19   enforce your subpoenas out there.

20                   MR. FARRELL:    Correct.  Yes.  We are speaking with

21   them on Friday morning, and we've --

22                   THE COURT:    As well.

23                   MR. FARRELL:    Right.  And we have been clear with -- I

24   think they were hoping we would just go away.  We have been

25   clear that we are not going to, so hopefully we can reach a

1    resolution on Friday.

2              THE COURT:    Okay.  All right.  So we have got the --

3              MS. HERBERT:    And, your Honor, there is another issue

4    that I am hopeful that we can work out with defendants, but I

5    am not confident that we will be able to.

6              With respect to Mr. Morsberger, he does not have any

7    time off work.  He is certainly willing to sit for a

8    deposition.  He has asked for his deposition to either be taken

9    remotely or on a Saturday or a Sunday in Chicago, so that he

10   can come to Chicago without missing work, and defendants have

11   insisted that they appear in Chicago.

12             And Ms. Eluh is willing to come to Chicago, if needed,

13   and -- if they won't take her deposition remotely.  But of

14   course we will need approval from her employer before she can

15   do that.

16             So, you know, two issues that need to be resolved

17   before we can settle on deposition dates.

18             And also we have asked for Ms. Meyer's last known

19   address and haven't received that yet.  And we will need that

20   before we can subpoena her.

21             THE COURT:    And Ms. Eluh, tell me the issue again with

22   her scheduling of her deposition?

23             MS. HERBERT:    Ms. Eluh, your Honor?

24             THE COURT:    Yes.

25             MS. HERBERT:    She -- we offered her, I believe it was

1    May 21, 22, and 23 in Chicago, but we just need to know the

2    date so she can get approval from her employer.

3                THE COURT:    Okay.

4                MS. HERBERT:    I don't expect that to be an issue, but

5    need a date first before we can definitely know that she will

6    be available.

7                THE COURT:    And who is the individual who you want a

8    last-known address for?

9                MS. HERBERT:    Ms. Meyer.  She --

10               MR. FARRELL:    She is a former ATI employee.  We

11   learned fairly recently that she is no longer there, and we are

12   in the process of making contact with her.  I expect we will

13   represent her, and we will make contact with plaintiffs'

14   counsel by the way to give her a subpoena.

15               MS. HERBERT:    And that would leave Mr. Morsberger.

16               THE COURT:    Okay.  And Ms. Meyer, what was her

17   position at ATI?

18               MS. HERBERT:    She was the connection between the ATI

19   litigated team and management, and I will give you her position

20   in one minute, your Honor.  She was former director of

21   reimbursement at ATI.

22               THE COURT:    Okay.  So that was just Maryland or is

23   that national?

24               MS. HERBERT:    National, I believe, your Honor.

25               THE COURT:    Okay.  And is she still in the industry?

1    Do you know where she -- sorry.  Is she still in the industry?

2    Do you know where she is?

3         MR. FARRELL:    I don't, your Honor.  We are in the

4    process of trying to track her down.

5         THE COURT:    Okay.

6         All right.  So let's set some dates.  Let's first talk

7    bigger picture.  So here's what I've got.  If I am missing

8    something, tell me:

9         The issue of all patient medical records;

10        The issue of getting three personal injury attorney

11   communications, nonprivileged, related to the class reps;

12        Mr. Morsberger's deposition, we can deal with that.

13        Ms. Eluh, we just need to get a date.  That doesn't

14   seem like a big issue.

15        Ms. Meyer is an unknown, but it sounds like we are

16   going to -- plaintiff will want to depose her.

17        Any other motions besides those two?

18        MR. FARRELL:    Well, just going back to our questions

19   about plaintiffs' collection efforts and some privilege issues,

20   your Honor.

21        THE COURT:    Okay.

22        MR. FARRELL:    And I don't --

23        THE COURT:    So you are going to meet and confer on

24   that.

25        MR. FARRELL:    We are meeting and conferring on that,

1    but there may be a motion on that.

2            MS. HERBERT:    And we have asked to depose their

3    30(b)(6) witness first, just to determine whether there are

4    additional issues or additional witnesses that we need to

5    depose and/or whether it will be necessary to depose

6    Ms. Buonauro and Ms. Meyer in their individual capacity.  And I

7    named them specifically because defendants have told us that

8    one of those women will potentially be their 30(b)(6) deponent.

9            THE COURT:    Okay.

10           MR. FARRELL:    And our hope and expectation,

11   your Honor, is that they wouldn't need two separate full days

12   with one of those witnesses, assuming that we are going to

13   designate one of them as a 30(b)(6) witness, and then they need

14   another seven hours with that person as a lay witness.  We just

15   don't expect that to be necessary at all.  So I am hopeful we

16   can work something out in that regard, as well.

17           MS. HERBERT:    And we do -- but we do see both -- both

18   of those individuals have very distinct issues based on their

19   responsibilities while they were at ATI that makes their

20   individual depositions appropriate, and I can't stand here

21   right now and say that it wouldn't be appropriate to take a

22   deposition of one or both of those individuals in their

23   individual capacity at a separate day and not combine that with

24   the seven hours that we are given for the 30(b)(6) deponent.

25           THE COURT:    Okay.  So we are at the beginning of May.

1    You are telling me in 90 days you think you are going to have

2    all of this done, including briefing on any motions.

3        MR. FARRELL:    Certainly we will have the briefing on

4    the motions.

5        THE COURT:    That will be done.  They can probably get

6    figured out.

7        If you want July 31, I will give you July 31.

8        MS. HERBERT:    Do you think something else is more

9    reasonable, your Honor, based on what we have to accomplish?

10       THE COURT:    You know, I don't know people -- here, it

11   is just -- I just had a case like this the other day where

12   people had a bunch of dates between December 1 and December 31,

13   and I am like, Why did you do this because you know what's

14   going to happen.  You know, summer is a good time to get stuff

15   done if people don't have trials and other commitments and, you

16   know, August, depending, sometimes people wait until August for

17   vacation.

18       So if you want and you are thinking we can get this

19   done and be done July 31 and have kind of a slow August, I am

20   happy to give you that structure.

21       MS. HERBERT:    Should --

22       MR. FARRELL:    The only issue that I identify is

23   getting rulings on these motions to compel and then getting the

24   documents and then taking the depositions.  Right?  Because,

25   for example, if we have got, for example, a collection or

1  preservation issue or a privilege issue or an issue with the

2  plaintiffs' lawyers, we are going to want those documents

3  before we depose the plaintiffs in every case, right?  And so

4  we can be very quickly ready to depose them once we get those,

5  but that is all going to happen after we get the relief we are

6  asking for.

7  MS. HERBERT:    Should we aim for August 29, your Honor?

8  I just -- I don't want to be back before your Honor asking for

9  more time.

10  THE COURT:    Yes.  As long as you promise not to mess

11  up each other's summer vacation schedule, either.  I mean, I

12  would tell you, I think it makes more sense.

13  We should be able to move these motions along.  All

14  of the ones that I have written down are not complicated

15  motions conceptually, right?

16  These are just, you know, like, all patient medical

17  records for the entire potential class.  That's really where

18  we are at.  That is going to be, I think, pretty easy to

19  resolve.

20  30(b)(6) scope and time limit, the time limit is not

21  complicated, and there are easy ways to rule on that without

22  even knowing a whole lot.  Right?

23  The three personal injury attorney communications, I

24  don't know what they are doing.  That I worry about, though,

25  because you are going to have to file it in Maryland.  We are

1    dealing with that in another case.  Best case scenario, it may

2    be back here in 60 days, I mean, reassigned here in 60 days.  I

3    don't know how Maryland runs.  It may be faster.  But usually,

4    it takes time to get it done and then reassigned back here.

5    And that presumes the judge there, that's what she wants to get

6    done.  I don't even know if that will happen.

7                    MR. FARRELL:    Right.

8                    THE COURT:    So I think there are a lot of variables.

9    I think setting this for the end of August makes more sense,

10   unless there is an objection from someone.

11                   MR. FARRELL:    That's fine with me, your Honor.

12                   THE COURT:    Okay.

13                   MS. HERBERT:    And that's fine with plaintiffs,

14   your Honor.  That would give us flexibility around the current

15   scheduling conflicts that we have --

16                   THE COURT:    Perfect.

17                   MS. HERBERT:    -- and I'm sure that defense counsel

18   might have, as well.

19                   THE COURT:    Okay.  August 29 for close of class

20   discovery.

21                   Now let's talk about these motions or potential

22   motions.  It sounds like Friday is -- you are meeting to

23   resolve a bunch of different issues, correct?

24                   MR. FARRELL:    That's the hope.

25                   THE COURT:    All right.  We can do one of two things.

1    I can have you file a status report -- I can set a status next

2    week, and then next week have you file a status report right

3    before that and say, We are at issue on these things and we

4    want briefing schedules, and I can just do that by status

5    report or I can have you come in and we can talk about it.

6    What do you think is better?

7            MR. FARRELL:    I would think we could file a status

8    report next week and ideally agree to a briefing schedule --

9            THE COURT:    Okay.

10            MR. FARRELL:    -- and if not, file a status report with

11    competing briefing schedules and have your Honor --

12            THE COURT:    Ms. Herbert, are you out of town?

13            MS. HERBERT:    Yes, sir, I am.

14            THE COURT:    Okay.

15            MR. FARRELL:    That's one of the things I was thinking

16    about is --

17            THE COURT:    Yes.  I am trying to save you a trip.

18    Well, you know, let's do this --

19            MS. HERBERT:    I appreciate that, your Honor.

20            THE COURT:    Yes.

21            So you are going to meet Friday, the --

22            MS. HERBERT:    We are actually meeting two different

23    times on Friday——once with the PI attorneys and once amongst

24    ourselves.

25            THE COURT:    Okay.

1           Do you think by May 7 you can file a status report at

2    noon and say, This is where we are?  Or do you think if I gave

3    you a little bit more time and have a status hearing the week

4    of May 12, it would be better?

5           MS. HERBERT:    As long as it was remote, the week of

6    the 12th, 13th, and 14th would be fine for a status hearing

7    with me if it was remote.

8           MR. FARRELL:    I'm not -- well, I'm out of the country

9    starting the evening of the 12th that week.  But I could do

10   something in the morning --

11          THE COURT:    Okay.

12          MR. FARRELL:    -- on the 12th.

13          THE COURT:    Okay.  Let's do this.  File a status

14   report May 8.  I want to know if you are at issue or you

15   resolved the 30(b)(6) scope issue.

16          And I know there is a time limit issue, but I don't

17   think we should be briefing both of them because that seems one

18   informs the other, right?  The scope, if you don't have

19   agreement on the scope, then it may be more narrow, then how am

20   I going to figure out what is an appropriate amount of time.

21   Am I missing that issue?

22          MS. HERBERT:    Appropriate amount of time for what,

23   your Honor?

24          THE COURT:    Well, because you are worried about doing

25   two seven-hour depositions, right?

1          MR. FARRELL:   Correct.

2          THE COURT:    But I -- tell me if I am wrong, but I am

3    thinking I can't meaningfully --

4          MR. FARRELL:   That's right.

5          THE COURT:    -- address that issue until I understand

6    the scope.

7          MR. FARRELL:   That's right.  Your Honor, I don't

8    expect us to --

9          THE COURT:   Okay.

10         MR. FARRELL:   -- to need motion practice on this

11   issue.

12         THE COURT:   Good.  That's fine.

13         MR. FARRELL:   Yes.

14         THE COURT:   So I am just going through my checklist.

15   So if there is any issue on the 30(b)(6), scope of that.

16         Where you are on the all-patient medical records for

17   the class, that's what I understood the issue to be, correct,

18   Ms. Herbert?

19         MS. HERBERT:   That's correct, your Honor.  And when we

20   came to you and asked you for more time, set this schedule, we

21   understood that the only documents remaining to be produced by

22   defendants were those records.  And when we didn't receive

23   them, that was --

24         THE COURT:   Okay.

25         MS. HERBERT:   —— when we were bringing this before you

1     now.

2          THE COURT:    Okay.  So tell me where you are on that.

3          And then I think this is more of a defendant issue,

4     but where you are with the personal injury attorneys in

5     Maryland and their willingness to provide nonprivileged

6     documents from their file.

7          MR. FARRELL:    Right.

8          MS. HERBERT:    And, your Honor, I guess one other thing

9     that would be helpful to have clarified by your Honor is

10    whether the nonprivileged documents from the personal injury

11    attorneys' files are related to named plaintiffs only or all of

12    their personal injury attorney plaintiff claims.

13         THE COURT:    In my head, I thought it was the named

14    plaintiffs right now, but I don't know.  I don't want to speak

15    for defendant.

16         MR. FARRELL:    Yes, that is my understanding.  We

17    haven't gotten very far with them because they just told us to

18    pound sand, essentially.  We haven't even gotten to those sort

19    of scope or privilege questions.  But finally I think I've

20    gotten their attention.  I mean, what we need for class cert.

21    primarily, particularly because we have gotten almost nothing

22    from the plaintiffs, is their files and any nonprivileged

23    communications with and relating to them, including their

24    representatives, because Mr. Morsberger's wife, we have

25    learned, has been the primary go-between with them --

1              THE COURT:    Okay.

2              MR. FARRELL:    -- which raises, actually, a privilege

3    issue, as well.

4              THE COURT:    That does.

5              But Ms. Herbert is asking, is this limited to the

6    named plaintiffs right now or --

7              MR. FARRELL:    At this point, yes.

8              THE COURT:    Okay.  So just so we are clear, Personal

9    Injury Attorney A out of Maryland represents Mr. Morsberger,

10   but he also represented 20 other people who might be in the

11   class.  You are not interested in those 20 other files at this

12   point.

13             MR. FARRELL:    Not for this purpose, your Honor.

14             THE COURT:    Okay.  Does that answer your question?

15             MS. HERBERT:    Yes, sir, and I --

16             THE COURT:    Okay.

17             MS. HERBERT:    -- appreciate it.  That should help

18   the --

19             THE COURT:    Okay.

20             MS. HERBERT:    -- conversation.

21             THE COURT:    All right.

22             Then tell me where you are in Mr. Morsberger's

23   deposition, what would appear and when.

24             MR. FARRELL:    Well, I think the "when," your Honor, is

25   going to depend on a lot of these things, as well.

1    THE COURT:    I'm sorry, not "when" like dates, when his

2  issue is weekend versus work day.

3    MR. FARRELL:    Oh, sure.

4    THE COURT:    Okay.  I don't need an exact date.  Just

5  tell me if you've got an agreement on that one.

6    Ms. Eluh, I'm assuming you will just work that out.  I

7  don't need that in the status report unless someone thinks --

8  if, when you file it, you are like, this is a problem, put it

9  in there.

10    MS. HERBERT:    I don't expect it will be, your Honor,

11  but thank you.  We will.

12    THE COURT:    All right.

13    And then just tell me where you are on Ms. Meyer.

14  That is more we will call it busy work, but I want to make sure

15  we are staying on top of that just so that doesn't drop through

16  the cracks.  That will not necessitate a hearing, though,

17  whatever you write about that.

18    MS. HERBERT:    Thank you.

19    THE COURT:    And then to the extent any of these

20  potential motions you are like, these are at issue and we want

21  to brief them, put in an agreed schedule or a competing

22  schedule and we will work from there.  My goal is not to

23  interrupt anyone's vacation day or anything like that, so I am

24  using the status report hopefully to get all that done, and the

25  status hearing is just kind of a docket management tool to make

1    sure you do what I am asking you to do.

2              MS. HERBERT:     Do we have a date for this -- the status

3    hearing?

4              THE COURT:     I thought we did the 12th in the morning,

5    right, because that's when you are -- I don't know.  But we

6    probably won't need it.

7              (Court and clerk confirm).

8              THE COURT:     What time is your flight?

9              MR. FARRELL:     Not until the evening.  It's 6:00.

10             THE COURT:     6:00.  Okay.  Here, out of Chicago?

11             MR. FARRELL:     Yes, that's right.

12             THE COURT:     Let's say 1:00.  It won't take all day.

13   They keep telling me that.

14             MR. FARRELL:     Well, your Honor --

15             THE COURT:     Yes.

16             MR. FARRELL:     -- I actually have another hearing in

17   the afternoon.

18             THE COURT:     What time?

19             MR. FARRELL:     An arbitration.  It's a long hearing,

20   it's 2 to 4.

21             THE COURT:     2 to 4.

22             MR. FARRELL:     Sorry, 12 to 2.

23             THE COURT:     12 to 2.  Can the gentleman behind you

24   stand in on the 12th?

25             MR. FARRELL:     Yes, absolutely.

1          THE COURT:     Okay.

2          MR. FARRELL:     Yes.

3          THE COURT:     Do you mind if we do it at 1?

4          MR. FONS:     That's fine.

5          THE COURT:     Okay.  Does that work for you?  And you

6     can do it remote.

7          MS. HERBERT:     Yes, your Honor.  That's wonderful.

8     Thank you.

9          THE COURT:     Okay.

10          All right.  And like I said, if the status report

11     has -- we will try to do -- try to strike the hearing if we

12     can.

13          MR. FARRELL:     Right.

14          THE COURT:     I just don't know what it is going to say.

15          MR. FARRELL:     Right.

16          THE COURT:     All right.  Any other things you want to

17     talk about?  I know you were just going to tell me how much

18     time you wanted, but this is helpful.  Anything further from

19     plaintiffs?

20          MS. HERBERT:     No, your Honor.  Then you will -- after

21     the status report on the 7th, we will decide on the further

22     time or keep it at August 29.

23          THE COURT:     August 29 is going to go in the books now.

24          MS. HERBERT:     Okay.  Thank you.

25          THE COURT:     Yes.

1          MS. HERBERT:    Thank you.

2          THE COURT:    Anything else from defendant?

3          MR. FARRELL:    Nothing else for defendants.

4          THE COURT:    All right.  Thanks a lot.  We will hear

5    from you in a few weeks.  Thanks.

6          MR. FARRELL:    Thank you, your Honor.

7          MS. HERBERT:    Thank you, your Honor.  I appreciate

8    your time.

9          (Concluded at 11:07 a.m.)

10                                    * * * * *

11      I certify that the foregoing is a correct transcript of the

12    digital recording of proceedings in the above-entitled matter

13    to the best of my ability, given the limitations of using a

14    digital recording system.

15

16    */s/ Kristen J. Carannante*
      July 3, 2025
17    Kristen J. Carannante, RPR, RMR, FCRR
      Court Reporter/Transcriber

18

19

20

21

22

23

24

25

# EXHIBIT 8



ROPES & GRAY LLP
191 NORTH WACKER DRIVE
32nd FLOOR
CHICAGO, ILLINOIS 60606-4302
WWW.ROPESGRAY.COM

May 5, 2025

Timothy R. Farrell
T +1 312 845 1209
timothy.farrell@ropesgray.com

**<u>VIA EMAIL</u>**

Lauren Geisser
Gilman & Bedigian, LLC
1954 Greenspring Drive, Suite 250
Timonium, Maryland 21093
lgeisser@gblegalteam.com

Zachary M. Lipp
Wingfield, Ginsburg & Lipp, P.C.
700 Fifth Street, N.W., Suite 300
Washington, D.C. 20001
zlipp@dmvinjurylaw.com

Elan B. Rafael
Rafael Law, LLC
3604 Eastern Avenue Suite 100
Baltimore, MD 21224
elan@rafaellaw.com

Re:    Subpoena responses in
       *Morsberger v. ATI Holdings, LLC*, Case No. 1:22-cv-01181 (N.D. Ill.)

Counsel:

I write on behalf of ATI Holdings, LLC; Athletic & Therapeutic Institute of Naperville, LLC; ATI Physical Therapy, Inc.; and Ray Wahl (together, "ATI"), regarding the meet and confer with Gilman & Bedigian, LLC; Wingfield, Ginsburg & Lipp, P.C.; and Rafael Law, LLC (together, the "Firms") on May 2, 2025, during which we discussed the subpoenas served in December 2024. We appreciate the productive discussion, which we memorialize below.

Per our discussion, we understand the parties have an understanding to proceed as follows:

1.    Each Firm agrees to produce their entire file for their respective clients, Ms. Clementine Eluh and Mr. Stanley Morsberger, including all communications regarding their respective case that remain in their possession, custody or control, with the exception of attorney-client privileged communications and attorney work product. For the avoidance of doubt, the Firms

ROPES & GRAY LLP

- 2 -                                                                                    May 5, 2025

agree to produce factual documents and records exchanged with their clients with any necessary redactions for attorney-client privileged communications contained therein (e.g., by redacting, as necessary, any privileged content in the cover email). ATI is not requesting at this time that the Firms create a privilege log for communications solely between counsel and their clients withheld on the basis of privilege, though we reserve the right to seek such information should questions arise following our receipt of the productions. (However, to the extent counsel for Mr. Morsberger intends to withhold communications involving Mrs. Morsberger, we expect counsel for Mr. Morsberger to let us know so we can address that issue.)

2. ATI is <u>not</u> seeking medical records (1) pertaining to any other person besides Ms. Clementine Eluh and Mr. Stanley Morsberger or (2) from any other provider besides ATI. With respect to medical records from ATI related to Ms. Clementine Eluh and Mr. Stanley Morsberger, the Firms agree to determine how those records appear in their files and to communicate promptly with counsel as to how they can facilitate the production of those materials.

3. Regarding depositions, the parties agree to continue any deposition notices, pending review of the Firms' productions. To the extent depositions are necessary, the parties agree to negotiate a reasonable time and place for those depositions, consistent with Federal Rule of Civil Procedure 45.

ATI reserves all rights and waives none. We look forward to receiving your productions.


Sincerely,

/s/ Timothy R. Farrell

Timothy R. Farrell


cc:    Laina Herbert (lherbert@gelaw.com)
       Catherine Conroy (catherine.conroy@ropesgray.com)
       Chris Fons (chris.fons@ropesgray.com)

# EXHIBIT 9
# FILED UNDER SEAL